UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,          )
                            )
        Plaintiff,          )
                            )
        v.                  )    Civil Action No. 08-00024 (RJL)
                            )
U.S. DEPARTMENT OF JUSTICE, )
   et al.,                  )
                            )
        Defendants.         )
_____)

### DEFENDANT CIVIL DIVISION'S MOTION FOR SUMMARY JUDGMENT

Defendant, Civil Division, by its undersigned attorneys,
hereby moves the Court, pursuant to Rule 56 of the Federal Rules
of Civil Procedure, for an Order granting summary judgment on the
portion of plaintiff's Complaint pertaining to the Civil
Division, a component of the United States Department of Justice,
on the grounds that no genuine issue of material fact exists and
that defendant is entitled to judgment as a matter of law.[1]

In support of this motion, the Court is respectfully
referred to the Declaration of James M. Kovakas, Attorney-In-
Charge of the Freedom of Information and Privacy Acts Office,
Civil Division;[2] to the Defendant Civil Division's Statement of

---

[1] Plaintiff's Complaint also named the Executive Office for
United States Attorneys (EOUSA) as a defendant.  However, today,
defendants moved the Court to vacate the briefing schedule with
respect to EOUSA due to its recent discovery of records that
might be relevant to this action.  (See Motion to Vacate the
Briefing Schedule with Respect to the Executive Office for United
States Attorneys, filed May 20, 2008.)

[2] Plaintiff should take notice that the Court will accept as
true any factual assertions contained in the declaration

-2-

Material Facts as to Which There is No Genuine Issue; and to the

Memorandum of Points and Authorities in Support of Defendant

Civil Division's Motion for Summary Judgment, all filed herewith.

---

submitted in support of this motion unless he submits his own
affidavit or other documentary evidence contradicting those
assertions.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir.
1992); Fed. R. Civ. P. 56(e); Local Civil Rule 7(h).  Rule
56(e)(1) of the Federal Rules of Civil Procedure provides:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant is
> competent to testify on matters stated.  If a paper or
> part of a paper is referred to in an affidavit, a sworn
> or certified copy must be attached to or served with
> the affidavit.  The court may permit an affidavit to be
> supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e)(1).  Rule 56(e)(2) of the Federal Rules of
Civil Procedure further provides:

> When a motion for summary judgement is properly made and
> supported, an opposing party may not rely merely on
> allegations or denials in its own pleading; rather, its
> response must -- by affidavits or as otherwise provided in
> this rule -- set out specific facts showing a genuine issue
> for trial.  If the opposing party does not so respond,
> summary judgement should, if appropriate, be entered against
> that party.

Fed. R. Civ. P. 56(e)(2).

-3-

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


                        /s/
_____
Dated:  May 20, 2008    CAROLINE A. SMITH
                        (DC Bar #501942)
                        Attorney-Advisor
                        Office of Information and Privacy
                        United States Department of Justice
                        1425 New York Ave., NW, Suite 11050
                        Washington, DC  20530-0001
                        (202) 514-8858

                        Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                  )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )  Civil Action No. 08-00024 (RJL)
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
   et al.,                          )
                                    )
        Defendants.                 )
_____    )


DEFENDANT CIVIL DIVISION'S STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE, PURSUANT TO LOCAL RULE 7(h)

Pursuant to Local Rule 7(h), defendant Civil Division submits the following statement of material facts as to which there is no genuine issue:

1.  By letter dated March 7, 2007, plaintiff submitted a request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, seeking access to certain records pertaining to the civil case, Cheryl Ann Piechowicz, et al. v. United States, No. K-86-802 (D. Md. 1989), that might be maintained by the Civil Division, a component of the United States Department of Justice (DOJ).  (See Declaration of James M. Kovakas, Attorney-In-Charge of the Freedom of Information and Privacy Acts Office, Civil Division, DOJ [hereinafter Kovakas Decl.], filed herewith, ¶ 4 & Ex. A.)  In his request, plaintiff specifically asked for copies of the following records from the

-2-

Piechowicz case:  depositions of Cheryl Ann Piechowicz and James Savage; answers to interrogatories by Piechowicz, Savage, James Ryan, and any plaintiffs; any and all admissions by Piechowicz, Savage, Ryan, and any plaintiffs; any and all deposition exhibits.  (See id.)  Plaintiff did not provide privacy waivers or proof of death for any of the third parties who he named in his request. (See id.)  Plaintiff also asked the Civil Division to expedite the processing of his request.  (See id.)

2.  By letter dated March 22, 2007, the Civil Division acknowledged that it had received plaintiff's request on March 15, 2007, and assigned it the request number 145-FOI-9135. (See id. ¶ 5 & Ex. B.)  In addition, the Civil Division advised plaintiff that it had granted his request for expedited processing.  (See id.)

3.  Following receipt of plaintiff's request, the Civil Division conducted a search of its Civil Case Management System, known as "CASES," using Piechowicz's name as a search term.  (See id. ¶ 7.)  CASES is a database that contains information about all litigation initiated and defended by the Civil Division. (See id.)  As a result of this search, CASES identified the Piechowicz case, as well as the DOJ attorneys who had been assigned to work on it.  (See id.)  The Civil Division's FOIA Office contacted these attorneys and asked them to search the Piechowicz case file for records responsive to plaintiff's

-3-

request.  (See id.)  These attorneys provided Civil Division's FOIA Office with 228 pages of responsive records, consisting of: one deposition of a government witness, answers of interrogatories from one government witness, one deposition of a witness for Piechowicz, and answers to interrogatories by two witnesses for Piechowicz.  (See id.)  CASES is the only system maintained by the Civil Division that provides information about the location of civil case files such as those requested by plaintiff.  (See id.)

4.  By letter dated April 17, 2007, the Civil Division informed plaintiff that it had located responsive records which it was withholding in full pursuant to Exemption 6, as well as Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C). (See Kovakas Decl. ¶ 7 & Ex. D.)  By this same letter, the Civil Division advised plaintiff that he could appeal its determination to the Office of Information and Privacy (OIP) within sixty days of the date of its letter.  (See id.)

5.  By letter dated April 25, 2007, plaintiff appealed the Civil Division's determination to OIP.  (See id. ¶ 8 & Ex. E.) In his appeal, plaintiff asserted that three individuals who either were expressly named in his request, or who he presumed to be mentioned within the withheld records, are deceased.  (See id.)  Plaintiff also attached to this correspondence a copy of a letter from a court transcription company which states that a

-4-

named court reporter, who plaintiff believes transcribed the depositions for the <u>Piechowicz</u> case, is deceased.  (<u>See</u> <u>id.</u>)

6.  By letter dated May 10, 2007, OIP informed plaintiff that his appeal had been received on May 8, 2007, and assigned appeal number 07-1418.  (<u>See</u> <u>id.</u> ¶ 9 & Ex. F.)

7.  By letter dated May 22, 2007, plaintiff transmitted additional information to OIP concerning his appeal, including a newspaper article from April 28, 1988, discussing the <u>Piechowicz</u> case.  (<u>See</u> <u>id.</u> ¶ 10 & Ex. G.)

8.  By letter dated February 19, 2008, referencing appeal number 07-1418, OIP informed plaintiff that because he had filed a lawsuit pertaining to his FOIA request, it was closing his administrative appeal file pursuant to 28 C.F.R. § 16.9(a)(3)(2007).  (<u>See</u> Kovakas Decl. ¶ 12 & Ex. H.)

9.  By letter dated February 25, 2008, plaintiff asked OIP to reconsider its decision to close his administrative appeal file.  (<u>See</u> <u>id.</u> ¶ 13 & Ex. I.)

10.  By letter dated April 29, 2008, OIP informed plaintiff that its original decision to close his administrative appeal file remained appropriate.  (<u>See</u> <u>id.</u> ¶ 14 & Ex. J.)

11.  Upon learning that Cheryl Ann Piechowicz is in fact deceased, the Civil Division re-reviewed the responsive records and determined that an additional release of documents was appropriate.  (<u>See</u> <u>id.</u> ¶ 15.)  Accordingly, by letter dated

-5-

April 29, 2008, the Civil Division provided plaintiff with the
non-exempt portions of 101 pages of records.  (<u>See</u> <u>id.</u> & Ex. K.)
Specifically, this supplemental release of records consisted of
an eighty-eight-page deposition transcript of Cheryl Ann
Piechowicz and a thirteen-page document containing her answers to
interrogatories.  (<u>See</u> <u>id.</u>)  Of the 101 pages released, the Civil
Division released eleven pages in full and ninety pages in part
with withholdings made pursuant to Exemptions 6 and Exemption
7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C).  (<u>See</u> Kovakas
Decl. ¶ 15 & Ex. K.)

-6-

12.  The Civil Division conducted a page-by-page and line-by-line review of the records responsive to plaintiff's request and determined that it is not possible to reasonably segregate any further portions for release to plaintiff without disclosing information that is protected under Exemptions 6 and 7(C) of the FOIA.  (See id. ¶ 22.)

Respectfully submitted,


_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


                          /s/
_____
Dated:  May 20, 2008      CAROLINE A. SMITH
                          (DC Bar #501942)
                          Attorney-Advisor
                          Office of Information and Privacy
                          United States Department of Justice
                          1425 New York Ave., NW, Suite 11050
                          Washington, DC  20530-0001
                          (202) 514-8858

                          Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                    )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )    Civil Action No. 08-00024 (RJL)
                                      )
U.S. DEPARTMENT OF JUSTICE,           )
  et al.,                             )
                                      )
        Defendants.                   )
_____)


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT CIVIL DIVISION'S MOTION FOR SUMMARY JUDGEMENT

Preliminary Statement

Plaintiff commenced this action pro se on January 7, 2008, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, seeking the release of certain records pertaining to the civil case, Cheryl Ann Piechowicz, et al. v. United States, No. K-86-802 (D. Md. 1989), that might be maintained by the Civil Division and by the Executive Office for United States Attorneys (EOUSA), components of the United States Department of Justice.

On May 14, 2008, EOUSA unexpectedly learned that records that it believed had been destroyed in 2001 pursuant to routine records retention schedules may actually still be maintained by the National Archives and Records Administration's Federal Record Center in Maryland.  Accordingly, today, defendants have moved to vacate the briefing schedule with respect to defendant EOUSA.

-2-

(See Defendant EOUSA's Motion to Vacate the Briefing Schedule, filed May 20, 2008.)  Defendants now move for summary judgment on behalf of defendant Civil Division.

In support of Civil Division's motion for summary judgment, it has filed herewith the Declaration of James M. Kovakas, Attorney-In-Charge of the Freedom of Information and Privacy Acts (FOI/PA) Office, Civil Division, United States Department of Justice [hereinafter Kovakas Declaration].  This declaration recounts the chronology related to the administrative processing of plaintiff's FOIA request, identifies the documents in which redactions were made and those that were withheld in full, and explains the bases upon which the information was withheld pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C).  On the basis of this declaration, the entire record herein, and for the reasons set forth below, defendant Civil Division respectfully submits that its motion for summary judgment should be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## Factual and Procedural Background

By letter dated March 7, 2007, plaintiff submitted a request to the Civil Division which asked for disclosure of certain records related to third parties involved in the Piechowicz

-3-

case.[1]  (Kovakas Decl. ¶ 4 & Ex. A.)  Specifically, he requested

the depositions of Cheryl Ann Piechowicz and James Savage;

answers to interrogatories by Piechowicz, Savage, and James Ryan,

and any plaintiffs in the civil case; any and all admissions by

Piechowicz, Savage, Ryan, and any plaintiffs in the civil case;

and any and all deposition exhibits.  (See id.)  Plaintiff did

not provide any privacy waivers or proof of death for the third

parties who were named in his request.  (See id.)  In that same

letter, plaintiff asked the Civil Division to expedite the

processing of his request.  (See id.)

        By letter dated March 22, 2007, the Civil Division informed

plaintiff that his request had been received on March 15, 2007,

and had been assigned tracking number 145-FOI-9135.  (See id. ¶ 5

& Ex. B.)  It also advised plaintiff that it had granted his

request for expedited processing.  (See id.)

        In response to plaintiff's request, the Civil Division

conducted a search of its Civil Case Management System, known as

CASES, using Piechowicz's name as a search term.  (See id. ¶ 7.)

---

[1] This case is a tort action filed by Cheryl Ann Piechowicz
against two federal employees and the United States for their
alleged failure to protect members of her family from Anthony
Grandison, the plaintiff in the instant case.  (See Kovakas Decl.
¶ 4 & n.2.)  The action was ultimately dismissed against the
agents and the government.  See Piechowicz v. United States, 885
F.2d 1207, 1215 (4th Cir. 1989) (affirming the action of the
district court, which dismissed the case against the agents based
on their qualified immunity and against the government under the
discretionary function exception to the Federal Tort Claims Act).

-4-

CASES is a database which contains information about all litigation initiated and defended by the Civil Division. (See id.) Based on the information contained in CASES, the Civil Division contacted the attorneys who had defended the Piechowicz case. (See id.) In turn, those attorneys searched the case file and identified 228 pages of responsive records, consisting of one deposition of a government witness, answers of interrogatories from one government witness, one deposition of a witness for Piechowicz, and answers to interrogatories by two witnesses for Piechowicz. (See id.) By letter dated April 17, 2007, the Civil Division informed plaintiff that, as a result of its search, it had located responsive records that it was withholding in full pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C). (See Kovakas Decl. ¶ 7 & Ex. D.) Additionally, the Civil Division advised plaintiff that he could appeal its determination to the Office of Information and Privacy (OIP) within sixty days of the date of its letter. (See id.)

By letter dated April 25, 2007, plaintiff appealed Civil Division's determination to OIP. (See id. ¶ 8 & Ex. E.) In this letter, plaintiff asserted that several of the third parties that he identified in his initial request, including Cheryl Ann Piechowicz, are deceased. (See id.) Plaintiff also attached to this correspondence a copy of a letter from a court transcription company which states that a named court reporter, who plaintiff

-5-

believes transcribed the depositions for the <u>Piechowicz</u> case, is deceased.  (<u>See</u> <u>id.</u>)  By letter dated May 10, 2007, OIP acknowledged receipt of plaintiff's appeal and assigned it the appeal number 07-1418.  (<u>See</u> <u>id.</u> ¶ 9 & Ex. F.)  By letter dated May 22, 2007, plaintiff provided OIP with supplemental information in connection with his appeal, which consisted of a newspaper article discussing Piechowicz's civil lawsuit dated April 28, 1988.  (<u>See</u> <u>id.</u> ¶ 10 & Ex. G.)

Plaintiff's Complaint was received by the Court on November 16, 2007, and was deemed filed on January 7, 2008.  (<u>See</u> Compl.)  By letter dated February 19, 2008, OIP informed plaintiff that because the matter was presently before the Court, it was closing his administrative appeal file in accordance with 28 C.F.R. § 16.9(a)(3)(2007).  (<u>See</u> Kovakas Decl. ¶ 12 & Ex. H.) By letter dated February 25, 2008, plaintiff asked OIP to reconsider its decision to close his administrative appeal file. (<u>See</u> <u>id.</u> ¶ 13 & Ex. I.)  In response, by letter dated April 29, 2008, OIP informed plaintiff that its original decision to close his administrative appeal file remained appropriate.  (<u>See</u> <u>id.</u> ¶ 14 & Ex. J.)

After learning that Cheryl Ann Piechowicz is, in fact, deceased, the Civil Division re-reviewed the responsive records and determined that an additional release of documents was appropriate.  (<u>See</u> <u>id.</u> ¶ 15.)  By letter dated April 29, 2008,

-6-

the Civil Division provided plaintiff with the non-exempt

portions of 101 pages of records.  (See id. & Ex. K.)

Specifically, it released additional portions of an eighty-eight-

page deposition transcript of Cheryl Ann Piechowicz and of a

thirteen-page document containing her answers to interrogatories.

(See id.)  In sum, the Civil Division released eleven pages in

full and ninety pages in part with withholdings made pursuant to

Exemption 6 and Exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(6),

(b)(7)(C).  (See Kovakas Decl. ¶ 15 & Ex. K.)

<u>Argument</u>

Summary Judgment for Defendant
Civil Division is Proper Inasmuch as
<u>No Information Has Been Improperly Withheld from Plaintiff</u>

In accordance with the statutory requirements of the

FOIA and the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820,

827 (D.C. Cir. 1973), defendant Civil Division's declaration

contains a complete description of, and justification for,

the information withheld by the Civil Division pursuant to

Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).

I.   The Civil Division Properly Withheld Records
     <u>Pursuant to Exemption 6, 5 U.S.C. 552 § 552(b)(6)</u>

Exemption 6 of the FOIA permits agencies to withhold records

that are contained within "personnel and medical files and

similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

In applying this exemption, agencies must determine as a

-7-

threshold matter whether the records involved fall into the categories of "personnel and medical files and similar files." The term "similar files" has been construed broadly to include "'any records on an individual who can be identified as applying to that individual.'"  See Dep't of State v. Wash. Post. Co., 456 U.S. 595, 601 (1982) (quoting the legislative history of the exemption in order to define the term).

In this case, the requested records pertain to a civil suit, Piechowicz v. United States, No. K-86-802 (D. Md. 1989), in which Piechowicz alleged that the government failed to protect her husband and sister who were killed by an individual hired by the plaintiff in the instant case, Anthony Grandison. (See Kovakas Decl. ¶ 16 & n.2.)  These murders were committed in an effort to disrupt the investigation and prosecution of plaintiff on federal drug and weapons charges.  (See id. ¶ 16.)  The responsive records maintained by the Civil Division contain personally identifying information of multiple third parties, including law enforcement officers, witnesses, and targets of the underlying criminal investigation of plaintiff.  (See id. ¶¶ 18-21.)  Accordingly, these records unquestionably qualify as "similar files," under the Supreme Court's broad interpretation of that term.  See Wash. Post. Co., 456 U.S. at 601 (concluding that Congress did not intend "to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information

-8-

. . .[r]ather '[the] exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual'" (quoting the legislative history)).

Once the threshold is satisfied, as it is here, agencies must balance any privacy interests and public interest identified in the records at issue. See New York Times v. NASA, 920 F.2d 1002, 1009 (D.C. Cir. 1990) (stating that "[i]f the information 'applies to an individual,' then it might harm that individual; for that reason it crosses the threshold, and the privacy interests of the person to whom it applies must be considered and balanced against the public interest in releasing it").  The Supreme Court defined these competing interests in Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989).  A privacy interest, the Court found, is generally understood as an "individual's control of information concerning his or her person." Id. at 763.  On the other hand, a qualifying public interest must reveal information that pertains to the operations or activities of the government.  See id. at 797 (stating that the "FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny").

In this case, the Civil Division identified and then balanced the privacy and public interests at stake and properly concluded that the disclosure of certain records and portions of

-9-

certain other records "would constitute a clearly unwarranted
invasion of personal privacy." 5 U.S.C. § 552(b)(6). With
respect to the privacy interests, the Civil Division noted that
the responsive records identify or contain identifiable
information about third party "witnesses, law enforcement
officials, other subjects of the investigation, court personnel,
experts, and attorneys [who were] involved in the criminal law
enforcement investigation as well as the related tort
litigation." (Kovakas Decl. ¶ 18.) Consequently, the Civil
Division found that disclosure could reasonably be expected to
subject them to "harassment, threats, and retaliation." (Id. ¶¶
19, 21.)

Courts generally have recognized that these types of harm
constitute a clearly unwarranted invasion of an individual's
personal privacy. See National Ass'n of Retired Federal
Employees (NARFE) v. Horner, 879 F.2d 873, 878 (D.C. Cir. 1989)
(determining that the release of names and/or addresses of
federal annuitants to a special interest association would
subject them to harassment and constitute a significant invasion
of their privacy); N.Y. Times, Co., 782 F.Supp. at 632 (finding
that the families of the astronauts killed in the Challenger
explosion, who faced risk of media harassment if audiotapes
documenting the last minutes on the shuttle were released, had
substantial privacy interests). Considering the impetus for

-10-

Piechowicz's civil case -- namely, the murder of two individuals by plaintiff who were involved in his criminal prosecution -- the possibility of threats, harassment and retaliation against the third parties mentioned in the requested records is well-founded. (See Kovakas Decl. ¶¶ 19, 21.)  See, e.g., Balderrama v. Dep't of Homeland Security, No. 04-1617, 2006 W.L. 889778, at *9 (D.D.C. Mar. 30, 2006) (permitting an agency to withhold identities of witnesses, undercover officers, informants pursuant to Exemptions 6 and 7(C) in recognition of the fact that they had "substantial privacy interest in not being identified with law enforcement proceedings"); see also Coleman v. FBI, 13 F. Supp. 2d 75, 80 (D.D.C. 1998) (allowing agency to withhold names of government personnel who assisted in an investigation pursuant to Exemption 7(C) because they could be subjected to retaliation, humiliation or embarrassment).

Moreover, an individual's association with a criminal investigation and, in particular, one that has achieved a degree of notoriety like Grandison's criminal case, could very well have a stigmatizing effect.  (See id.)  Although the Piechowicz case is a civil lawsuit, it provides detailed information about the criminal investigation of plaintiff.  Consequently, a persons's association with the Piechowicz case would have the same effect as being associated with the criminal investigation of plaintiff. In the context of Exemption 7(C), Courts have found that an

-11-

individual's mere mention in connection with a criminal investigation constitutes an invasion of privacy. Branch v. FBI, 658 F.Supp. 204, 209 (D.C. Cir. 1987) (observing that "the mention of an individual's name in a law enforcement file will engender speculation and carries a stigmatizing connotation" and, accordingly, concluding that "the release of information that would identify persons mentioned in the investigatory files, whether the persons were merely mentioned incidentally or as suppliers of information in connection with the investigation, would result in an unwarranted invasion of personal privacy"). Furthermore, the individuals who are party defendants to the tort action also have an interest in keeping details of the allegations private, because they could serve as a source of embarrassment or mar their reputations. (See Kovakas Decl. ¶ 21.); see also Dep't of Air Force v. Rose 425 U.S. 352, 381 (1976) (withholding the names and identifying information of cadets who were disciplined by the Air Force Academy because it would have the tendency to embarrass or reflect poorly on their reputations); Stern v. FBI, 737 F.2d 84, 93 (D.C. Cir. 1984) (determining in the context of Exemption 7(C) that "the risk that . . . employees could be linked to serious criminal wrongdoing when, in fact, they were totally cleared of any such acts, increases the potential invasion of privacy that [the exemption] was designed to protect").

-12-

The Civil Division next found that plaintiff did not assert any qualifying public interest in disclosure of the responsive records.  (See Kovakas Decl. ¶¶ 19, 21.) In his Complaint, plaintiff merely contends that the withheld records contain evidence of government misconduct that occurred in connection with his criminal trials.  (See Compl. at 16.)  Specifically, he claims that these records will show that federal and state prosecutors suborned perjury of government witnesses. (See id.)

However, a FOIA plaintiff cannot demonstrate a qualifying public interest by simply alleging government misconduct.  See Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 174 (2004) (holding that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that reasonable officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure").  Rather, in Favish, the Supreme Court established a standard requiring a FOIA requester to "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id.  Furthermore, the Court explained that "[o]nly when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance

-13-

against the cognizable privacy interests in the requested
records." Id.

In this case, plaintiff has provided no meaningful evidence
to support his allegations and, therefore, does not satisfy the
standard set forth in Favish. (See Compl. at 16.) Moreover, the
misconduct alleged in the Piechowicz case pertains to the failure
of government employees to protect certain persons from
plaintiff. (See Kovakas Decl. ¶ 4 & n.2.) That lawsuit does not
concern wrongdoing in the course of plaintiff's prosecution.
(See id.) Accordingly, his generalized claims of government
misconduct do not present a counterweight to the substantial
privacy interests that the Civil Division has identified. (See
Compl. at 16; Kovakas Decl. at ¶¶ 18, 19, 21.)

Moreover, plaintiff's personal interest in how his criminal
trial was conducted would not sufficiently advance any public
interest. See, e.g., Neely v. FBI, 208 F.3d 461, 464 (4th Cir.
2000) (stating that "courts have sensibly refused to recognize,
for purposes of FOIA, a public interest in nothing more than the
fairness of a criminal defendant's own trial"); Cano v. DEA, No.
04-935, 2006 WL 1441383, at *4 (D.D.C. May 24, 2006) ("When
weighing the privacy interests against plaintiff's purely
personal interests in challenging his conviction, the balance
clearly favors non-disclosure."); Mack v. Dep't of Navy, 259
F.Supp. 2d 99, 109 (D.D.C. 2003) (finding that "courts

-14-

consistently have refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction").

Accordingly, because the Civil Division was unable to identify any public interest that would prevail over the substantial privacy interests that it identified, it rightfully withheld the information pursuant to Exemption 6.  See Beck v. Dep't of Justice, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (observing that when the request implicated no public interest at all, the court "'need not linger over the balance; something . . . outweighs nothing every time'" (quoting NARFE, 879 F.2d at 879)).

   II.   The Civil Division Properly Withheld Records Pursuant
         to Exemption 7(C), 5 U.S.C. 552 § 552(b)(7)(C)

Exemption 7 protects "records or information compiled for law enforcement purposes" to the extent disclosure could "reasonably be expected to" cause one of the harms enumerated under the subsection of the exemption.  5 U.S.C. § 552(b)(7).  Accordingly, an agency must show that the records or information satisfy this threshold before determining whether one of the specified harms applies.  For the reasons set forth below, the Civil Division properly found that requested records meet the Exemption 7 threshold.

Although plaintiff seeks records related to a civil lawsuit in which the government is a defendant, the records nonetheless

-15-

consist of information that was compiled for a law enforcement
purpose.  As an initial matter, Exemption 7 does not impose a
requirement that the information be contained in an investigatory
record.  The Supreme Court expressly addressed this issue in FBI
v. Abramson, 456 U.S. 615 (1982), where the FBI sought to protect
law enforcement information that it had summarized in a non-law
enforcement record that was transmitted to the White House.  In
that case, the Supreme Court held that information that was
originally compiled in law enforcement records "continues to meet
the threshold requirements of Exemption 7 where that recorded
information is reproduced or summarized in a new document
prepared for a non-law enforcement purpose."  Id. at 631-2; see
also Binion v. Dep't of Justice, 695 F.2d 1189, 1193 (9th  Cir.
1983) (finding that "FBI information protected by the FOIA
Exemption 7 is derivatively exempt in the Pardon Attorney's
documents").  However, the government has the burden to
demonstrate that the material "originated in a record protected
by Exemption 7."  See Abramson, 456 U.S. at 631-632.

     Here, the Piechowicz case deals entirely with the conduct of
federal law enforcement officers during the course of the
government's criminal investigation of Grandison.  (See Kovakas
Decl. ¶ 16 & n.2.)  Piechowicz sued the agents in their official
capacities and the United States under the Federal Torts Claims
Act.  (See id.)  In order to defend against this lawsuit, the

-16-

federal officers and the government were required to demonstrate
that the agents had acted in accordance with their statutory law
enforcement authority. (See id. ¶¶ 16, 17)  Accordingly, the
agents and the federal government necessarily reiterated and
relied on information that had been compiled in connection with
the underlying criminal investigation of Grandison, or derived
therefrom, in order to show that their conduct was proper. (See
id.)

     Furthermore, it is clear that the information gathered in
the course of the underlying criminal investigation of Grandison
was originally compiled for a law enforcement purpose. (See id.
¶ 17); see also United States v. Grandison, 783 F.2d 1152, 1152
(4th Cir. 1986) (noting the specific statutory authority relied
upon by the agents in the criminal investigation of Grandison).
The Federal Bureau of Investigation and the Drug Enforcement
Administration, the agencies that conducted the criminal
investigation of Grandison, are authorized by statute to enforce
laws pertaining to controlled substances and firearms. (See
Kovakas Decl. ¶ 17); see also Grandison, 782 F.2d at 1152.
During that investigation, the agents acted pursuant to those
grants of authority. (See Kovakas Decl. ¶ 17); see also
Grandison, 782 F.2d at 1152.  Although the requested records
appear to pertain to a civil litigation file, the information
that was used by the government to defend itself derived from

-17-

information that was complied for a specific criminal
investigation and prosecution.  (See Kovakas Decl. ¶ 17.)
Accordingly, the withheld records satisfy the threshold of
Exemption 7.

    III.  The Civil Division Properly Withheld Records
          Pursuant to Exemption 7(C), 5 U.S.C. (b)(7)(C)

Once the threshold of Exemption 7 is met, an agency must
demonstrate that the disclosure of the information could
reasonably be expected to lead to one of the harms identified in
the subparts of the exemption.  In this case, the Civil Division
invoked Exemption 7(C) as the justification for withholding law
enforcement information that "could reasonably be expected to
constitute an unwarranted invasion of personal privacy."
5 U.S.C. § 552(b)(7)(C).

Although Exemptions 6 and 7(C) have different thresholds,
they employ the same type of analysis, which requires a balancing
of privacy interests and any competing public interest.  See
Favish, 541 U.S. at 165-6 (describing the differences between the
two exemptions).  Since law enforcement records are inherently
sensitive, Exemption 7(C) only requires that disclosure "could
reasonably be expected to constitute an invasion of personal
privacy," which is a lesser showing than the "clear" invasion of
personal privacy required by Exemption 6.  Compare 5 U.S.C.
§ 552(b)(6), with 5 U.S.C. § 552(b)(7)(C).  In recognition of

-18-

this difference, Courts have permitted agencies to withhold certain types of information categorically under Exemption 7. See Reporters Committee for Freedom of the Press, 489 U.S. at 776-7 (concluding that a categorical balance, i.e., "when a case fits into a genus that typically tips in one direction," may be undertaken with respect to Exemption 7(C)). As the foregoing discussion will demonstrate, the identities of the individuals who appear in the responsive records are entitled to categorical protection.

The privacy interests that were identified by the Civil Division under Exemption 6 analysis likewise apply to the analysis under Exemption 7(C). The witnesses, targets of the investigation, and even those mentioned incidentally in these law enforcement records, face the possibility of retaliation or harassment and would suffer from an unwarranted invasion of personal privacy if the identities were disclosed. (See Kovakas Decl. ¶¶ 18, 19, 21.) The Piechowicz case itself illustrates the significant risks of retaliation and harassment that could reasonably result from the disclosure of the identities of the individuals who are associated with a criminal investigation in general, and with Grandison's in particular. (See Kovakas Decl. ¶¶ 19, 21.) In addition, the release of the identities of law enforcement agents "could compromise their ability to conduct

-19-

further investigations or prosecutions, and/or subject them to intimidation and harassment."  (Id. ¶ 19.)

It is well-established that, absent some compelling interest, the names of individuals mentioned in law enforcement files should be withheld.  See SafeCard Serv. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (permitting the categorical withholding of "the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [unless disclosure] is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity"); Nations Magazine v. U.S. Customs Serv., 71 F.Supp. 885, 896 (D.C. Cir. 1995) (stating that "to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure under SafeCard"); see also Coleman, 13 F.Supp. 2d at 80 ("Individuals involved in criminal investigations, whether as a witness or a suspect, maintain a strong personal privacy interest.").  Likewise, courts have allowed agencies to categorically withhold the names of law enforcement officers.  See Mack, 259 F.Supp. 2d at 109 (protecting the identities of law enforcement agents, victims, witnesses, subjects of investigative interest, and third parties contained in investigative records, categorically).

-20-

For the same reasons that were discussed previously in connection with Exemption 6, there is no sufficient public interest to overcome the substantial privacy interests of the individuals identified in the withheld records. Here, the only public interest identified by plaintiff is an allegation of government misconduct committed in connection with his own criminal trial, which he believes will be borne out by disclosure of the records at issue. (See Compl. 16.) In accordance with the standard established by the Supreme Court in Favish, a FOIA plaintiff must provide evidence to support such an allegation. See Favish, 541 U.S. at 175 (holding that "allegations of government misconduct are 'easy to allege and hard to disprove' . . . so courts must insist on a meaningful evidentiary showing"). However, plaintiff's claims of misconduct on the part of federal employees is entirely unsupported and, accordingly, insufficient to meet the public interest standard. See Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (concluding that when "governmental misconduct is alleged as the justification for disclosure, the public interest is 'insubstantial' unless the requester puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought 'is necessary in order to confirm or refute that evidence.' (quoting Safecard Servs., 926 F.2d at 1205-1206)). Similarly, plaintiff's

-21-

personal interests in challenging his conviction and his quest to find the "real person, or persons responsible for the murders" do not constitute a qualifying public interest under the FOIA. (See Compl. at 16.)  See Neely, 208 F.3d at 464; Cano, 2006 WL 1441383, at *4; Mack, 259 F.Supp. at 109.  Accordingly, in recognition of the weighty privacy interest at stake, the Civil Division's withholdings pursuant to Exemption 7(C) were entirely appropriate.

IV.  Individuals Identified in the Records Did Not Waive
     Their Privacy Interests under the FOIA

Plaintiff claims that one of the federal agents involved in the Piechowicz case waived his privacy interests by virtue of the fact that he discussed the matter with the media.  (See Compl. at 11-12.)  Plaintiff's argument is clearly erroneous.  In Kimberlin v. Department of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998), the Court of Appeals for the District of Columbia Circuit held that a government employee who had made public admissions that he had been investigated and disciplined continued to maintain a "privacy interest . . . in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment -- and perhaps, too, an interest in preventing hitherto speculative press reports of his misconduct from receiving authoritative confirmation from an official source."  Accordingly, the mere fact that an individual acknowledges aspects of an investigation

-22-

in a public forum is not tantamount to a complete waiver of his or her privacy interests.

Plaintiff also alleges that federal agents publicly testified about the particulars of the underlying investigation during his own criminal trial. (See Compl. at 12-13.) This argument is also without merit. Even assuming arguendo that plaintiff's factual assertions are correct, the agents' testimonies do not constitute a waiver of their privacy interests. Rather, individuals who testify at criminal trials, either as a witness or a suspect, retain strong privacy interests. See, e.g. Meserve v. Dep't of Justice, No. 04-1844, 2006 WL 56732, at * 23 (D.D.C. Aug. 14, 2006) (finding that a witness who testified at trial did not waive her privacy interests); Lardner v. Dep't of Justice, No. 03-0180, 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005) (concluding that name of a witness who testified at public trial was properly withheld under Exemption 7(C)). Furthermore, to the extent that a witness waives any privacy rights, it only applies to the "scope of the trial record." See Isley v. EOUSA, No. 98-9058, 1999 WL 1021934, at *4 (D.C. Cir. 1992) (holding that "the testimony of [witnesses] at trial [does not] place all documents relating to their testimony in the public domain . . . [r]ather, under Davis, the fact that they testified only bars the government from withholding the testimony itself"); Coleman, 13 F. Supp. 2d at 80

-23-

(stating that "an individual who testifies at trial does not
waive this privacy interest beyond the scope of the record"
(citing Burge v. Eastburn, 934 F.2d 577, 579 (5th Cir. 1991)).
Accordingly, testimony given during Grandison's criminal trial
does not waive the privacy interests of individuals who provided
information during the discovery process associated with the
Piechowicz case, which is the subject of plaintiff's request.

        Moreover, in his Complaint, plaintiff names several
individuals who he asserts were associated with his criminal
investigation, presumably in an attempt to show that they have
waived their privacy interests because their names are known to
him and at one time appeared in the public domain.  However,
plaintiff's conjectures that he knows the persons identified in
the withheld records do not constitute a waiver of these
individuals' privacy interests.  See Weisburg v. Dep't of
Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984) ("The fact that
[plaintiff] has apparently been able to piece together the manner
in which the identities of these alleged informants fit in with
the FBI's . . . investigation in no way undermines the privacy
interests of these individuals in avoiding harassment and
annoyance that could result should the FBI confirm to [plaintiff]
the presence of their names in the . . . documents.").
Similarly, it is plaintiff's burden to prove that any of the
withheld information is identical to information in the public

-24-

domain.  See Davis, 968 F.2d at 1276 (stating that "it is
established that 'a plaintiff asserting a claim of prior
disclosure must bear the initial burden of pointing to specific
information in the public domain that appears to duplicate that
being withheld'" (quoting Afshfar v. Dep't of State, 702 F.2d
1125, 1130 (D.C. Cir. 1983))).  Accordingly, plaintiff has failed
to show that any of the information contained in the Piechowicz
case is in the public domain.

   V.   The Civil Division Provided Plaintiff with All
        Reasonably Segregable Portions of the Responsive
        Records

     The FOIA imposes an obligation on agencies to release any
reasonably segregable portions of records.  See 5 U.S.C.
§ 552(b); see also Billington v. Dep't of Justice, 233 F.3d 581,
586 (D.C. Cir. 2000) (explaining that "[t]his segregability
requirement limits claims of exemption to discrete units of
information; to withhold an entire document, all units of
information in that document must fall within a statutory
exemption"); Trans-Pacific Policing Agreement v. U.S. Customs
Serv., 117 F.3d 1022, 1027 (D.C. Cir. 1999) (stating that "[i]t
has long been a rule in this Circuit that nonexempt portions of a
document must be disclosed unless they are inextricably
intertwined with exempt portions").  Agency affidavits are
sufficient for segregability purposes where they "'show with
reasonable specificity why the documents fall within the

-25-

exemption.'"  <u>Quinon v. FBI</u>, 86 F.3d 1222, 1227 (D.C. Cir. 1996)

(quoting <u>Hayden v. NSA</u>, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

The Civil Division fulfilled these requirements by

conducting a page-by-page and line-by-line review of the

responsive records in this action.  (See Kovakas Decl. ¶ 22.)  As

a result of that review, all reasonably segregable non-exempt

information has been provided to plaintiff.  (<u>See</u> <u>id.</u>)  The Civil

Division's affidavit also demonstrates that although it

determined that some of the information contained in the late

Cheryl Ann Piechowicz's deposition and her answers to

interrogatories was reasonably segregable, it further determined

that due to the nature of the underlying civil case and the

relatively small number of persons involved with it, no amount of

redaction would adequately shield the identities of other third

parties.  (<u>See</u> Kovakas Decl. ¶¶ 18, 19, 21.)  The persons who

were deposed or who answered interrogatories in connection with

the <u>Piechowicz</u> case can be identified by the nature of the

allegations and the details they provide regarding their

involvement in the law enforcement investigation of plaintiff.

(<u>See</u> Kovakas Decl. ¶¶ 18, 19, 21.)  Personally-identifying

information is contained in the wording of the deposition

questions and interrogatories, as well as the in witnesses'

responses to these inquiries.  (<u>See</u> <u>id.</u> ¶ ¶ 19, 21.)  In

addition, these records also contain identifying details about

other third parties who were involved in some aspect of the law

-26-

enforcement investigation.  (See id. ¶ 19.)  Accordingly, there were no further portions of these records that could be reasonably segregated for release.

## Conclusion

For the reasons set forth above, and based upon the entire record herein, defendant Civil Division respectfully submits that its motion for summary judgment should be granted.

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


                                        /s/
Dated:  May 20, 2008     _____
                         CAROLINE A. SMITH
                         (DC Bar #501942)
                         Attorney-Advisor
                         Office of Information and Privacy
                         United States Department of Justice
                         1425 New York Ave., NW, Suite 11050
                         Washington, DC  20530-0001
                         (202) 514-8858

                         Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
ANTHONY GRANDISON,            )
                             )
        Plaintiff,            )
                             )
    v.                        )    Civil Action No. 08-00024 (RJL)
                             )
U.S. DEPARTMENT OF JUSTICE,   )
    et al.,                   )
                             )
        Defendants.           )
_____)
```

<u>ORDER</u>

Upon consideration of Defendant Civil Division's Motion for Summary Judgment, of all papers filed with respect thereto, and of the entire record herein, and it appearing to the Court that the granting of defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, would be just and proper, it is by the Court this _____ day of _____ 2008,

ORDERED that Defendant Civil Division's Motion for Summary Judgment be, and it hereby is, granted; and it is further

ORDERED that this action be, and it hereby is, dismissed as to the Civil Division.

_____
UNITED STATES DISTRICT JUDGE

```
cc:  Mr. Anthony Grandison      Caroline A. Smith
     DOC ID No. 172622          Attorney-Advisor
     Maryland Correctional      Office of Information & Privacy
       Adjustment Center        1425 New York Ave., NW,
     401 East Madison Street      Suite 11050
     Baltimore, MD  21202       Washington, DC  20530
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY GRANDISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-00024 (RJL) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF JAMES M. KOVAKAS

### I. INTRODUCTION

I, James M. Kovakas, make the following declaration under penalty of perjury.

1. I am the Attorney-In-Charge of the Freedom of Information and Privacy Acts (FOI/PA) Office, Civil Division, Department of Justice. The FOI/PA Office responds to requests for records of the Civil Division, made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), as amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 and/or the Privacy Act (PA), 5 U.S.C. § 552a (2006). Pursuant to Civil Division Directive No. 137-80, I am authorized to exercise the authority of the Assistant Attorney General, Civil Division, to deny requests for records under 5 U.S.C. §§ 552 and 552a.

2. My official duties include the supervision of all processing of such requests for Civil Division records. Pursuant to my duties I am familiar with the administrative procedures used in the processing of record requests under the FOIA and the PA at the Department of Justice.

3. My knowledge of the processing of plaintiff's request results from my personal review of the documents involved as well as information obtained in my official capacity.

2

## II.  ADMINISTRATIVE PROCESSING OF THE REQUEST

4.  By letter dated March 7, 2007, addressed to the Director, Torts Branch, Civil Division, Department of Justice, plaintiff Anthony Grandison requested, under the Freedom of Information Act (FOIA), copies of certain records from the civil case captioned <u>Cheryl Ann Piechowicz, et al., v. United States of America.</u>  (<u>See</u> Ex. A.)  Specifically, plaintiff requested depositions of two Cheryl Ann Piechowicz, and James Savage; answers to interrogatories by Piechowicz, Savage, James Ryan, and any plaintiffs in the civil case; any and all admissions of Piechowicz, Savage, Ryan, and any plaintiffs in the civil case; and complete copies of any and all exhibits admitted during the course of depositions.  (<u>See</u> Ex. A.)  In addition, plaintiff sought expedited processing of his request.  (<u>See</u> Ex. A.)  Plaintiff did not provide a privacy waiver or proof of death for any of the individuals named in his request.  (<u>See</u> Ex. A.)

5.  By letter dated March 22, 2007, the Civil Division acknowledged receipt of plaintiff's request on March 15, 2007, assigned it tracking number 145-FOI-9135, and advised plaintiff of its decision to grant expedited processing.  (<u>See</u> Ex. B.)

6.  By letter dated April 19, 2007, plaintiff inquired to the Civil Division about the status of his request.  (<u>See</u> Ex. C.)

7.  I conducted a search for responsive records by using the Civil Division Case Management System ("CASES").  CASES contains information related to all litigation received and initiated by the Civil Division.  Information about Civil Division's cases are retrieved using various identifiers, such as the names of parties, and assigned government attorneys.  CASES is the only database maintained by the Civil Division that would contain information about records responsive to plaintiff's request.  Upon a search of CASES using Piechowicz's name, I identified

3

the Civil Division attorneys who worked on the Piechowicz case. I contacted these attorneys, who, in turn, provided me with records from the case file.[1] In total, 228 pages of responsive records were identified consisting of: one deposition of a government witness; answers to interrogatories from one government witness; one deposition of a witness for Piechowicz; and answers to interrogatories by two witnesses for Piechowicz. We did not locate any records responsive to the portion of plaintiff's request asking for admissions or exhibits submitted during course of any depositions. By letter dated April 17, 2007, plaintiff was advised that all records pertaining to the Piechowicz case were being withheld pursuant to 5 U.S.C. 552(b)(6) and (b)(7)(C) in order to protect the personal privacy of the individuals discussed or referenced in those records. (See Ex. D.) Plaintiff was also informed of his administrative appeal rights. (See Ex. D.)

8. By letter dated April 25, 2007, plaintiff filed an administrative appeal of Civil Division's action to the U.S. Department of Justice, Office of Information and Privacy (OIP). (See Ex. E.) In this letter, plaintiff asserted that three individuals, who he either expressly named in his request or who he presumed are mentioned in the withheld files, are deceased. (See Ex. E.) In addition, plaintiff attached supporting documentation showing that one of these individuals is deceased. (See Ex. E.)

9. By letter dated May 10, 2007, OIP acknowledged receipt of plaintiff's appeal on May 8, 2007 and assigned to it the tracking number 07-1428. (See Ex. F.)

10. By letter dated May 22, 2007, plaintiff provided OIP with additional information

---

[1] That civil suit, which is the subject of the request, was initiated by Cheryl Ann Piechowicz against two federal employees and the United States for their failure to protect her family members from Anthony Grandison, plaintiff in the instant case.

4

regarding his appeal. (See Ex. G.) Specifically, plaintiff attached a newspaper article from the

Evening Sun from April 28, 1988, that discusses the civil case which is the underlying subject of

his FOIA request. (See Ex. G.)

11. On January 7, 2008, plaintiff filed the present litigation. (See Complaint.)

12. By letter dated February 19, 2008, OIP informed plaintiff that because the matter was

presently before the Court, it was closing his administrative appeal file in accordance with 28

C.F.R. § 16.9(a)(3)(2007). (See Ex. H.) OIP's letter contained a typographical error which stated

that plaintiff had appealed from an action of the Executive Office for United States Attorneys,

rather than from an action of the Civil Division. (See Ex. H.)

13. By letter dated February 25, 2008, plaintiff requested that OIP reconsider its decision

to close his appeal file. (See Ex. I.)

14. By letter dated April 29, 2008, OIP advised plaintiff that its original decision to close

his appeal file remained appropriate. (See Ex. J.) The letter also corrected the above-referenced

typographical error contained in OIP's letter dated February 19, 2008. (See Ex. J.)

15. Subsequent to the commencement of plaintiff's civil action, I learned from an Internet

source that Cheryl Ann Piechowicz is deceased. Based on this information, I conducted a further

review of the responsive records and determined that portions of information contained in the

deposition and the interrogatories answered by Cheryl Ann Piechowicz were appropriate for

release. I determined that I could reasonably segregate portions of her deposition and her

answers to interrogatories while continuing to protect the privacy interests of other individuals

mentioned in those records. Accordingly, by letter dated April 29, 2008, a supplemental

administrative response was made to plaintiff, providing him with copies of non-exempt portions

5

of Piechowicz's deposition transcript consisting of eighty-eight pages and a thirteen-page record

containing her answers to interrogatories. (See Ex. K.) Of the 101 pages that were released,

eleven pages of records were released in full and ninety pages were released in part with

withholdings made pursuant to Exemptions 6 and 7(C).

### III.  FREEDOM OF INFORMATION ACT EXEMPTIONS

16. Exemption 7 threshold:  Exemption 7 of the FOIA protects from mandatory

disclosure records or information compiled for law enforcement purposes, but only to the extent

that disclosure could reasonably be expected to cause one of the harms enumerated under the

subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm which could

reasonably be expected to result from disclosure concerns the personal privacy of individuals.

See 5 U.S.C. § 552(b)(7)(C). All the records withheld pertain to the civil lawsuit, Cheryl Ann

Piechowicz, et al. v. United States, No. K-86-802 (D. Md. 1989), and satisfy the threshold

requirement of Exemption 7. Cheryl Ann Piechowicz alleged in that action that two federal law

enforcement officials failed to offer adequate protection for her family in connection with their

assistance in the criminal investigation and prosecution of Anthony Grandison.[2]  Piechowicz

brought that lawsuit against the government and its agents following the murders of her husband,

Scott Piechowicz, and her sister, Susan Kennedy, which were arranged by Grandison. Although

the requested records concern Piechowicz's civil case, they pertain to the underlying law

enforcement investigation and prosecution of Grandison on federal drugs and weapons charges

which precipitated the murders.

-----

[2] See Piechowicz v. United States, 885 F.2d 1207, 1209 (4th Cir. 1989) (stating that
Piechowicz's claims arising out of the Federal Torts Claim Act and under the Fifth Amendment
alleged that the actions of federal agents "negligently or recklessly led to the murders").

6

17. The information used to defend the tort action was initially compiled for law enforcement purposes. The underlying law enforcement investigation was conducted by the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI), which are both criminal law enforcement agencies within the Department of Justice. The DEA acted pursuant to its authority to enforce the criminal laws pertaining to controlled substances under 28 U.S.C.S. § 841(a) (possession of cocaine and heroin with intent to distribute).[3] The FBI acted under the authority of 18 U.S.C.S. § 922(h)(1) (possession by a convicted felon of a firearm shipped in interstate commerce).[4] Subsequent to its examination of federal witness protection statutes and regulations, the court in Piechowicz concluded that the agents had exercised their discretion consistent with their statutory law enforcement authority.[5] Likewise, the court determined that the federal government was not liable in accordance with a provision of the Federal Torts Claims Act, which immunizes it from the actions of federal employees who act pursuant to statutory authority.[6] Accordingly, the court, in order to make a determination on liability, was required to thoroughly examine the conduct of federal agents in the course of the

--------

[3] See United States v. Grandison, 783 F.2d 1152, 1152 (4th Cir. 1986) (discussing the underlying investigation and the statutory bases for the actions of the DEA and FBI).

[4] See id.

[5] Piechowicz, 885 F.2d at 1212.

[6] See Piechowicz, 885 F.2d at 1215 (affirming the action of the district court, which dismissed the case against the agents based on their qualified immunity and against the government under the discretionary function exception to the Federal Tort Claims Act); see also 28 U.S.C. § 2680(a) ("Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.")

7

underlying investigation.

18. <u>Records withheld pursuant to Exemption (b)(7)(C)</u>: Exemption 7(C) was used to

protect from disclosure information compiled for law enforcement purposes that, if released to

the public, could reasonably be expected to constitute an unwarranted invasion of personal

privacy. The Civil Division released portions of an eighty-eight-page transcript of the deposition

of Cheryl Ann Piechowicz and a thirteen-page record containing her answers to interrogatories.

With respect to these records, the Civil Division withheld the names as well as any information

that describes third parties or their activities in sufficient detail that would allow a knowledgeable

reader to infer the identities of witnesses, law enforcement officials, other subjects of the

investigation, court personnel, experts, and attorneys involved in the criminal law enforcement

investigation as well as the related tort litigation.

19. The Civil Division also withheld in full 127 pages consisting of a deposition of one

government witness, answers to interrogatories provided by a witness for Piechowicz, and

answers to interrogatories by a witness for the government. The Civil Division determined that

no information from these records could be released without causing an invasion of an

individual's personal privacy. The nature of the underlying tort action is such that the records

withheld in full contain information detailing allegations of misconduct on the part of federal

agents. Due to the limited number of individuals involved in the <u>Piechowicz</u> case, no amount of

redaction would shield the identities of witnesses deposed or questioned. These individuals

would be would be identified by the nature of the allegations, the details they provide, and the

circumstances surrounding their testimony. Even the questions posed during the depositions and

in the interrogatories tend to identify the respondent. In addition, both the descriptions provided

8

in connection with those allegations and the information presented by the government to rebut

those allegations would identify special agents, attorneys, witnesses, other suspects involved in

the criminal investigation of Grandison.  The Civil Division's decision to redact certain

information from the ninety pages released in part as well as to withhold 127 pages of records in

full pursuant to Exemption 7(C) was based on several factors.  The release of the identities of any

of the individuals associated with the underlying criminal law enforcement action against

plaintiff could subject them to retaliation.  The tort litigation that forms the basis of this case

demonstrates that the danger involved in the release of personal information is real.  In addition,

there is a stigma which attaches to individuals who are discussed, or merely mentioned in law

enforcement files.  Also, for the law enforcement officers named in the requested records, the

release of their identities could compromise their ability to conduct further investigations or

prosecutions, and/or subject them to intimidation or harassment.  None of the persons mentioned

in these records have consented to the disclosure of their names or other identifying information.

Furthermore, plaintiff has not identified, at any stage in this litigation or in his correspondence

with the Civil Division at the administrative level, any qualifying public interest to balance

against the significant privacy interests at stake.  Rather, plaintiff merely asserts that the aspects

of the case were, at one time, were reveled to the public in courtroom testimony and by the

media.  Accordingly, the Civil Division has determined that there is no cognizable public interest

sufficient to outweigh the significant privacy interest involved.

    20.  Exemption 6 threshold:  Exemption 6 of the FOIA exempts from disclosure

"personnel and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  See 5 U.S.C. § 552(b)(6).  The records responsive to

9

plaintiff's request contain particularized information about third parties. Accordingly, I

determined that they constituted "similar files" under Exemption 6.

21. <u>Records withheld pursuant to Exemption (b)(6)</u>: For the same reasons discussed in

numbered paragraphs 18 and 19 above, I determined that the release of redacted and withheld

information would also constitute a clearly unwarranted invasion of personal privacy under

Exemption 6. From the records that were withheld in part, the Civil Division redacted names

and identifying information associated with various third parties, including law enforcement

officers, witnesses, targets of the underlying investigation, attorneys, and court personnel. The

redacted information would enable a knowledgeable party to identify the individuals based either

on direct evidence or the circumstances related in the records. With respect to the 127 pages that

the Civil Division withheld in full, no portions of these documents can be released without

personally identifying an individual. These documents consist of a deposition and interrogatories

that were answered by individuals in association with Piechowicz's tort action. The nature of

questions and their testimony, which required an in-depth discussion of the law enforcement

investigation into Grandison's criminal activities and their own conduct in relation to that matter,

would identify them. In addition, their testimony discusses the actions of other third parties

linked to that investigation, including law enforcement personnel, witnesses, and other suspects.

The release of their identities in connection with the law enforcement action could reasonably be

expected to subject them to harassment, threats and retaliation, and carries stigmatizing

connotations. This concern is particularly acute in light of the type of plaintiff's history of

violent crimes. Furthermore, individuals mentioned in the files were not only associated with the

underlying law enforcement investigation, but were also accused of misconduct in the

10

performance of their jobs.  These allegations, which were ultimately dismissed,[7] could serve to

embarrass the persons involved or damage their reputations.  As with my assessment involving

Exemption 7(C), I likewise concluded that under Exemption 6 disclosure is inappropriate

because there a significant privacy interest and no adequate corresponding public interest which

would shed light on the activities or operations of the government.

## IV. SEGREGABILITY

22.  I have reviewed the responsive records page-by-page and line-by-line to identify

information exempt from disclosure.  I have released all reasonably segregable portions of the

records to plaintiff.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this ___15th___ day of May, 2008.

James M. Kovakas
Attorney-In-Charge
FOI/PA Office, Civil Division
Department of Justice

---

[7] See Piechowicz, 885 F.2d at 1215 (dismissing the tort action against the government
and its agents).

# Exhibit A

No. 08-00024 (D.D.C.)(RJL)

145-FOI-9135
#10035

Anthony Grandison #17262
MCAC C-40
401 E. Madison Street
Baltimore, MD. 21202

Chief of Freedom of Information Privacy Acts Section
Director, Torts Branch
Attorneys Civil Division
U.S. Department of Justice
P.O. Office Box 7146
Benjamin Franklin Station
Washington, D.C. 20044

RECEIVED
2001 MAR 15 P 2: 11
FOI/FA UNIT
CIVIL DIVISION

Re: Cheryl Ann Piechowicz, et al v. United States, Civil No. K-86-802
Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1988) (Nos. 88-2099, 88-2100)

Dear Tort Branch

This is a request pursuant to the Freedom of Information Act (5 U.S.C. &552, et seq.). Please be advised by this letter that I wish for my request to be processed in an expedited manner, pursuant to 5 U.S.C. &552(a)(E)(i).

Please be advised that Cheryl Ann Piechowicz, et. al filed a law suit or tort actions against the former Assistant U.S. Attorney James Savage, John Ryan a DEA agent, and the United States of America on March 13, 1986 charging 12 count complaint.

1. By this letter, pursuant to the Freedom of Information Act, I am requesting that your office specially turn over to me any and all a complete copy (every page) of the Deposition taken on March 30, 1987 of Cheryl Ann Piechowiz in Civil No. K-86-802 by Burke M. Wong, Esq., an attorney for the U.S. Justice Department Tort Branch. A complete copy (every page) of the Deposition taken on April 1, 1987 of former Assistant U.S. Attorney James C. Savage in Civil No. K-86-802 by Plaintiffs Cheryl Ann Piechowicz, et al, Stephen Goldberg, Esq., and George R. Hoffman, Esq.,.

1

2. I am requesting that your office specially turn over to me any and all a complete copy (every page) of any Interrogatories filed by the defendants Savage and Ryan in this civil case, and any filed by the Plaintiffs Cheryl Ann Piechowicz, et. al, in this civil case above.

3. Complete copies of any and all Admissions filed by both the Defendants Savage and Ryan and the Plaintiffs Cheryl Ann Piechowicz, et al, in the civil case above.

4. Complete copies of any and all Exhibits admitted during the course of the Depositions conducted on March 30, 1987 and April 1, 1987 or any other dates thereafter.

### Compelling Need For Expedited Processing.

I am sure that this Agency is aware of the time limitations on capital litigation in Death Penalty cases pursuant to Antiterrorism and Effective Death Penalty Act, 28 U.S.C. &&2261-2266. I am presently challenging my convictions and sentences in the State Courts, and without expedited processing of my request I am in jeopardy of suffering irreparable injury, by not conforming with the time restrictions imposed by the State Court. I have no other remedies available to me to challenge my State convictions and sentences of death other than the present one pending in the State Court of Somerset County, in Criminal Case No. 4010.

I believe that this demonstrates a compelling need for expedited processing as set forth in 28 U.S.C. &&552(a)(E)(i)(I).

Thanking you for your time and assistance concerning this matter. Please notify me of any of your procedures concerning your requirements in FIOA request. And further advise me of your appeal procedure in these matters in the event your Office decides to deny this request, the reasons and grounds for doing so. Please notify me at the above address when you are in receipt of this request.

Sincerely,

Anthony Grandison #172622

Dated: 3-7-2007

2

## AFFIDAVIT OF REQUESTER ANTHONY GRANDISON

I, Anthony Grandison, hereby depose and say:

1. I Anthony Grandison am the Requester seeking the information in this matter, to which the request is attached to this Affidavit who makes this request for Freedom of Information from the U.S. Justice Department Torts Branch. My FBI number according to my FBI Rap sheet is listened as "No. 382-317 H.

I, ANTHONY GRANDISON, HEREBY AFFIRM, UNDER THE PENALTIES OF PERJURY, THAT THE CONTENTS OF THIS AFFIDAVIT AND REQUEST FOR FREEDOM OF INFORMATION ARE TRUE AND CORRECT, TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEFS.

Date  5-7-2007

Anthony Grandison, #172622
MCAC C-40
401 E. Madison Street
Baltimore, Md. 21202

# Exhibit B

No. 08-00024 (D.D.C.)(RJL)



**U.S. Department of Justice**

Civil Division

---

JMK:jk:145-FOI-9135

*Washington, D.C. 20530*

March 22, 2007

Mr. Anthony Grandison
Reg. No. 172622
MCAC C-40
401 E. Madison Street
Baltimore, MD 21202

Dear Mr. Grandison:

This letter is in response to your March 7, 2007 request, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §552, for copies of certain documents pertaining to the case Cheryl Ann Piechowicz, et al. V. United States, *Civil No. K-86-802*. We received your request in this office on March 15, 2007 and assigned control number 145-FOI-9135 to your request.

In your letter you also requested expedited review of your request because you are "in jeopardy of suffering irreparable injury."

I reviewed your request under departmental regulations and have granted your request to expedite processing pursuant to 28 CFR 16.5(d)(1)(iii).

We have undertaken a preliminary search for records responsive to your request and will respond promptly.

Sincerely,

*James M. Kovakas*

James M. Kovakas
Attorney In Charge
FOI/PA Unit, Civil Division

# Exhibit C

No. 08-00024 (D.D.C.)(RJL)

Anthony Grandison #172622
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

Mr. James M. Kovakas
Attorney in Charge
FOI/PA Unit, Civil Division
U.S. Department of Justice
Washington, D.C. 20530

Re: Control Number 145-FOI-9135

Dear Kovakas

Please be advice that on March 22, 2007 I received a letter from your office informing me that your Office was responding to my March 7, 2007 request, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. &552, for copies of certain documents filed in Cheryl Ann Piechowicz, et al. v. United States, Civil No. K-86-802.

Your letter also informed me that you were pursuant to departmental regulations granting my request to expedite processing pursuant to 28 CFR 16. 5 (d) (1) (iii). It has been almost 30 days since your March 22, 2007 letter and I have not heard anything from your Office. Since you have granted my request to expedite the matter I am inquiring exactly how much longer your search will take.

Thanking your Office in advance for your time and any consideration in this matter. I await your reply.

Respectfully, submitted
Anthony Grandison #172622   172672

RECEIVED
2007 MAY -9 A 11: 04
FOI/PA UNIT
CIVIL DIVISION

April 19, 2007
4-19-2007

# Exhibit D

No. 08-00024 (D.D.C.)(RJL)



**U.S. Department of Justice**

Civil Division

---

*Washington, D.C. 20530*

JMK:jk:145-FOI-9135                    April 17, 2007

Mr. Anthony Grandison
Reg. No. 172622
MCAC C-40
401 E. Madison Street
Baltimore, MD 21202

Dear Mr. Grandison:

    This letter is in response to your March 7, 2007 request, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §552, for copies of certain documents pertaining to the case *Cheryl Ann Piechowicz, et al. V. United States*, Civil No. K-86-802.

    Pursuant to your request, we conducted a search of the Civil Division's file of the above-referenced case and identified the documents which you requested.  I reviewed the depositions of Cheryl Ann Piechowicz and James C. Savage as well as answers to interrogatories by John I. Kennedy, Jr., Cheryl Ann Piechowicz, and the United States.  I determined that these documents identify and/or contain personal information about other witnesses from your drug trafficking case, court officials, experts, attorneys and law enforcement officials connect with that matter.  I am withholding these documents to protect the identities and information concerning these individuals pursuant to 5 U.S.C. §552(b)(6) and (b)(7)(C).

    If you disagree with my decision to deny you access to the documents responsive to your request as outlined above, you may appeal by writing within 60 working days of the receipt of this letter to the Office of Information and Privacy, Suite 570, Flag Building, United States Department of Justice, Washington, D.C. 20530.  Both the letter appealing the decision and the envelope should be clearly marked "FOIA APPEAL."

    Thereafter, judicial review would be available in the U.S.

-2-

District Court in the district in which you reside or have your principal place of business or in the U.S. District Court for the District of Columbia.

Sincerely,

James M. Kovakas
Attorney In Charge
FOI/PA Office, Civil Division

# Exhibit E

No. 08-00024 (D.D.C.)(RJL)

07-1428    FOIA
(A)
CIVIL
Closed 4/17/0
Full Denial

Anthony Grandison #172622
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

Office of Information and Privacy
Suite 570, Flag, Building
United States Department of Justice,
Washington, D.C. 20530

**RECEIVED**

MAY - 8 2007

Office of Information and Privacy

Re: "**FOIA APPEAL**" Control Number 145-FOI-9135

To Whom It May Concern

On March 7, 2007 I Anthony Grandison filed a request to the Freedom of Information Act (FOIA) pursuant to 5 U.S.C. &552, for copies of certain documents pertaining to the case of Cheryl Ann Piechowicz, et al. v. United States, Civil No. K-86-802.

As a direct result of that FOIA request Mr. James M. Kovakas on April 17, 2007 the "Attorney In Charge" FOI/PA Office, Civil Division informed Requester Grandison that after identifying the documents requested, and subsequent review of Cheryl Ann Piechowicz and James C. Savage depositions along with answers to the interrogatories by John I. Kennedy, Jr., Cheryl Ann Piechowicz, and the United States. Mr. Kovakas determined that these documents identify and/or contain personal information about other witnesses from Requester's drug trafficking case, court officials, experts, attorneys and law enforcement officials connect with that matter. And based on those reasons his office was withholding those documents to protect the identifies and information concerning these individuals pursuant to 5 U.S.C. &552 (b) (6) and (b) (7) (C).

Since my FOIA request under the departmental regulations was granted to expedite processing pursuant to 28 CFR 16. 5 (d) (1) (iii). I am likewise requesting pursuant to departmental regulations that this Appeal be expedite because I am still currently sentenced to death in the State of Maryland. And I respectfully appeal the decision erroneously decided

1

upon Mr. Kovakas reliance on the provisions of 5 U.S.C. &552 (b) (6) and (b) (7) (C);

      (b)(6) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, and

      (b)(7)(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy

And state as follows below:

## Appeal Argument

### The Documents Fail To Meet The Threshold Requirement Of 5 USC &552 Subsections (b)(6) and (b)(7)(C):

In the instant case the documents requested by Requester Grandison does not fall under the umbrella of subsection (b) (6) and (b) (7) (C) because exemption 7 may not be applied to shield the information withheld from disclosure. And here the documents at issue fail the threshold requirement that they constitute "investigatory records compiled for law enforcement" pursuant to Title 5 U.S.C. &552 (b) (6) and (b) (7) (C). Since the documents on there face indicate they were not compiled for law enforcement purposes. But instead the documents requested ("interrogatories, depositions of March 30, 1987, and April 1, 1987) were created by the Plaintiffs and the defendants in Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1989) in order for the Plaintiffs to sustain their lawsuit, and the defendants to defeat it.

Proof of that fact is found in the May 9, 1986 Memorandum of Points and Authorities in Support of Defendants Savage and Ryan's Motion to Dismiss the lawsuit in Piechowicz, et al vs. United States, Civil Action No. K-86-802, whereas, the defendants Introduction states as follows;

      This case involves the murders of a witness in a federal drug prosecution and an innocent bystander by the agent of the prosecuted drug dealer. The estates of the two victims are attempting to hold the federal officials involved in the prosecution of the drug dealer liable for the murders committed by the drug dealer's agent.

The administrators and personal representatives of the estates of David Scott Piechowicz and Susan C. Kennedy have brought this action against Assistant United States Attorney (AUSA) James C. Savage and Special Agent John Ryan of the Drug Enforcement Administration in their individual as well as their official capacities as federal employees [1]

[1]. A separate motion and memorandum have been filed on behalf of the United States and defendants Savage and Ryan in their official capacities. This motion and memorandum are directed to plaintiffs claims for the individuals personal liability in damages.

Plaintiffs' allegations arise from the prosecution of Anthony Grandison for violations of federal narcotics and firearms laws in the United States District Court for the District of Maryland. Defendant Savage is an Assistant United States Attorney in this District, and defendant Ryan is a Special Agent who at all times relevant was assigned to the Drug Enforcement Administration.

Further an examination the court reporter Mr. Joseph A. Grabowski from the Gore Brothers Reporting & Videoconferencing who actually recorded and transcribed the deposition of Cheryl Ann Piechowicz on March 30, 1987 establishes that document was not created in conjunction with any federal or state criminal investigation or for any investigatory purposes by law enforcement. See Grandison's Exhibit (1). And a likewise examination of Mr. Abraham Weinapple an associate of the reporter John McCarthy who actually recorded and transcribed the deposition of James C. Savage on April 1, 1987 establishes as well that document was not created in conjunction with any federal or state criminal investigation or for any investigatory purposes by law enforcement. See Grandison's Exhibit (2).

Requester Grandison submits that although the FOIA exemption 7 permits an agency to withhold "records or information" if the agency demonstrates that the material was "compiled for law enforcement purposes" and that it qualifies for exclusion under at least one of the narrowly-defined criteria in subsections (A)-(F). See 5 U.S.C. & 552(b) (7) (A)-(F); FBI v. Abramson, 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed. 2d 376 (1982); Keys v. United

3

States Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987). However, both Exhibits (1) and (2) suffice as proof those documents were not created for any federal or state criminal investigation or subject to any protective court order to seal from disclosure those documents based upon any request by either the Plaintiffs or the defendants seeking confidentiality.

Thus, clearly the above facts establishes beyond any doubt that the depositions and interrogatories requested by the Requester Grandison were not created for any investigatory purposes by law enforcement. To the contrary those documents were filed in a Public Forum (United States District Court) were created instead by the plaintiffs ("Cheryl Ann Piechowicz, et al") for the sole purpose of attempting to win their lawsuit in United States District Court for the District of Maryland against the defendants. And on the other hand the defendants ("James C. Savage, John Ryan, and the Government") only part in the matter was to defeated Plaintiffs lawsuit by having same dismissed. As a result of the documents being created in connection with a civil lawsuit filed in a United States District Court without any orders issued by the district court sealing those records rendered the documents as public court records not subject to either subsection to (b)(6) or (b) (7) (C) exemption.

### The Decease Persons Have No Surviving Privacy Interest

Requester Grandison contends that the fact Cheryl Ann Piechowicz died from a brain tumor years ago, her father John I, Kennedy Jr. died from cancer in the late '90s, and John McCarthy the court reporter responsible for recording and transcribing the deposition proceedings of James C. Savage, passed away from a heart attack in the early to the mid '90s.

Those decease persons have no surviving privacy interest that would justify the withholding of documents or other information relating to them. See, Cordell v. Detective Publication, Inc., 419 F.2d 989 (6th Cir. 1969), and Maritote v Desilu Productions, 345 F.2d 418 (7th Cir. 1965). These cases stand for the proposition that the right to recovery for invasion of privacy is purely personal and "lapses with the death of the person who enjoyed it." Cordell, 419 F.2d at 990.

Further, the Department of Justice may not through its representative claim a

4

privacy interest in the behalf of the surviving parties who had willing publicly provided the very same information in a public forum in the United States District Court in the presence of Grandison and the news media whom covered Requester Grandison and his alleged codefendants high profile cases in the United States District Court nearly 25 years ago.

### Any (b) (6) or (b) (7) (C) Exemptions Have Been Ipso Facto Waived.

The Requester Grandison contends that while it is clear that FBI agents themselves have the right to be protected against public disclosure of their participation in law enforcement investigations, the names of FBI agents and persons interviewed by FBI during law enforcement investigations pursuant to exemption (b)(7)(C). However, in the case sub judice, that exemption must fail since confidentiality does not extend to non criminal investigation depositions.

It may not be presumed that disclosing names of FBI agents, and third parties whom the names of the FBI/DEA and third parties and the addresses of the third parties have already been given the Requester Grandison in the form of FBI 302 reports almost twenty-five years ago conjoint with the substance of their interviews. Coupled with the fact those federal agents and third parties have repeatedly testified in Requester Grandison's federal criminal and state trials almost twenty-five years ago would somehow subject them to intrusion or harassment, especially when those persons are either dead, or no longer in either the FBI or DEA, or the U.S. Attorney's Office.

It is equally true the parties who created or are mention in the interrogatories and depositions waived any protective exemptions under 552 USC (b) (6) and (b) (7) (C) when they previously testified in open court as to the substance of their interviews with FBI/DEA or interviews with the Assistant U.S. Attorneys. Since there repeated testimony given in Requester Grandison's trials Ipso facto act as a consent to a waiver of any of there privacy rights. In any event Requester Grandison avers that since the documents in question were created in a civil lawsuit filed in a United States District Court without either the Plaintiffs "Piechowicz, et al", or the defendants "James C. Savage, John Ryan, and the United States

5

Government" filing a motion to seal the records to prevent disclosure thereof in the United States District Court. Such a failure was also tantamount to a waiver of any exemption assuming arguendo the Department of Justice legally possessed a right to seek exemptions pursuant to subsections (b)(6) or (b)(7)(C) of 5 USC 552 for documents not created pursuant to a criminal federal or state investigation or for criminal investigatory purposes.

Cheryl Piechowicz, and James C. Savage by allowing themselves to be deposed respectively on March 30, 1987 and April 1, 1987 without any court order to seal those depositions constitutes a waiver of any exemption rights they may have possessed in order for the Justice Department to seek nondisclosure claim under exemption (b) (6) or (b) (7) (C). Likewise, when the Government, and the individual defendants named in the lawsuit filed by Cheryl Ann Piechowicz, et al filed answers in the United States District Court for the District of Maryland to the complaint filed against them in their individual as well as their official capacities as federal employees without seeking an order requesting those documents be sealed constitutes an ipso facto waiver.

The Requester Grandison avers that Cheryl Piechowicz (decease) by her own actions ipso facto waived any exemptions assuming she possessed any, by giving an exclusive interview to "Baltimore Evening Sun Newspaper" reporter Kelly Gilbert on April 28, 1988 exposing to the general public in a written newspaper article as to exactly what she testified to when deposed by deposition on March 30, 1987 in conjunction with her lawsuit concerning the murders of her husband and sister on April 28, 1983, alleged threats by Janet Moore, and the defendants failure to protect them, publicly exposure through the news media the exact contents of the testimony James C. Savage provided when deposed on April 1, 1987 in conjunction with the lawsuit constitute a waiver. Likewise, James C. Savage by publicly exposing to the general public through the news media on April 28, 1988 by providing the newspaper report Kelly Gilbert information about what he testified to during his deposition in conjunction with the lawsuit filed against himself by Cheryl Ann Piechowicz, et. al constitute an ipso facto waiver of any exemption rights assuming Savage possessed any in documents not

6

created in a criminal federal or state investigation or for criminal investigatory purposes.

Cheryl Ann Piechowicz, James C. Savage, Joseph I. Kennedy Jr., as well as the other individuals names mention in the depositions of March 30, 1987 and April 1, 1987, had previously personally testified in Requester Grandison public drug trial in United States v. Grandison, 783 F.2d 1152, (4th Cir. 1986) concerning the offense and personal information about themselves as was recorded in Grandison's drug pretrial and trial transcripts from March 11, 14, 1983 and Mary 3 to May 11, 1983, Grandison's Civil Rights trial in September 12, to November 3, 1983, United States v. Grandison, 780 F.2d 425, (4th Cir. 1985), and Grandison's state capital trial on April 26, to June 6, 1984 involving or related to the same subject matter testified to the federal trials, Grandison v. State, 305 Md. 685 (1986) ("Grandison II"), and Grandison capital resentencing proceeding from May 19, to June 3, 1994, Grandison v. State, 341 Md. 175 (1995). ("Grandison III"). To which they (FBI agent Kevin O'Connell, and others ) either were called as prosecution or defense witness in those proceedings revealing testimony concerning the offense and personal information about themselves.

On the other hand third parties like Janet Moore, Rodney Kelly, Vernon Evans, mention in either Cheryl Ann Piechowicz depositions were charged as codefendants in the federal Civil Rights case, and the State Capital offenses of murder and there alleged action had been testified to by Charlene Sparrow, Theresa Purdie and others as set forth in the above cited cases.

Peanut King mentioned on page 20 of James C. Savage deposition are only referred to whether James C. Savage determined or believed there was a connection between Grandison and Peanut King (an alleged Drug Kingpin), if there was any. Savage was questioned Cheryl Piechowicz, et. al attorneys Goldberg about whether or not he was aware of Grandison prior convictions for assaulting a federal officer before the murders, about Grandison being stopped at the BWI airport with a large amount of money in 1982, an alleged threat made by Janet Moore on March 14, 1983 at the Baltimore Federal District Court, former Judge Howard admonishing Moore and others, about Vernon Evans and Grandison being allegedly

7

involved in a prior incident were a witness was shot (Joseph Miller) now decease), whether Wendy Grandison and Janet Moore as being the same person, Janet Moore's criminal background, whether Luther Pugh a former desk clerk at the Warren House Motel was a witness confronted by Janet Moore on March 14, 1983. And Cheryl Piechowicz's deposition actually consists of the mention of some of the above names and the communication she claim related to John Ryan and James C. Savage, whether she had sought protection from Ryan, Savage, O'Connell or any agent prior to April 28, 1983.

At the conclusion Cheryl Ann Piechowicz's deposition on March 30, 1987, the reporter Joseph A. Grabowski clearly constituted an ipso fact waiver of any exemptions assuming any exist in a document created in a deposition in a public civil lawsuit filed by individual members of the general public. The deposition conclusion stated the following;

> I, Joseph A. Grabowski, a Notary Public in and for the State of Maryland, County of Baltimore, do hereby certify that the within named Cheryl Ann Piechowicz personally appeared before me at the time and place herein set out, and after having been first duly sworn according to law, was interrogated by counsel.
>
> I further certify that the examination was recorded stenographically by me and then transcribed from my stenographic notes to the within typewritten matter in a true and accurate manner.
>
> I further certify that the stipulations contained herein were entered into by counsel in my presence. I further certify that I am not of counsel to any of the parties, nor an employee of counsel, nor related to any of the parities, nor in any way interested in the outcome of this action.
> As witness my hand and notarial seal this 3rd day of April, 1987.

At the conclusion of James C. Savage's deposition, the report John McCrathy, constitutes an ipso facto waiver when it stated;

> I, John McCrathy, do hereby certify that the within named, James C. Savage, personally appeared before me at the time and place herein set out, and was interrogated by counsel.

8

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that the stipulation contained herein was entered into by counsel in my presence.

I further certify that I am not of counsel to any of the parties, nor an employee of counsel, nor related to any of the parties, nor in any way interested in the outcome of this action.

As witness my hand this day of April, 1987.

Clearly, the affidavits at the conclusion of both depositions is proof they were not documents gathered by the FBI, DEA, United States Attorney's Office for any criminal investigative purposes that were subsequently provided to the United States District Court for the District of Maryland identified as Exhibit A and C by the plaintiffs.

In conclusion if any exemption exist than surely they were waived once they testified in those public forums were the general public had an opportunity to hear and see them testify, when they communicate the contents of those depositions to the general public through the news media, and no court order was ever issued sealing the contents of those depositions by a court of law upon either the plaintiffs or the defendants request, or by the United States District Court sua sponte. As a result the Requester Grandison seeks that the denial or withholding the documents be reversed forthwith.

Thanking your Office in advance for your time and any consideration in this matter. I await your reply.

Respectfully, submitted

*Anthony Grandison* #172622

Anthony Grandison #172622

FOIA Appeal Dated: April 25, 2007

4-25-2007

9

Exhib, P(r)



**GORE BROTHERS**

Reporting &
Videoconferencing

Phone: 410-837-3027
800-734-5292
Fax: 410-685-6361
20 S. Charles Street, Suite 901, Baltimore, MD 21201

Since 1961 - Serving MD, DC & No. VA
24 Hrs/7 Days • Nationwide Scheduling

April 3, 2007

Anthony Grandison #172622
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

**Re:    Civil Action No. K-86-802**
**Piechowicz, et al vs. United States**

Dear Mr. Grandison:

Our record retention policy for paper material is seven years, and for the electronic media
it is 10 years, or until we no longer have the means to retrieve it.

The reason for the delay in replying to your March 12, 2007 letter is that I had our office
check to see in some old archives if there was anything by chance going back that far,
and there is nothing. The oldest retrievable electronic media files go back to the mid
1990's. In 1987 the method used for retention of transcripts was in paper form. As I said
above, we definitely do not have anything going back that far in paper. Seven years
would be the oldest we have.

Very truly yours,

Joseph A. Grabowski, RMR

www.gorebrothers.com • reporter@gorebrothers.com
**Gore Brothers · Towson Reporting Company · Whitman Reporting – Rockville**

Exhibit (2)

ABRAHAM WEINAPPLE

CRC/SALOMON REPORTING

9515 Deereco Road, Suite 200

Lutherville, Maryland 21093


March 17, 2007


Anthony Grandison #172622

MCAC C-40

401 East Madison Street

Baltimore, Maryland 21202


RE: John McCarthy

    Deposition April 1, 1987


Dear Mr. Grandison,


Your letter was referred to me through CRC/Salomon Reporting

since I do work for them as an independent contractor, and it

was I who owned Abraham Weinapple & Associates back at that

time, which is now dissolved.


In reference to John McCarthy, Mr. McCarthy was an

independent contractor, just like I am now, and all reporters

in my field, and he was assigned to this job for this day on

April 1, 1987.  I have no records to verify the date anymore

since my calendars have been discarded from that long ago.

But by being an independent contractor, just as myself, we

Exhibit (2)

(2)

are our own bosses and each reporter takes full

responsibility for preparing the transcript as well as

attaching any exhibits and/or related documents, and then the

transcript is delivered to 'the respective attorneys who order

a copy of the deposition with an invoice.


The reporters back then as well as today do not store

exhibits or related items or extra transcripts with their

stenographic notes.  All related items go to the attorneys.

Only the stenographic notes are stored and they are stored

for up to a period of five years and then can be discarded.


As far as Mr. McCarthy is concerned, he passed away from a

heart attack in the early to mid '90s.  By that time I had no

association with him and he was solely working for himself

and anybody else.  With respect to his records, I have no

idea what his family did with them, and since his family was

not from here, I'm sure they moved shortly thereafter.  I

only learned of his death through the grapevine.


Reporters who worked for me were instructed to store their

notes and were trained to attach all exhibits and related

documents to the transcripts.  This way the reporter cannot

be held responsible for them.

Exhibit (2)

(3)

The only thing I can advise you is to try to contact the
attorneys involved at that time and see if they have a copy
of the transcript with related documents.    I know this
doesn't help you very much, but that's the Court Reporters'
rule of thumb for taking, preparing and storing.    Today, the
technology is completely different with computer-aided
transcripts, where the transcripts can be stored for an
indefinite period of time.

But still today as well as back in 1987, all exhibits and/or
related documents are attached to the transcript and
delivered to the attorneys and none of the exhibits and/or
related items are stored by the reporter.

Again, my advice would be to contact the attorneys involved
in the deposition at that time.

Sincerely,

*Abraham Weinapple*

Abraham Weinapple

# Exhibit F

No. 08-00024 (D.D.C.)(RJL)



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

MAY 1 0 2007

Mr. Anthony Grandison
No. 172622
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

     Re: Request No. 145-FOI-9135

Dear Mr. Grandison:

     This is to advise you that your administrative appeal from the action of the Civil Division was received by this Office on May 8, 2007.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **07-1428**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                         Sincerely,

                         Priscilla Jones
                         Supervisory Administrative Specialist

File

# Exhibit G

No. 08-00024 (D.D.C.)(RJL)

*file w|07-1428*

Anthony Grandison #172622
MCAC C-46 "FOIA APPEAL Number 07-1428"
401 E. Madison Street
Baltimore, MD 21202

Office of Information and Privacy
"FOIA APPEAL Number 07-1428"
Attention: Ms. Priscilla Jones,
Supervisory Administrative Specialist
1425 New York Avenue, Suite 11050
United States Department of Justice,
Washington, D.C. 20530-0001

Re: Request No. 145-FOI-9135

Dear Ms. Priscilla Jones

Please be advised that on April 25, 2007 I filed my FOIA Appeal and your Office acknowledged receipt of same on May 8, 2007 in your letter to me dated May 10, 2007 to which your Office assigned Appeal number 07-1428. Further your Office advised me that you would notify me of the decision on my appeal as soon as you could.

Well in the event your Office has not reached a decision on my appeal, I would like to amend my appeal with the following enclosed document that will be referred to as Exhibit (3). This document (newspaper article) supports my argument on page 6 of my appeal that on April 28, 1988 former Assistant U.S. Attorney James C. Savage and Cheryl Ann Piechowicz exposed to the public of the matters in which they both testified to in there March 30, 1987 and April 1, 1987 depositions.

In conclusion, the purpose of this letter and the enclosed document is for your Office to consider this evidence in its consideration of my appeal. Thanking your Office in advance for your time and any consideration in this matter. I await your reply.

Respectfully, submitted

Anthony Grandison #172622

May 22, 2007

*May 23 2007*

Exhibit (3)





**CHERYL PIECHOWICZ**
*"Convictions not enough"*

# Angry and bitter

## Bereaved in 2 murders in '83, she faults lack of protection

**By Kelly Gilbert**
Evening Sun Staff

Five years ago today, the day her husband and sister died in a hailstorm of bullets from a drug dealer's hired gun in a Pikesville hotel lobby, FBI agents took Cheryl Ann Piechowicz home in a bulletproof vest.

Over the next six weeks, Piechowicz, 23, buried her husband, Scott David Piechowicz, 27, and her sister, Susan Carol Kennedy, 19, testified against the drug dealer, Anthony Grandison, who was convicted, and spent a month traveling from city to city with her 5-year-old daughter, Sherrie, using aliases on plane tickets and motel registers, in the Witness Protection Program.

"It was a bit late, a bit late," Cheryl Piechowicz says of the protection she got after the murders.

Authorities eventually convicted Grandison, triggerman Vernon Lee Evans Jr., go-between Rodney Kelly and Grandison's girlfriend, Janet P. Moore, on federal wit-

> "... I sympathize with her for her loss. It was a terrible thing. But I don't know how it could have been prevented ..."
> — Prosecutor James C. Savage

ness tampering and civil rights counts and state first-degree murder charges. Grandison and Evans are sentenced to death. Kelly is serving life plus 10 years in prison and Moore is serving 50 years.

Cheryl Piechowicz and Charlene Sparrow, Evans' girlfriend, testified against them. But for Piechowicz, the convictions were not enough.

"I feel that people should know what happened to me," she said in a recent interview. "I don't want it to happen to them. It could have been prevented."

Piechowicz talked to The Evening Sun on the eve of the fifth anniversary of the murders.

She said she has been living incognito near Baltimore for nearly five years, with a new name, a new life and her unforgettable memories of April 28, 1983.

She is irretrievably bitter about the failure of then-assistant U.S. Attorney James C. Savage and Drug Enforcement Administration Agent John "Jack" Ryan to protect her and her husband after Moore threatened her, and by Savage's admitted lack of knowledge about Grandison's criminal record, which included an earlier witness-tampering charge.

A few days before the interview, U.S. District Judge Frank A. Kaufman threw out Piechowicz's 2-year-old, $180 million negligence suit against Savage, Ryan, and the government on legal technicalities. She never got to air her grievances to a jury.

See SLAYINGS, A14, Col. I

A14   THE EVENING SUN   THURSDAY, APRIL 28, 1988 •

# Bereaved in 2 murders, wor

**SLAYINGS, From A1**

"I am very disappointed," she said of the decision. "I thought at least I should have had a trial. There were so many things about the way the Grandison case was handled that were wrong." She plans to appeal.

Federal agents had linked Grandison, through a key in his pocket, to $350,000 worth of heroin and cocaine and a .38-caliber revolver they had found in Room 219 of the Warren House Motor Hotel in Pikesville in November 1982.

Scott Piechowicz, the Warren House manager, had found drug paraphernalia in the room. Cheryl Piechowicz had seen Grandison talking to her husband in the lobby the night before agents found the drugs. Susan Kennedy, too, was subpoenaed as a witness; she had seen Grandison at the hotel.

Savage and Ryan saw Scott Piechowicz and Susan Kennedy as circumstantial witnesses. But they saw Cheryl Piechowicz as a critical link between Grandison and the drugs.

So did Grandison.

On the day of the hearing, Moore approached Cheryl Piechowicz in the hall outside the courtroom.

"You better say you never saw him before in your life," Moore said.

According to court records, Cheryl Piechowicz told Scott of the threat and they immediately reported it to Savage and Ryan. When court resumed, Judge Joseph C. Howard looked directly at Moore as he warned courtroom spectators not to speak to any witnesses.

But on April 28, six weeks after the Piechowiczes testified and a week before Grandison's drug trial, Scott Piechowicz and Susan Kennedy were gunned down at the Warren House. They were dead on arrival at the Shock-Trauma Unit in Baltimore.

A few days later, Cheryl Piechowicz called *The Evening Sun* ... said Piechowicz, "and I ...

happen, if you're worried, call me anytime, day or night," Ryan said. "I'm only five minutes away."

"Anything" happened April 28.

Cheryl, who worked at the Warren House, had taken the day off. Scott called her at home. They spoke for 15 minutes and finished their conversation at 2:45 p.m. Susan was working the front desk for Cheryl.

At 3 p.m., Evans burst into the lobby. In 5 seconds, he fired 17 machine-gun bullets into Scott Piechowicz and Susan Kennedy.

At 3:10 p.m., a desk clerk phoned Cheryl and told her Scott had been shot. She left her daughter with a neighbor. Another neighbor drove her to the hotel.

She saw paramedics wheeling Scott toward an ambulance and learned her sister had been shot, too. Someone told her Scott had been shot once but was being taken to Shock-Trauma as a precaution. She went to Shock-Trauma.

"I remember thinking, thank goodness it's not gonna be bad. It's gonna be fine," Piechowicz said, "and I ... regained my composure.

"And that's when it hit me, that Grandison was somehow involved. And just testified, and aside from the threat that I got from Janet Moore, I was really concerned about going over [in court] my place of employment, my hours, the fact that Scott was always there when I worked. That really bothered me. When I got to Shock-Trauma, I just knew that Grandison was involved."

At Shock-Trauma, Piechowicz and her father, city police Sgt. John L. Kennedy, in a waiting room. Kennedy had been told Cheryl was dead, and there she stood in front of him.

"The look that came across his face ... I've never seen that look from my father, ever," she said. "He

went totally white.

"It seemed like there was a glimmer of hope in his eye. There was a nurse in there with him, calming him. And he looked at her and he said, 'She's not dead. There's Cheryl.'

"I look back on that quite a bit, how my father must have felt to ... to ... grieve for and all an hour, thinking I was dead, and then to see me walk in and know I wasn't.

"And then to find out ... only to find out that it was his other daughter who was dead."

At the time, Cheryl had Scott on her mind. "How is he?" she asked.

"And he broke down," she said. "And he said, 'He's dead.' And that was the first ... that ... I drove down there thinking Scott was gonna be OK, and that really floored me."

When she got home, Cheryl Piechowicz found rifle-toting Baltimore County police guarding her daughter, Sherri.

"She had just turned 5," Piechowicz said. "God, what a thing for a 5-year-old to go through. She used to say, 'I don't want the bad people to get you, Mommy. We have to leave.'"

The FBI took the two to a "safe house" and kept them under 24-hour guard for about two weeks, until after the funerals and her testimony against Grandison. Then Cheryl Piechowicz and her daughter left town in the federal Witness Protection Program. The U.S. Marshal Service paid their bills and made sure no one, not even her family, knew where they were.

It was Savage who recommended her for the program.

The two stayed away for months, moving from city to city, using fake names on plane tickets and hotel registers.

After Grandison and his cohorts were arrested, and she had nothing

# nan faults lack of protection



**SUSAN KENNEDY**
*Innocent, but dead*

more to fear, Cheryl Piechowicz flew home with Sherrie to the comfort of family and friends.

That summer, she testified under heavy guard at Grandison's murder trials in state and federal courts. All four defendants were convicted.

But federal authorities consistently rebuffed Piechowicz's claims for hospital and funeral expenses for her husband and sister. She sued the government in March 1986, listing her parents and Scott's parents as co-plaintiffs.

When she gave her deposition, Piechowicz, who had been given a Justice Department award for her courage, was attacked by a Justice Department attorney.

"It was absurd," she said. "Before we [she and Scott] testified, every time we expressed a concern they made it seem like everything was gonna be fine. I had gone from being an ideal witness to them attacking my character.

"What happened to Scott and Sue, they just swept it under the rug."

The last affront was Kaufman's decision. He ruled that Susan Kennedy was "an innocent bystander . . . in the wrong place at the wrong time" and said the government owed her no allegiance or damages.

"That really bothered me," said Piechowicz. "I still feel a lot of guilt about Sue. My sister is dead, and it should have been me.

"What she must have felt when she saw Vernon Evans shoot Scott and then turn his gun on her . . . must have been absolute fear. I constantly think about it. You carry that around with you."

Today, Cheryl Piechowicz is going to college and living with "a wonderful man," with whom she has a 2-year-old daughter. She still displays pictures of her, Scott and Sherrie together in her home.

She is "cautious, very cautious" about her true identity even today. Only her family and a few close friends know who she really is and where she is living.

"Grandison was in jail before when he hired a hit man," she said. "Who knows what the man's thinking now?"

She still is angry at the Justice Department and its employees, who, she says, got what they wanted from her and Scott, and discarded them.

Ryan could not be reached for comment on her statements. He is out of the country, a DEA official said.

Savage, now in private practice in Rockville, called the murders "very upsetting," but said he thinks Piechowicz's accusations are unfair.

"I sympathize with her for her loss," he said. "It was a terrible thing. But I don't know how it could have been prevented. When I look back at it, I don't think my judgment

was faulty, based on the information I had then."

He said Grandison's FBI record showed a conviction for assault on a federal agent, but gave no indication that a witness intimidation attempt. Had he known, "I might have done some things differently," he said.

But Grandison was in jail, so there was no reason to believe he could or would act against the witnesses, and Moore's threat appeared to be just a girlfriend's bravado.

"I think it's a system problem, not an individual problem," Savage said. "You say to yourself, there must have been something that could have been done [to prevent the murders]. But if you look at the system, I don't think there is anything that could have been done.

"Maybe there should be some monetary damages available. But malfeasance, nonfeasance and negligence charges . . . I don't think that's fair."

Would Cheryl Piechowicz be a federal witness again?

"Absolutely not," she said. "Absolutely not. I'm almost ashamed to say that. I really am, because I want to keep the respect that I have for the criminal justice system. But I would have a sister and a husband if I could go back.

"I think people like Anthony Grandison should be in prison, but not at the risk of my family or anyone else's."

"At the depositions, Mr. Savage looked at me and he was sorry," Piechowicz said softly. "He said he was sorry, and I could see it in his eyes.

"And they [prosecutors and federal agents] said to me after the trials, 'At least we got him [Grandison]. He'll never get out of jail.'

"That's some consolation, but it's not enough."

brought that up to Mr. Savage, and he confirmed it. He said if we refused to testify, he'd subpoena us.

"He said numerous times that it was our job as good citizens to testify. He also said, 'Don't worry, everything's gonna be fine. You're gonna be *super* witnesses.'"

Piechowicz said she asked Savage for protection, but he said it wasn't necessary, and refused.

Four years later, in his deposition in the civil case, Savage admitted he did not know Grandison's prior criminal record at the time, which included a prior witness-tampering charge. He regarded Grandison as a small-time drug dealer.

Savage also said that convicting Grandison justified putting the Piechowiczes on the witness stand, but, as a matter of Justice Department policy, he believed that he did not owe them protection.

Piechowicz, who attended the deposition, was shocked.

"As big a mistake as he made," she said in the interview, "he was saying it could happen *again!*

"He wouldn't take our concerns seriously, and I was especially angry . . . that he had no idea of Grandison's prior record. I find that a little hard to believe, and to me, right there, that's a mistake in our system. I just cannot conceive of an assistant U.S. attorney trying someone on drug charges and not checking his prior record. It seems to me that should be a priority with any prosecutor, in any capacity."

After Moore's courthouse threat, Ryan gave Cheryl Piechowicz his business card. "If anything shou[ld]

# Exhibit H

No. 08-00024 (D.D.C.)(RJL)



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**FEB 1 9 2008**

Mr. Anthony Grandison
No. 172622
MCAC C-46                          Re:  Appeal No. 07-1428
401 E. Madison Street                   Request No. 145-FOI-9135
Baltimore, MD 21202                     ALB:CG

Dear Mr. Grandison:

    You appealed from the action of the Executive Office for United States Attorneys (EOUSA) on your request for access to records pertaining to <u>Piechowicz v. United States</u>, Civil No. K-86-802 (D.D.C.).  I regret the delay in responding to your appeal.

    I have been informed that you filed a lawsuit pertaining to the action of the Civil Division in the United States District Court for the District of Columbia.  Inasmuch as this matter is now before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3) (2007).

                                          Sincerely,

                                          Janice Galli McLeod
                                          Associate Director

# Exhibit I

No. 08-00024 (D.D.C.)(RJL)



Anthony Grandison #172622
MCAC C-46
401 E. Madison Street
Baltimore, MD. 21202

Janice Galli McLeod, Associate Director

U.S. Department of Justice

Executive Office for United States Attorneys

Freedom of Information & Privacy Staff

600 E. Street, N.W., Suite 7300, Bicentennial Building

Washington, DC 20530-0001

Appeal No. 07-1428

Request No. 145-FOI-9135

Dear Ms. Janice Galli McLeod,

On or about February 19, 2008 you advised me by letter that you regret the delay in responding to my appeal from the action of the Executive Office for United States Attorneys (EOUSA) on my request for access to records pertaining to Piechowicz v. United States, Civil No. K-86-802 (D.D.C.).

You also advised me that you have been informed that I have a lawsuit pertaining to the action of the Civil Division in the United States District Court for the District of Columbia. As a result you were closing my appeal file in your Office in accordance with 28 C.F.R. & 16.9(a)(3) (2007).

However, please be advised that on August 2, 2007 you Associate Director, Janice Galli McLeod, advise me concerning my Appeal No. 07-1706 and Request No. 07-1606 pertaining to my request to access to certain records involving a civil case entitled Piechowicz v. United States, No. K-86-802 (D. Md.). And you stated that after carefully considering my appeal, and as a result of discussions between EQUSA personnel and a member of your staff, you was remanding my request for another search for responsive records. And if EQUSA locates responsive records through this search, it would send any and all releasable portions of them directly to me, subject to any applicable fees. Further, if I consider your action to be

1

denial of my appeal, I could seek judicial review in accordance with 5 U.S.C. & 552(a)(4)(B)..

And Ms. McLeod in reply to your letter dated August 2, 2007, I on September 13, 2007 personally wrote your Office informing you that those records had been earlier located on April 17, 2007 by the "Attorney In Charge" FOI/PA Office, Civil Division, ( Mr. James M. Kovakas) *in Control Number 145-FOI-9135* (Appeal No. 07-1428). And thus there was no reason to continue to delay turning over the very same records requested in ***Appeal No. 07-1706, Request No. 07-1606***. In fact the appeal in Appeal No. 07-1428, Request No. 145-FOI-9135 was filed in April, 2007 directly after Mr. James M. Kovakas, the "Attorney In Charge" FOI/PA Office, Civil Division on April 17, 2007 informed me his Office located the documents but was not turning them over pertaining to civil case entitled Piechowicz v. United States, No. K-86-802 (D. Md.) based on his reliance's on 5 U.S.C. &552 (b)(6) and (b) (7) (C).

And Priscilla Jones, Supervisory Administrative Specialist from the U.S. Department of Justice on May 10, 2007 informed me my administrative appeal from the action of the Civil Division in Request No. 145-FOI-9135 was received on May 8, 2007 and assigned number 07-1428 as any future correspondence with her Office. On the other hand I did not file an appeal from Request No. 07-1606 until June 5, 2007 and Priscilla Jones, Supervisory Administrative Specialist of U.S. Department of Justice on June 20, 2007 informed me the administrative appeal from the action of the Executive Office for United States Attorneys in **Request No. 07-1606** had been received by its Office on June 14, 2007 and assigned **No. 07-1706** as the correspondence number.

Thus considering with all the precepts above in mind, the fact that you had already informed me on August 2, 2007, that you was going to turn over the records pertaining to Piechowicz v. United States, supra in Appeal No. 07-1706 (Request No. 07-1606). What sense does it make to close the file pursuant to 28 C.F.R. & 16.9(a)(3) (2007) in respect to Appeal No. 07-1428 (Request No. 145-FOI-9135) which was filed first and when that appeal involved the very same records. The lawsuit can become moot if your Office just turning over the records as you stated you would do in Appeal No. 07-1706.

2

Thanking your Office in advance for your time and any consideration in this matter. I await your speedy reply.

Respectfully, submitted

Anthony Grandison #172622

February 25, 2008
2 - 25 - 2008
cc Grandison

3

# Exhibit J

No. 08-00024 (D.D.C.)(RJL)

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**APR 2 9 2008**


Mr. Anthony Grandison
No. 172622
MCAC C-46                              Re:   Appeal No. 07-1428
401 E. Madison Street                          Request No. 145-FOI-9135
Baltimore, MD 21202                            ADW:CG:PED


Dear Mr. Grandison:

      This responds to your letter dated February 25, 2008, which I am interpreting as a request that I reconsider my decision on your appeal from the action of the Civil Division of the Department of Justice on your request for access to records pertaining to <u>Piechowicz v. United States</u>, Civil No. K-86-802 (D.D.C.).  I regret that through an administrative error, this Office inadvertently stated that you were appealing Request No. 145-FOI-9135 from the action of the Executive Office for United States Attorneys, when Request No. 145-FOI-9135 is from the action of the Civil Division.

      After carefully considering this matter, I have determined that my original decision, as outlined by this Office's letter dated February 19, 2008, was appropriate.

      Sincerely,


      Janice Galli McLeod
      Associate Director

      By:   *Anne D. Work*

      Anne D. Work
      Deputy Chief
      Administrative Appeals Staff

# Exhibit K

No. 08-00024 (D.D.C.)(RJL)



**U.S. Department of Justice**

Civil Division

---

*Washington, D.C. 20530*

JMK:jmk:145-FOI-9135                    April 29, 2008

Anthony Grandison
Reg. No. 172622
MCAC C-40
401 E Madison Street
Baltimore, MD 21202

Dear Mr. Grandison:

    This letter is a supplemental response to your March 7, 2007 request made pursuant to the Freedom of Information Act (FOIA) for records relating to the case titled Cheryl Ann Piechowicz, et al. v. United States, Civil No. K-86-802.

    Enclosed please find non-exempt portions of two records which had initially been withheld in their entirety. The records are the deposition and answers to interrogatories of Cheryl Ann Piechowicz.

    During my review of the records, I determined that they identify and/or contain personal information of other individuals related to your drug trafficking case. Redacted portions of the records are withheld to protect the identities and personal privacy of these individuals under 5 U.S.C. 552(b)(6) and (b)(7C).

    As your FOIA request is the subject of pending litigation, I am not providing you with an administrative appeal option.

            Sincerely,

            James M. Kovakas

            James M. Kovakas
            Attorney In Charge
        FOI/PA Unit, Civil Division

enclosures: 2

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Defendant Civil Division's Motion for Summary Judgment, Memorandum of Points and Authorities in Support of Defendant Civil Division's Motion for Summary Judgment, the proposed order, Declaration of James M. Kovakas, and exhibits to that declaration were served upon plaintiff pro se by deposit of a copy thereof in the U.S. mail, postage prepaid, first class mail, addressed to:

```
Mr. Anthony Grandison
DOC ID No. 172622
Maryland Correctional Adjustment Center
401 East Madison Street
Baltimore, MD  21202
```

on this 20th day of May 2008.

```
                    /s/
_____
CAROLINE A. SMITH
```