UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,           )
                             )
        Plaintiff,           )
                             )
        v.                   )   Civil Action No. 08-00024 (RJL)
                             )
U.S. DEPARTMENT OF JUSTICE,  )
  et al.,                    )
                             )
        Defendants.          )
—————————————————————————————)

MOTION FOR SUMMARY JUDGMENT ON BEHALF
OF DEFENDANT EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

Defendant, Executive Office for United States Attorneys (EOUSA), by its undersigned attorneys, hereby moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment on the portion of this action pertaining to EOUSA, a component of the United States Department of Justice (DOJ), on the grounds that no genuine issue of material fact exists and that defendant EOUSA is entitled to judgment as a matter of law.[1]

In support of this motion, the Court is respectfully referred to the Declaration of Dione Jackson Stearns, Attorney-Advisor, EOUSA, DOJ;[2] to the Defendant EOUSA's Statement of

_____

[1] The Civil Division, another component of the DOJ that is also a defendant in this action, has already filed its Motion for Summary Judgment. (See Def. Civil Division's Mot. for Summ. J., filed May 20, 2008.)

[2] Plaintiff should take notice that the Court will accept as true any factual assertions contained in the declaration submitted in support of this motion unless he submits his own
(continued...)

-2-

Material Facts as to Which There is No Genuine Issue, Pursuant to

Local Rule 7(h); and to the Memorandum of Points and Authorities

in Support of Defendant EOUSA's Motion for Summary Judgment and

Opposition to Plaintiff's Motion for Summary Judgment, all filed

herewith; and to the Declaration of Linda Brown, Paralegal,

United States Attorney's Office for the District of Maryland,

---

[2](...continued)
affidavit or other documentary evidence contradicting those
assertions. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir.
1992); Fed. R. Civ. P. 56(e); L.Cv.R. 7(h). Rule 56(e)(1) of the
Federal Rules of Civil Procedure provides:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant is
> competent to testify on matters stated. If a paper or
> part of a paper is referred to in an affidavit, a sworn
> or certified copy must be attached to or served with the
> affidavit. The court may permit an affidavit to be
> supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Rule 56(e)(2) of the Federal Rules of Civil Procedure further
provides:

> When a motion for summary judgement is properly made and
> supported, an opposing party may not rely merely on
> allegations or denials in its own pleading; rather, its
> response must -- by affidavits or as otherwise provided
> in this rule -- set out specific facts showing a genuine
> issue for trial. If the opposing party does not so
> respond, summary judgement should, if appropriate, be
> entered against that party.

-3-

filed May, 20, 2008, in conjunction with Defendant EOUSA's Motion
to Vacate the Briefing Schedule.

                              Respectfully submitted,


                    _____
                    JEFFREY A. TAYLOR
                    (DC Bar #498610)
                    United States Attorney


                    _____
                    RUDOLPH CONTRERAS
                    (DC Bar #434122)
                    Assistant United States Attorney


                                      /s/
                    _____
Dated:  August 11, 2008    CAROLINE A. SMITH
                    (DC Bar #501942)
                    Attorney-Advisor
                    Office of Information and Privacy
                    United States Department of Justice
                    1425 New York Ave., NW, Suite 11050
                    Washington, DC  20530-0001
                    (202) 514-8858

                    Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,             )
                               )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No. 08-00024 (RJL)
                               )
U.S. DEPARTMENT OF JUSTICE     )
  et al.,                      )
                               )
        Defendants.            )
_____)


STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE, PURSUANT TO LOCAL RULE 7(h)ON
BEHALF OF DEFENDANT EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

        Pursuant to Local Rule 7(h), defendant Executive Office for
United States Attorneys (EOUSA) submits the following statement
of material facts as to which there is no genuine issue:

        1.  By letter dated March 28, 2007, plaintiff submitted a
request pursuant to the Freedom of Information Act (FOIA),
5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007,
Pub. L. No. 110-175, 121 Stat. 2524, seeking the release of
records pertaining to the civil case, Cheryl Ann Piechowicz, et
al. v. United States, No. K-86-802 (D. Md. 1989), that are
maintained by the United States Attorney's Office for the
District of Maryland (USAO/DMD).  (See Declaration of Dione
Jackson Stearns, Attorney-Advisor, EOUSA, United States
Department of Justice (DOJ) [hereinafter Stearns Decl.], filed
herewith, ¶ 5 & Ex. A.)

-2-

2.  In his request, plaintiff sought access to the following records:

> i) a complete copy of (every page) of the Deposition taken on March 30, 1987 of Cheryl Ann Piechowicz in Civil No. K-86-802 by Burke M. Wong, Esq., an attorney for the U.S. Justice Department Tort Branch in the United States Attorney Office for the District of Maryland.

> ii) A complete copy (every page) of the Deposition taken in the Law Firm of Cohen & Goldberg on April 1, 1987 of former State of Maryland Assistant U.S. Attorney, James C. Savage in Civil No. K-86-802 by the attorneys Stephen Goldberg, Esq. and George R. Hoffman, Esq., for Plaintiffs Cheryl Ann Piechowicz, et al.

> iii) Any and all a complete copy (every page) of any Interrogatories filed by Defendants Savage and Ryan in this civil case, and any filed by the Plaintiffs Cheryl Ann Piechowicz, et al, as well as all answers to those motions by both the Defendants and Plaintiffs in the civil case above.

> iv) Complete copies of any and all Admissions filed by both the Defendants Savage and Ryan, and the Plaintiffs Cheryl Ann Piechowicz, et al in the civil case above.

> v) Complete copies of any and all Exhibits admitted during the course of the Depositions conducted on March 30, 1987 and April 1, 1987 or any other dates thereafter. (See id.)

Plaintiff also asked EOUSA to expedite the processing of his request.  (See id.)

3.  By letter dated April 2, 2007, USAO/DMD forwarded plaintiff's FOIA request to EOUSA, which processes FOIA requests for the ninety-four United States Attorneys' Offices.  (See id. ¶¶ 1, 5 & Ex. B.)  On that same date, USAO/DMD informed plaintiff that it had forwarded his request to EOUSA.  (See id. ¶ 5 & Ex. C.)

-3-

4.  By letter dated May 18, 2007, EOUSA acknowledged receipt of plaintiff's request.  (See id. ¶ 6 & Ex. D.)  In that letter, EOUSA inadvertently stated that it would conduct a search for responsive records in the United States Attorney's Office for the District of Columbia.  (See id.)  However, EOUSA's search for responsive records were in fact conducted at USAO/DMD, as requested by plaintiff.  (See id. ¶ 6.)

5.  Where requesters ask for information about third parties and do not supply a written consent or proof of death for those individuals, EOUSA routinely creates separate request files in order to make a distinction between certain records that are publicly available, such as press releases, and those that are non-public.  (See id. ¶ 7.)  Plaintiff did not provide EOUSA with written consent from third parties or proof of their deaths.  (See id. ¶ 5 & Ex. A.)  Accordingly, EOUSA informed plaintiff that it had divided his request into two files that would be processed separately, and that it had assigned the request number 07-1606 for non-public records and request number 07-1608 for specific public records.  (See id. ¶¶ 7, 10 & Ex. D.)  By this same letter, EOUSA granted plaintiff's request for expedited processing.  (See id. ¶ 7 & Ex. D.)

   Request No. 07-1608 (Specific Public Records)

6.  EOUSA instructed Linda Brown, a paralegal at USAO/DMD, to conduct a search for responsive records.  (See id. ¶ 8.)  Due to the age of the records requested, Ms. Brown determined that

-4-

the Piechowicz case file would likely be stored in paper format.
(See id.; Declaration of Linda Brown, Paralegal, USAO/DMD
[hereinafter Brown Decl.], filed May 20, 2008, ¶¶ 7-8.)
Accordingly, Ms. Brown contacted the docketing clerk who manages
paper records at USAO/DMD, and learned that the Piechowicz case
file had transferred to the National Archives and Records
Administration's Federal Records Center (FRC) in Suitland,
Maryland.  (See Stearns Decl. ¶ 8; Brown Decl. ¶ 8.)  The
docketing clerk provided Ms. Brown with a "records and
transmittal" receipt which showed that the file had been
transferred to the FRC in 1992 and was scheduled to be destroyed
in January 2001.  (See Stearns Decl. ¶ 8; Brown Decl. ¶ 8 & Exs.
1, 2 at 11.)  Ms. Brown advised EOUSA that the Piechowicz case
file had been destroyed.  (See Stearns Decl. ¶ 8; Brown Decl.
¶ 8.)

        7.  By letter dated June 29, 2007, EOUSA informed plaintiff
that it could not locate any public records that were responsive
to his request at USAO/DMD.  (See Stearns Decl. ¶ 9 & Ex. E.)
EOUSA advised plaintiff that he could appeal its decision to the
Department of Justice's Office of Information and Privacy (OIP)
within sixty days of the date of its letter.  (See id.)

        Request No. 07-1606 (Non-public Records)

        8.  By letter dated May 21, 2007, EOUSA informed plaintiff
that "records pertaining to a third party cannot be released
absent express authorization and consent of the third party,

-5-

proof that the subject of [the] request is deceased, or a clear
demonstration that the public interest in disclosure outweighs
the personal privacy interest."  (Id. ¶ 11 & Ex. F.)  Because
plaintiff did not provide privacy waivers or proof of death for
the individuals that he named in his request, EOUSA refused to
confirm or deny the existence of any responsive "non-public"
records pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C.
§ 552(b)(6), (b)(7)(C).  (See Stearns Decl. ¶ 11 & Ex. F.)  EOUSA
also informed plaintiff that he could appeal its determination to
OIP within sixty days of the date of its letter. (See id.)

    9.  By letter dated June 5, 2007, plaintiff appealed EOUSA's
action to OIP.  (See id. ¶ 12 & Ex. G.)  In his appeal letter,
plaintiff asserted that three named individuals involved with the
Piechowicz case were deceased.  (See id.)

    10.  By letter dated June 20, 2007, OIP informed plaintiff
that his administrative appeal had been received on June 14,
2007, and had been assigned appeal number 07-1706.  (See id. ¶ 13
& Ex. H.)

    11.  By letter dated August 2, 2007, OIP advised plaintiff
that it was remanding his request to EOUSA for a search for
responsive records, subject to any fees.  (See id. ¶ 14 & Ex. I.)
OIP directed EOUSA to conduct a search for responsive records
because it learned that one of the individuals named by plaintiff
in his request, Cheryl Ann Piechowicz, was in fact deceased.
(See id. ¶ 14.)

-6-

Request No. 07-2750 (Non-public Records)

12.  Subsequent to OIP's remand, EOUSA advised plaintiff by letter dated August 21, 2007, that it had assigned request number 07-2750 for his request for specific non-public records pertaining to the Piechowicz case.  (See id. ¶ 15 & Ex. J.)

13.  Based on the search conducted earlier by Ms. Brown at USAO/DMD, EOUSA advised plaintiff by letter dated November 30, 2007, that it had determined that records that were potentially responsive to his request had been destroyed in accordance with the DOJ's general records retention schedule.  (See id. ¶ 16 & Ex. K.)

14.  In the process of preparing a declaration for this case, Ms. Brown unexpectedly learned on May 14, 2008, that the Piechowicz case file was still maintained by the FRC in Suitland, Maryland.  (See id. ¶ 18; Brown Decl. ¶ 9.)

15.  EOUSA retrieved the Piechowicz case file from the FRC and reviewed its contents to determine whether any documents were responsive to plaintiff's request.  (See Stearns Decl. ¶ 19.) EOUSA determined that 619 pages of the case file were not responsive because they did not relate to the specific discovery materials enumerated in plaintiff's request.  (See id.)  EOUSA also determined that 303 pages were duplicates of records that already had been addressed by the Civil Division in connection

-7-

with this action,[1] and that five pages were responsive to plaintiff's request.  (See id.)  By letter dated June 24, 2008, EOUSA released five responsive pages to plaintiff with redactions made pursuant to Exemptions 6 and 7(C), 5 U.S.C. §§ (b)(6), (7)(C).  (See Stearns Decl. ¶ 19 & Ex. L.)  Except for the records located at the FRC, EOUSA was unable to find any additional records responsive to plaintiff's request.  (See id. ¶ 19.)

16.  EOUSA conducted a page-by-page and line-by-line review in order to ensure that all reasonably segregable, nonexempt portions were released to plaintiff.  (See id. ¶ 25.)

17.  Plaintiff seeks to incorporate by reference his statement of material facts that was served on defendant Civil Division, but not filed with the Court.  (See Pl. Grandison's Mot. for Summ. J. Against EOUSA, filed July 8, 2008, at 4-5.) Defendant Civil Division filed this document as an exhibit to its opposition and reply.  (See Def. Civil Div.'s Opp'n to "Pl.'s Cross Mot. For Summ. J." & Reply in Further Support of Def.'s Mot. For Summ. J., filed July 15, 2008, Ex. 2.)  EOUSA disputes plaintiff's statement of material facts to the extent that any of his assertions are inconsistent with any of the material facts set forth herein and hereby incorporates by reference the

---

[1] The Civil Division has already processed and released all nonexempt portions of these 303 pages to plaintiff.  (See Def. Civil Division's Mot. for Summ. J., filed May 20, 2008.)

-8-

Counter-Statement of Material Facts filed on July 15, 2008 in

support of Defendant Civil Division's Motion for Summary

Judgment.

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


                                         /s/
                           _____
Dated:  August 11, 2008    CAROLINE A. SMITH
                           (DC Bar #501942)
                           Attorney-Advisor
                           Office of Information and Privacy
                           United States Department of Justice
                           1425 New York Ave., NW, Suite 11050
                           Washington, DC  20530-0001
                           (202) 514-8858

                           Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,            )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No. 08-00024 (RJL)
                              )
U.S. DEPARTMENT OF JUSTICE,   )
  et al.,                     )
                              )
        Defendants.           )
_____)

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
BEHALF OF DEFENDANT EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

Preliminary Statement

Plaintiff commenced this action pro se on January 7, 2008, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, seeking the release of certain records pertaining to the civil case, Cheryl Ann Piechowicz, et al. v. United States, No. K-86-802 (D. Md. 1989), that are maintained by the Civil Division and by the Executive Office for United States Attorneys (EOUSA), components of the United States Department of Justice (DOJ).[1]

_____

[1] Only the Department of Justice, and not EOUSA, is a proper party defendant to this action.  See 5 U.S.C. § 552(a)(4)(B); Judicial Watch, Inc. v. FBI, 190 F. Supp. 2d 29, 31 n.1 (D.D.C. 2002); Peralta v. United States Attorney's Office, 69 F. Supp. 2d 21, 30-31, 35-36 (D.D.C. 1999).

-2-

By Order dated July 1, 2008, the Court approved EOUSA's proposed briefing schedule, which provided, in part, that EOUSA would file its dispositive motion on August 1, 2008.  On July 8, 2008, plaintiff unexpectedly filed a motion opposing EOUSA's briefing schedule and he also filed a motion for summary judgment.[2]  On July 21, 2008, in order to respond to plaintiff's motion and to establish a schedule to govern future filings for this portion of the action,[3] defendant EOUSA moved the Court to amend the briefing schedule.  The Court has not yet ruled on that motion.  Defendant EOUSA now moves for summary judgment and opposes plaintiff's motion for summary judgment.

In support of EOUSA's motion for summary judgment and opposition to plaintiff's motion for summary judgment, it files

---

[2] In "Plaintiff Grandison's Motion for Summary Judgment Against EOUSA," plaintiff seeks to incorporate by reference several documents consisting of his arguments, statement of material facts, and exhibits.  Plaintiff served these documents on defendants, but did not file them with the court in connection with his cross motion for summary judgment pertaining to the Civil Division, which was filed on July 17, 2008 [hereinafter Pl.'s Cross Mot.].  The Civil Division filed plaintiff's additional documents as exhibits to its reply and opposition. (See Def. Civil Division's Opp'n to "Pl.'s Cross Mot. for Summ. J." and Reply in Further Support of Def.'s Mot. for Summ. J., Exs. 1-7, filed July 15, 2008 [hereinafter Def. Civil Division's Opp'n & Reply].)  The arguments plaintiff raised in those documents refer to the information that was withheld by the Civil Division.  However, defendant EOUSA addresses those arguments to the extent that they are relevant to the records at issue in this portion of the action.

[3] Defendant Civil Division's filings are governed by the briefing schedule approved by the Court on April 16, 2008.

-3-

herewith the Declaration of Dione Jackson Stearns, Attorney-
Advisor, EOUSA, DOJ [hereinafter Stearns Declaration].  This
declaration recounts the chronology of the administrative
processing of plaintiff's FOIA request, identifies the responsive
records from which redactions were made, and explains the bases
upon which the information was withheld.  The Court is also
respectfully referred to Declaration of Linda Brown, Paralegal,
United States Attorney's Office for the District of Maryland
(USAO/DMD), which was filed in conjunction with Defendant EOUSA's
Motion to Vacate the Briefing Schedule on May 20, 2008.  On the
basis of these declarations, the entire record herein, and for
the reasons set forth below, defendant EOUSA respectfully submits
that there exists no genuine issue of material fact and that its
motion for summary judgment should be granted pursuant to Rule 56
of the Federal Rules of Civil Procedure and that plaintiff's
motion for summary judgment should be denied.

<u>Factual and Procedural Background</u>

By letter dated March 28, 2007, plaintiff submitted a
request directly to USAO/DMD that sought copies of certain
records related to third parties involved in the <u>Piechowicz</u>
case.[4]  (<u>See</u> Stearn Decl. ¶ 5 & Ex. A.)  Specifically, plaintiff

---

[4] The requested records pertain to a tort action filed by
Cheryl Ann Piechowicz against two federal employees and the
United States government.  <u>See</u> <u>Piechowicz v. United States</u>, 885
F.2d 1207, 1215 (4th Cir. 1989)  That lawsuit alleged that
(continued...)

-4-

requested the depositions of Cheryl Ann Piechowicz and James Savage; answers to interrogatories by Piechowicz, Savage, James Ryan, and any plaintiffs in the civil case; any admissions by Piechowicz, Savage, Ryan, and any plaintiffs in the civil case; and any deposition exhibits. (See id.) Plaintiff did not provide any written consent from or proof of death for the third parties who he named in his request. (See id.) In that same letter, plaintiff asked EOUSA to expedite the processing of his request. (See id.) By letter dated April 2, 2007, USAO/DMD forwarded plaintiff's FOIA request to EOUSA, which processes FOIA requests for the ninety-four United States Attorneys' Offices. (See id. ¶¶ 1, 5 & Ex. B.) On that same date, USAO/DMD informed plaintiff that it had forwarded his request to EOUSA. (See id. ¶ 5 & Ex. C.)

By letter dated May 18, 2007, EOUSA acknowledged receipt of plaintiff's request and assigned it two request numbers, 07-1606 and 07-1608. (See id. ¶¶ 6, 7, 10 & Ex. D.) EOUSA split plaintiff's request into two separate files: request number 07-1608 was assigned to address any publicly available records, such as press releases, responsive to plaintiff's request, and request number 07-1606 was designated to deal with any corresponding non-

---

[4](...continued)
federal agents failed to protect members of her family from Anthony Grandison, the plaintiff in the instant case. (See Stearns Decl. ¶ 20 & n. 1.) The action was ultimately dismissed against the agents and the government.

-5-

public records.  (See id. ¶¶ 7, 10 & Ex. D.)  EOUSA's letter also

advised plaintiff that it had granted his request for expedited

processing.  (See id. ¶ 7.)

　　　Request No. 07-1608 (Specific Public Records)

　　　In response to plaintiff's request, EOUSA instructed Linda

Brown, a paralegal at USAO/DMD, to conduct a search for

responsive records.  (See id. ¶ 8.)  Ms. Brown determined that

due to the age of the records requested, the Piechowicz case file

would be stored in a paper format.  (See id.; Brown Decl. ¶¶ 7,

8.)  Upon contacting the docketing clerk who manages the paper

files at USAO/DMD, Ms. Brown learned that the Piechowicz case

file had been transferred to the National Archives and Records

Administration's Federal Records Center (FRC) in Suitland,

Maryland and that these records likely had been destroyed.  (See

Stearns Decl. ¶ 8; Brown Decl. ¶ 8.)  In support of this finding,

the docketing clerk provided Ms. Brown with a "records and

transmittal receipt" showing that the records were sent to the

FRC in June 1992 and were scheduled to be destroyed in January

2001.  (See Stearns Decl. ¶ 8; Brown Decl. ¶ 8, Exs. 1, 2 at 11.)

Based on this information, Ms. Brown informed EOUSA that records

which were potentially responsive to plaintiff's request had been

destroyed.  (See Stearns Decl. ¶ 8; Brown Decl. ¶ 8.)

　　　By letter dated June 29, 2007, EOUSA informed plaintiff that

it was unable to locate any responsive records at the USAO/DMD.

-6-

(<u>See</u> Stearns Decl. ¶ 9 & Ex. E.)  Additionally, EOUSA advised
plaintiff that he could appeal its determination to the Office of
Information and Privacy (OIP) within sixty days of the date of
its letter.  (<u>See</u> <u>id.</u>)

Request No. 07-1606 (Non-Public Records)

By letter dated May 21, 2007, EOUSA informed plaintiff that
"records pertaining to a third party cannot be released absent
express authorization and consent of the third party, proof that
the subject of [the] request is deceased, or a clear
demonstration that the public interest in disclosure outweighs
personal privacy interest."  (<u>Id.</u> ¶ 11 & Ex. F.)  Because
plaintiff failed to provide written consent or proofs of death
for the individuals named in his request, EOUSA refused to
confirm or deny the existence of any responsive non-public
records maintained by USAO/DMD pursuant to Exemptions 6 and 7(C)
of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C).  (<u>See</u> Stearns Decl.
¶ 11 & Ex. F.)  EOUSA also advised plaintiff that he could appeal
its determination to OIP within sixty days of the date of its
letter.  (<u>See</u> <u>id.</u>)

By letter dated June 5, 2007, plaintiff appealed EOUSA's
action to OIP.  (<u>See</u> <u>id.</u> ¶ 12 & Ex. G.)  In his appeal letter,
plaintiff asserted that three named individuals involved with the
<u>Piechowicz</u> case were deceased.  (<u>See</u> <u>id.</u>)  By letter dated June
20, 2007, OIP acknowledged receipt of plaintiff's appeal and

-7-

assigned it appeal number 07-1706.  (See id. ¶ 13 & Ex. H.)
After determining that Cheryl Ann Piechowicz, one of the
individuals named in plaintiff's appeal was in fact deceased, OIP
advised plaintiff by letter dated August 2, 2007, that it was
remanding his request to EOUSA for a search for responsive
records, i.e., regarding Piechowicz only, subject to any fees.
(See id. ¶ 14 & Ex. I.)  Following OIP's remand, EOUSA advised
plaintiff by letter dated August 21, 2007, that it had assigned
request number 07-2750 to his remanded request.  (See id. ¶ 15 &
Ex. J.)  Based on the search conducted earlier by Ms. Brown at
USAO/DMD, EOUSA informed plaintiff that records that were
potentially responsive to his request had been destroyed in
accordance with DOJ's general records retention schedule.  (See
id. ¶ 16 & Ex. K.)

     At the time Ms. Brown was preparing a declaration in this
action on May 14, 2008, she unexpectedly learned that the
Piechowicz case file was still maintained at the FRC in Suitland,
Maryland.  (See id. ¶ 18; Brown Decl. ¶ 9.)  EOUSA retrieved the
case file from the FRC and reviewed its contents to determine
whether any of the records were responsive to plaintiff's
request.  (See Stearns Decl. ¶ 19.)  EOUSA determined that 619
pages of the case file were not responsive, because they did not
relate to the specific discovery materials enumerated in
plaintiff's request.  (See id.)  Additionally, EOUSA determined

-8-

that 303 pages were duplicates of records that had already been addressed by the Civil Division in connection with this action,[5] and that five pages were responsive to plaintiff's request.  (<u>See</u> <u>id.</u>)  In order to reasonably segregate all nonexempt information, EOUSA conducted a page-by-page and line-by-line review of the responsive pages.  (<u>See</u> <u>id.</u> ¶ 25.)  By letter dated June 24, 2008, EOUSA released five responsive pages to plaintiff with redactions made pursuant to Exemptions 6 and 7(C), 5 U.S.C. 552 § (b)(6), (7)(C).  (<u>See</u> Stearns Decl. ¶ 19 & Ex. L.)  With the exception of the records located at the FRC, EOUSA was unable to find any additional records responsive to plaintiff's request. (<u>See</u> <u>id.</u> ¶ 19.)

<u>Argument</u>

Summary Judgment for Defendant EOUSA is Proper Inasmuch as
<u>No Information Has Been Improperly Withheld from Plaintiff</u>

In accordance with the statutory requirements of the FOIA and the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820, 827 (D.C. Cir. 1973), the Stearns Declaration contains a complete description of, and justification for, the information withheld by EOUSA pursuant to Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C).

---

[5] The Civil Division has already processed and released the nonexempt portions of these 303 pages to plaintiff.  (<u>See</u> Def. Civil Division's Mot. for Summ. J., filed May 20, 2008.)

-9-

I.    EOUSA Properly Withheld Records Pursuant to
      Exemption 7(C), 5 U.S.C. § 552(b)(7)(C)

As a threshold matter, Exemption 7 protects "records or information compiled for law enforcement purposes" to the extent disclosure could "reasonably be expected to" cause one of the harms enumerated under the subsection of the exemption.  5 U.S.C. § 552(b)(7).  Information that was initially compiled for a law enforcement purpose "continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a non-law enforcement purpose."  FBI v. Abramson, 456 U.S. 615, 631-32 (1982).  In instances where the records at issue contain derivative law enforcement information, the government must demonstrate that the material "originated in a record protected by Exemption 7."  Id. at 631-32.

Here, the requested discovery materials from the Piechowicz case satisfy the Exemption 7 threshold.  Cheryl Ann Piechowicz's lawsuit alleged that government agents were derelict in their duty to shield her family members from plaintiff Grandison during the course of his criminal prosecution.  (See Stearn Decl. ¶ 20.)  In order to defend that civil action, the federal agents and the United States necessarily recounted the details of Grandison's criminal investigation to demonstrate the propriety of their conduct (see id.).  See generally Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1989).  Thus, all of the discovery

-10-

material in the <u>Piechowicz</u> case reflects information derived from
the underlying criminal investigation of plaintiff (<u>see</u> Stearns
Decl. ¶ 20).  <u>See</u> <u>United States v. Grandison</u>, 783 F.2d 1152, 1152
(4th Cir. 1986) (providing the specific statutory authority
relied upon by the agents in the criminal investigation of
Grandison).  Accordingly, as recognized by the Supreme Court in
<u>Abramson</u>, the recompilation of that investigative information
continues to retain its law enforcement function even in the
context of a civil lawsuit.

Once the threshold of Exemption 7 is satisfied, as it has
been here, an agency must demonstrate that the disclosure of the
information at issue could reasonably be expected to lead to one
of the harms identified in the subparts of the exemption.  In
this case, EOUSA invoked Exemption 7(C) as the justification for
withholding law enforcement information that "could reasonably be
expected to constitute an unwarranted invasion of personal
privacy."  5 U.S.C. § 552(b)(7)(C).

This exemption requires an agency to identify and then
balance the relevant privacy and public interests raised in the
responsive records.  In <u>U.S. Department of Justice v. Reporters</u>
<u>Committee for Freedom of the Press</u>, 489 U.S. 749 (1989), the
Supreme Court defined these competing interests.  A privacy
interest, the Court found, is generally understood as an
"individual's control of information concerning his or her

-11-

person." Id. at 763.  On the other side of the equation, a
qualifying public interest must reveal information that sheds
light on the operations or activities of the government.  See id.
at 797 (noting that the "FOIA's central purpose is to ensure that
the Government's activities be opened to the sharp eye of public
scrutiny").

     In this case, EOUSA identified all of the relevant privacy
interests at stake and properly factored into its analysis the
fact that Cheryl Ann Piechowicz, one of the individuals about
whom plaintiff sought records, is deceased.[6]  Nonetheless, EOUSA
found that other individuals mentioned in the records, such as
law enforcement officers, witnesses, suspects, attorneys and
court personnel, maintained significant privacy interests because
the disclosure of their identities would subject them to
harassment, harm, or retaliation.  (See Stearns Decl. ¶¶ 21, 24.)
EOUSA determined that these concerns were particularly well-
founded in light of the fact that Piechowicz's lawsuit, which
forms the basis of plaintiff's FOIA request, was prompted by "the
murder of a government witness and another individual which were

_____

     [6] The Civil Division conducted a detailed search with
respect to the life status of three named individuals who
plaintiff asserts were deceased.  (See Def. Civil Division's
Opp'n & Reply, Second Decl. of James M. Kovakas, filed July 15,
2008.)  Of the three people named by plaintiff, the Civil
Division was able to verify that only Cheryl Ann Piechowicz is
deceased. (See id.)  EOUSA has adopted the findings of the Civil
Division with respect to the life status of those persons.

-12-

arranged by plaintiff."  (Id. ¶ 24.)  Additionally, EOUSA

concluded that "an individual's mere association with Grandison's

criminal investigation, could be damaging to his/her reputation

or have a stigmatizing effect."  (Id. ¶ 21.)

Each of the privacy interests identified by EOUSA provide a

sufficient justification for withholding information about the

third parties mentioned in law enforcement records.  Because law

enforcement records are inherently sensitive, the Court of

Appeals for the District of Columbia Circuit has held that,

absent some compelling public interest, agencies may

categorically withhold information that would identify

individuals mentioned in such files.  See Nations Magazine v.

U.S. Customs Serv., 71 F. Supp. 885, 896 (D.C. Cir. 1995)

(stating that "to the extent any information contained in 7(C)

investigatory files would reveal the identities of individuals

who are subjects, witnesses, or informants in law enforcement

investigations, those portions of responsive records are

categorically exempt from disclosure"); SafeCard Serv. v. SEC,

926 F.2d 1197, 1205 (D.C. Cir. 1991) (permitting the categorical

withholding of "the names and addresses of private individuals

appearing in files . . . [unless disclosure] is necessary in

order to confirm or refute compelling evidence that the agency is

engaged in illegal activity").  Similarly, courts routinely

permit agencies to categorically withhold the names of law

-13-

enforcement officers and other individuals who have assisted in criminal investigations.  See Mack v. Dep't of the Navy, 259 F. Supp. 2d 99, 109 (D.D.C 2003) (protecting the identities of law enforcement agents, victims, witnesses, subjects of investigative interest, and third parties contained in investigative records, categorically); Coleman v. FBI, 13 F. Supp. 2d 75, 80 (D.D.C. 1998) (affirming FBI's withholding of the names of government personnel who helped with an investigation, because they could be subject to retaliation, humiliation or embarrassment).  Moreover, the disclosure of a person's mere connection to a criminal investigation also has been recognized as an unwarranted invasion of personal privacy.  See, e.g., Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987) (observing that "the mere mention of an individual's name in a law enforcement file will engender speculation and carries a stigmatizing connotation").

After identifying the substantial privacy interests at stake, EOUSA proceeded to consider any qualifying public interests.  In NARA v. Favish, 541 U.S. 157, 172 (2004), the Supreme Court held that "[w]here privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for disclosure."  In so doing, the requester must demonstrate that "the public interest sought to be advanced is a significant one, more specific than having information for its sake" and that the requested information "is likely to advance that interest."  Id.

-14-

Here, EOUSA found that to the extent that the records responsive to the request would reveal operations of the United States Attorneys Offices or federal law enforcement agencies, the public interest, if any, was minimal and therefore insufficient to overcome the substantial privacy interests at stake. (See Stearns Decl. ¶ 23.)  In this case, disclosure of the requested records would show only how certain government agents conducted one specific investigation and would not, as a general matter, "she[d] light on the agency's statutory duties" or otherwise inform citizens about "what their government is up to." Reporters Comm., 489 U.S. at 773; see also Oguaju v. United States, 288 F.3d 448, 451 (D.C. Cir. 2002) (finding that even if the requested records would show wrongdoing in a particular case, "exposing a single, garden-variety act of misconduct would not serve the FOIA's purpose of showing 'what the government is up to'" (quoting Reporters Comm., 489 U.S. at 773)).

Plaintiff himself fails to identify a genuine public interest as required by Favish.  Where a FOIA plaintiff asserts that the public interest at issue relates to government misconduct, he or she must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Favish, 541 U.S. at 174.  The Supreme Court further explained that "[o]nly when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for

-15-

the court to balance against the cognizable privacy interests in
the requested records." Id.  Here, plaintiff merely puts forward
the wholly unsubstantiated claim that the records at issue will
show that state and federal prosecutors altered the pre-trial
transcripts of his criminal case and suborned perjury during his
trial.  (See Compl. at 15; Pl.'s Cross Mot. at 15.)  These bare
allegations of misconduct are insufficient to constitute a
qualified public interest under the FOIA.  See Favish, 541 U.S.
at 175 (holding that "allegations of government misconduct are
'easy to allege and hard to disprove' . . . so courts must insist
on a meaningful evidentiary showing" (quoting Crawford-El v.
Britton, 523 U.S. 574, 585 (1998))); Boyd v. Criminal Div. of
U.S. Dep't of Justice, 475 F.3d 381, 388 (D.C. Cir. 2007)
(holding that "[u]nsubstantiated assertions of government
wrongdoing . . . do not establish 'a meaningful evidentiary
showing'" (quoting Favish, 541 at 175)).

Moreover, plaintiff's own self-interest in exonerating
himself by finding the "real" people responsible for the two
murders (Compl. at 16) is a distinctly personal interest, not a
recognized public interest.  See Cano v. DEA, No. 04-935, 2006 WL
1441383, at *4 (D.D.C. May 24, 2006) ("When weighing the privacy
interests against plaintiff's purely personal interests in
challenging his conviction, the balance clearly favors non-
disclosure."); Mack, 259 F. Supp. 2d at 109 (finding that "courts
consistently have refused to recognize any public interest in

-16-

disclosure of information to assist a convict in challenging his conviction").

Even if the public interest identified by plaintiff qualifies under the standard established in Reporters Committee, he fails to show how the requested records will advance this interest inasmuch as any allegations of misconduct in Piechowicz case do not concern the government's handling of plaintiff's criminal trial.  Rather, the allegations detailed in Piechowicz's lawsuit concern the failure of government agents to respond to threats to government witnesses made by plaintiff in the course of plaintiff's criminal prosecution.  As such, the requested records could not possibly further the interest propounded by plaintiff, i.e., uncovering government misconduct during his criminal trial.  See Favish, 541 U.S. at 172 (requiring a FOIA plaintiff to show that the requested information "is likely to advance" the public interest asserted).  In sum, EOUSA properly found that there was no corresponding public interest that could serve as a sufficient counterweight to the significant privacy interests at issue in the records responsive to plaintiff's request.

II.  EOUSA Properly Withheld Records Pursuant
     to Exemption 6, 5 U.S.C. § 552(b)(6)

Exemption 6 of the FOIA permits agencies to withhold records that are contained within "personnel and medical files and similar files the disclosure of which would constitute a clearly

-17-

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

As an initial matter, agencies invoking Exemption 6 must

determine whether the records involved fall into the categories

of "personnel and medical files and similar files."  The Supreme

Court has interpreted the term "similar files" broadly to include

"'any records on an individual who can be identified as applying

to that individual.'"  Dep't of State v. Wash. Post. Co., 456

U.S. 595, 601 (1982) (quoting the legislative history of the

exemption in order to define the term).

     The requested records in this case constitute "similar

files" within the above-referenced standard of Exemption 6.

These records consist of various discovery materials from the

civil case, Piechowicz v. United States, No. K-86-802 (D. Md.

1989).  The set of interrogatories that were withheld in part by

EOUSA identify multiple third parties who were involved with the

Piechowicz case.  (See Stearns Decl. ¶ 20.)  Accordingly, these

records clearly satisfy the threshold of Exemption 6.  See Wash.

Post Co., 456 U.S. at 601 (concluding that Exemption 6 covers

information in government records "which applies to a particular

individual").

     Although Exemptions 6 and 7(C) have different thresholds,

they employ the same type of analysis, which requires an agency

to balance the relevant privacy and public interests in the

records at issue.  See N.Y. Times Co. v. NASA, 920 F.2d 1002,

1009 (D.C. Cir. 1990) (finding in the context of Exemption 6 that

-18-

"[i]f the information 'applies to an individual,' then it might harm that individual; for that reason it crosses the threshold, and the privacy interests of the person to whom it applies must be considered and balanced against the public interest in releasing it").  The difference between the two exemptions hinges on "the magnitude of public interest that is required to override the respective privacy interests protected." DOD v. FLRA, 510 U.S. 487, 496 (1994).  Exemption 6 dictates that disclosure "constitute a clearly unwarranted invasion of personal privacy," which represents a more stringent standard than the "could reasonably be expected" showing required by Exemption 7(C). Compare 5 U.S.C. § 552(b)(6), with 5 U.S.C. § 552(b)(7)(C).  As the foregoing discussion will demonstrate, the requested records in this case are not only entitled to protection pursuant to Exemption 7(C), but they also may be withheld under the heightened standard of Exemption 6 as well.

The privacy interests identified by EOUSA in connection with its Exemption 7(C) analysis likewise apply to Exemption 6. Namely, EOUSA found that disclosure of the requested discovery items would lead to a harassment of, and/or retaliation against persons named in the records.  As set forth above, these concerns are fully justified by plaintiff's documented history of violence, which includes his attempt to disrupt his criminal prosecution by arranging the murders of government witnesses. Courts have consistently recognized these types of privacy

-19-

interests where the consequences of such an intrusion are
considerably less grave than those at issue in this case.  See
Nat'l Ass'n of Retired Fed. Empl. v. Horner, 879 F.2d 873, 878
(D.C. Cir. 1989) (finding that the release of names and/or
addresses of federal annuitants to a special interest association
would subject them to harassment and constitute a significant
invasion of their privacy); N.Y. Times Co. v. NASA, 782 F. Supp.
628, 632 (D.D.C. 1991) (concluding that the families of the
astronauts killed in the Challenger disaster have substantial
privacy interests because "[t]hey may be subjected not just to a
barrage of mailings and personal solicitations, but also to a
panoply of telephone calls from media groups as well as a
disruption of their peace of mind every time a portion of the
tape is played within their hearing").

In addition, EOUSA determined that the government agents who
were accused and ultimately cleared of misconduct retain an
interest in keeping heretofore undisclosed details about the
allegations private, because such information "could serve as a
source of embarrassment or damage [their] reputations."  (Stearns
Decl. ¶ 24.)  Courts likewise have viewed that concern as a valid
privacy interest under the FOIA.  See Dep't of the Air Force v.
Rose 425 U.S. 352, 381 (1976) (protecting the names and
identifying information of cadets who were disciplined by the Air
Force Academy because disclosure would have the tendency to
embarrass or reflect poorly on their reputations); Stern v. FBI,

-20-

737 F.2d 84, 93 (D.C. Cir. 1984) (determining in the context of
Exemption 7(C) that "the risk that . . . employees could be
linked to serious criminal wrongdoing when, in fact, they were
totally cleared of any such acts, increases the potential
invasion of privacy that [the exemption] was designed to
protect").  Accordingly, EOUSA identified substantial privacy
interests against which to balance the public interest.

       For the same reasons that were discussed earlier, there is
no sufficient public interest to override the considerable
privacy interests of the individuals identified in the withheld
records.  Here, the requested records in isolation would not
contribute significantly to the public's understanding of the
inner workings of the government.  See Oquaju, 288 F.3d at 451;
see also Mueller v. Dep't of the Air Force, 63 F. Supp. 738, 745
(E.D. Va. 1999) (concluding that the public interest in
disclosure of one personnel file "is attenuated because
information concerning a single isolated investigation reveals
relatively little about the conduct of the Air Force as an
agency").  Moreover, the sole public interest put forth by
plaintiff (see Compl. 16; Pl.'s Cross Mot. at 14-15) -- namely,
unsupported allegations of government misconduct in his own
criminal trial -- fails to satisfy the standard established by
the Supreme Court in Favish.  See Favish, 541 U.S. at 174
(requiring a FOIA plaintiff establish more than a "bare
suspicion" when alleging government misconduct).  Nor would

-21-

disclosure of the requested records ever further plaintiff's

purported public interest, since they do not document

prosecutorial misconduct during the course of his criminal trial.

See Favish, 541 U.S. at 172 (providing that a FOIA plaintiff must

demonstrate that the information in question "is likely to

advance" the public interest asserted).  Accordingly, the

substantial privacy interests at issue outweigh, at best, the

minimal public interest that would be served by disclosure of the

requested materials.

III.  Individuals Identified in the Records Have Not
      Waived Their Privacy Interests under the FOIA

Plaintiff contends that one of the federal agents involved

in the Piechowicz case waived his privacy interests under the

FOIA by discussing the substance of that case with the press.

(See Compl. at 11-12. & Pl.'s Cross Mot. at 13.)  Plaintiff's

contention is patently wrong.  Limited public disclosure about an

otherwise private matter does not constitute a waiver of an

individual's privacy interest with respect to the details

surrounding a given incident.  See Kimberlin v. U.S. Dep't of

Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) (holding that a

government employee who publicly discussed an investigation into

his conduct and subsequent disciplinary action against him

maintained a privacy interest "in avoiding disclosure of the

details of the investigation, of his misconduct, and of his

punishment" as well as "an interest in preventing . . .

-22-

speculative press reports of his misconduct from receiving authoritative confirmation from an official source").

Plaintiff also argues that the federal agents named in the requested records waived their privacy interests by publicly testifying about the specifics of his criminal investigation during his own trial. (See Compl. at 12-13.)  This argument is equally without merit.  At the outset, individuals who testify at criminal trials, either as witnesses or suspects, retain strong privacy interests.  See, e.g., Meserve v. U.S. Dep't of Justice, No. 04-1844, 2006 WL 56732, at *23 (D.D.C. Aug. 14, 2006) (finding that a witness who testified at trial did not waive her privacy interests); Lardner v. U.S. Dep't of Justice, No. 03-0180, 2005 WL 758267, at *19 (D.D.C. Mar. 31, 2005) (concluding that name of a witness who testified at public trial was properly withheld under Exemption 7(C)).  Furthermore, to the extent that a witness waives any privacy rights, it only applies to the "scope of the trial record."  See Isley v. EOUSA, No. 98-9058, 1999 WL 1021934, at *4 (D.C. Cir. 1992) (holding that "the testimony of [witnesses] at trial [does not] place all documents relating to their testimony in the public domain . . . [r]ather, under Davis, the fact that they testified only bars the government from withholding the testimony itself"); Coleman, 13 F. Supp. 2d at 80 (stating that "an individual who testifies at trial does not waive this privacy interest beyond the scope of the record" (citing Burge v. Eastburn, 934 F.2d 577, 579 (5th

-23-

Cir. 1991))).  Accordingly, even if the substance of the
testimony provided during Grandison's criminal trial appeared in
the records at issue, an individual's prior testimony would not
waive their privacy interests with respect to any information
provided during the discovery process of an entirely different
case.  Lastly, plaintiff's argument that the parties involved in
the Piechowicz case waived their privacy rights by publicly
testifying in the course of that civil lawsuit is utterly
unsupported.  (See Pl.'s Cross Mot. at 13.)  Beyond this glib
assertion, plaintiff offers no evidence to show that the
requested discovery materials or their contents were ever
publicly available.

> IV.  Plaintiff Has Failed to Demonstrate that Any
>       of the Withheld Records Are in the Public Domain

It is well established that the burden rests on the FOIA
plaintiff to demonstrate that requested records exist in the
public domain.  See Assassination Archives & Research Ctr. v.
CIA, 334 F.3d 55, 60 (D.C. Cir. 2003) (holding that a FOIA
plaintiff must show that the material sought duplicates an
agency's prior disclosure); Davis v. U.S. Dep't of Justice,
968 F.2d 1276, 1282 (D.C. Cir. 1992) (finding that "a party who
asserts that material is publicly available carries the burden of
production on that issue").  Moreover, any public disclosures
must substantively match the records withheld by the agency.
See, e.g., Cottone v. Reno, 193 F.3d 550, 555 (D.C. Cir. 1999)

-24-

(concluding that the government waived its ability to assert Exemption 7(D) to withhold audiotapes where plaintiff was able to show precisely which conversations were aired in open court by referencing an official trial transcript).

In this case, although plaintiff has repeatedly asserted that the records withheld by EOUSA have been "readily available to the general public for the last twenty years in the Clerk's Office of the United States District Court for the District of Maryland," he has never provided any support for that contention. (See Pl. Grandison's Mot. for Summ. J. Against EOUSA at 6.) Plaintiff has not produced, and EOUSA is not aware of, any evidence indicating that the discovery materials which he has requested have ever been filed in that Court (see Stearns Decl. ¶ 23). See Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001) ("For the public domain doctrine to apply, the specific information sought must have already been 'disclosed and preserved in a permanent public record.'" (quoting Cottone, 193 F.3d at 554)). Moreover, if the records at issue were publicly available at the District of Maryland Courthouse, as plaintiff claims, it would be illogical for him to attempt to obtain them circuitously through the FOIA. See Reporters Comm., 489 U.S. at 764 (noting that if certain records "were 'freely available,' there would be no reason to invoke the FOIA to obtain access to the information they contain").

-25-

Additionally, in conjunction with his cross motion for summary judgment with respect to the part of this action concerning the Civil Division, plaintiff submitted portions of deposition transcripts and interrogatories from the underlying civil case that he claims are publicly available.  Assuming arguendo that those partial transcripts are in the public domain, it does not follow that complete copies of the requested discovery materials from the Piechowicz case must be disclosed. See Cottone, 193 F.3d at 555 (stating that before finding waiver, the court "must be confident that the information sought is truly public and that the requester receives no more than what is publicly available"); Kidder v. FBI, 517 F. Supp.2d 17, 31 (D.D.C. 2007) (finding that trial exhibits were not in the public domain where plaintiff failed to show that they "actually were introduced as evidence in open court").  Additionally, the passage of a significant amount of time has made the records at issue, which are over twenty years old, "practically obscure" and, as a consequence, the privacy interests involved are "as strong, if not stronger, now than when the records were initially created" (Stearns Decl. ¶ 24).  See Reporters Comm., 489 U.S. at 762-63 (finding that individuals maintain a substantial privacy interest in information that was previously disclosed to the public, but has again become private with the passage of time).

-26-

V.    EOUSA Provided Plaintiff with All Reasonably
      Segregable Portions of the Responsive Records

The FOIA requires that agencies release any reasonably segregable portions of records.  See 5 U.S.C. § 552(b); see also Billington v. U.S. Dep't of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000) (explaining that "[t]his segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption"); Trans-Pacific Policing Agreement v. U.S. Customs Serv., 117 F.3d 1022, 1027 (D.C. Cir. 1999) (stating that "[i]t has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions").  Agency affidavits are sufficient for segregability purposes where they "'show with reasonable specificity why the documents fall within the exemption.'"  Quinon v. FBI, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting Hayden v. NSA, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

EOUSA satisfied the segregability requirement by performing a page-by-page and line-by-line review of the five-pages of responsive records.  (See Stearns Decl. ¶ 25.)  As a result of that review, EOUSA released all reasonably segregable nonexempt information to plaintiff.  (See id.)  The only information withheld by EOUSA consisted of the names and personally-identifying information of third parties, which, as the

-27-

discussion above clearly illustrates, is exempt from disclosure
pursuant to Exemptions 6 and 7(C).  (<u>See</u> <u>id.</u> ¶¶ 20, 21, 24.)

<u>Conclusion</u>

For the reasons set forth above, and based upon the entire
record herein, defendant EOUSA respectfully submits that its
motion for summary judgment should be granted and that
plaintiff's motion should be denied.

Respectfully submitted,

_____
JEFFREY A. TAYLOR
(DC Bar #498610)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


                                         /s/
                          _____
Dated:  August 11, 2008   CAROLINE A. SMITH
                          (DC Bar #501942)
                          Attorney-Advisor
                          Office of Information and Privacy
                          United States Department of Justice
                          1425 New York Ave., NW, Suite 11050
                          Washington, DC  20530-0001
                          (202) 514-8858

                          Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,       )
                            )
     Plaintiff,         )
                            )
     v.               )  Civil Action No. 08-00024 (RJL)
                            )
U.S. DEPARTMENT OF JUSTICE  )
 et al.,                  )
                            )
     Defendants.    )
                            )

## DECLARATION OF DIONE JACKSON STEARNS

I, Dione J. Stearns, declare the following to be a true and correct statement of facts:

1)  I am an Attorney-Advisor with the Executive Office for United States Attorneys
(EOUSA), United States Department of Justice.  In that capacity, my responsibilities include:
acting as a liaison with other divisions and offices of the Department of Justice (DOJ) in
responding to requests and the litigation filed under both the Freedom of Information Act
(FOIA), 5 U.S.C. § 552 (2006), amended by the OPEN Government Act of 2007, Pub. L. No.
110-175, 121 Stat. 2524, and the Privacy Act of 1974, 5.U.S.C. § 552a (2006) (PA); the review
of FOIA/PA requests for access to records located in this office and 94 United States Attorney's
offices (USAOs) and the case files arising therefrom; the review of correspondence related to
requests; the review of searches conducted in response to requests; the location of responsive
records; and preparation of responses thereto by EOUSA to ensure that determinations to
withhold or release responsive records are in accordance with the provisions of both the FOIA
and the PA, as well as the DOJ regulations (28 C.F.R. § 16.3 and §16.40).

2)  As an Attorney-Advisor of EOUSA's FOIA/PA unit, I have authority to release and/or

2

withhold records requested under the FOIA/PA, and to explain the rationale for EOUSA's

disclosure determinations.  The statements I make hereinafter are based on my review of the

official files and records of EOUSA, my own personal knowledge, or information acquired by

me through the performance of my official duties.

     3)  Due to the nature of my official duties, I am familiar with procedures followed by

EOUSA in responding to plaintiff's FOIA request.

     4)  This declaration explains the procedures that were followed in responding to

plaintiff's FOIA request, referenced in his Complaint filed on January 7, 2008.

     5)  By letter dated March 28, 2007, plaintiff made a request for records to the United

States Attorney's Office for the District of Maryland (USAO/DMD).  (See Ex. A.)  By letter

dated April 2, 2007, the USAO/DMD forwarded plaintiff's request to EOUSA.  (See Ex. B.)  On

that same date, USAO/DMD informed plaintiff that it had forwarded his request to EOUSA.

(See Ex. C.)  This request sought access to the following information:

> i) a complete copy of (every page) of the Deposition taken on March 30, 1987 of
> Cheryl Ann Piechowicz in Civil No. K-86-802 by Burke M. Wong, Esq., an
> attorney for the U.S. Justice Department Tort Branch in the United States
> Attorney Office for the District of Maryland.
>
> ii) A complete copy (every page) of the Deposition taken in the Law Firm of
> Cohen & Goldberg on April 1, 1987 of former State of Maryland Assistant U.S.
> Attorney, James C. Savage in Civil No. K-86-802 by the attorneys Stephen
> Goldberg, Esq. and George R. Hoffman, Esq., for Plaintiffs Cheryl Ann
> Piechowicz, et al.
>
> iii) Any and all a complete copy (every page) of any Interrogatories filed by
> Defendants Savage and Ryan in this civil case, and any filed by the Plaintiffs
> Cheryl Ann Piechowicz, et al, as well as all answers to those motions by both the
> Defendants and Plaintiffs in the civil case above.
>
> iv) Complete copies of any and all Admissions filed by both the Defendants

3

Savage and Ryan, and the Plaintiffs Cheryl Ann Piechowicz, et al in the civil case above.

v) Complete copies of any and all Exhibits admitted during the course of the Depositions conducted on March 30, 1987 and April 1, 1987 or any other dates thereafter.  (See Ex. A.)

Plaintiff also asked for expedited processing of his request.  (See Ex. A.)  Plaintiff did not

provide a privacy waiver or proof of death for any of the individuals named in his request.  (See

Ex. A.)

### Request Number 07-1608 (Specific Public Records)

6)  By letter dated May 18, 2007, EOUSA acknowledged receipt of plaintiff's request

and inadvertently stated that it would conduct a search for responsive records in the United States

Attorneys Office for the District of Columbia, instead of the USAO/DMD.  (See Ex. D.)

However, EOUSA did, in fact, conduct its searches at the USAO/DMD.

7)  In order to adequately protect privacy interests under the FOIA, EOUSA routinely

separates requests that ask for information on third parties into two separate files.  One file is

designated for information available in public records sources, such as USAO/DMD press

releases, and the second file is assigned to deal with information contained in non-public source

records.  Since plaintiff requested information concerning third parties and did not provide a

privacy waiver or proof of these individual's deaths, EOUSA advised him that it had bifurcated

his request and that both files would be processed separately.  (See Ex. D.)  Request Number 07-

1608 was assigned to the portion of plaintiff's request for any responsive "specific public

records" maintained by USAO/DMD.  (See Ex. D.)  By this same letter, EOUSA advised

plaintiff that it had granted his request for expedited processing.  (See Ex. D.)  EOUSA's

4

expedited treatment of his request is not at issue in this case and, therefore, is not discussed in detail in this Declaration.

8) EOUSA contacted Linda Brown, a paralegal, at USAO/DMD to conduct a search for responsive records. (See Def. EOUSA's Mot. to Vacate the Briefing Schedule, Decl. of Linda Brown [hereinafter Brown Decl.], filed May 20, 2008.) Based upon the age of the records requested by plaintiff, Brown believed that if USAO/DMD maintained any responsive records related to the Piechowicz case, they would be kept in paper format. (See id. ¶¶ 7-8.) The docketing clerk at USAO/DMD informed Brown that the Piechowicz case file had been destroyed in 2001. (See id. ¶ 8.) In support of that finding, the docketing clerk provided Brown with a "records and transmittal receipt" showing that the records had been sent to the National Archives and Records Administration's Federal Records Center (FRC) in Suitland, Maryland and that they were scheduled for destruction in January 2001. (See id.; Brown Decl. Ex 1 & 2 at page 11.) Brown, in turn, informed EOUSA that the Piechowicz case file had been destroyed. (See id.)

9) By letter dated June 29, 2007, EOUSA informed plaintiff that it was unable to locate any responsive public records at USAO/DMD. (See Ex. E.)

### Request Number 07-1606 (Non-public Records)

10) By the aforementioned letter dated May 18, 2007, EOUSA assigned Request Number 06-1606 to any responsive "non-public records" maintained by USAO/DMD. (See Ex. D.)

11) By letter dated May 21, 2007, EOUSA informed plaintiff that because his request pertained to third parties and he failed to provide consent or proof of death for these individuals, EOUSA refused to confirm or deny the existence of any responsive "non-public records"

5

pursuant to Exemptions 6 and 7 (C).  (See Ex. F.)  EOUSA also advised plaintiff that he could

appeal its decision to OIP within 60 days of the date of its letter.  (See Ex. F.)

12)  By letter dated June 5, 2007, plaintiff submitted an appeal with the Office of

Information and Privacy (OIP).  (See Ex. G.)  In his appeal letter, plaintiff asserted that three

named individuals involved in the Piechowicz case are deceased.  (See Ex. G.)

13)  By letter dated June 20, 2007, OIP acknowledged receipt of plaintiff's appeal on

June 14, 2007 and assigned it the tracking number 07-1706.  (See Ex. H.)

14)  OIP determined that one of the individuals who plaintiff named in his request as

having died, Cheryl Ann Piechowiz, is deceased.  Accordingly, by letter dated August 2, 2007,

OIP remanded plaintiff's request to EOUSA for a search based on the information that

Piechowicz is dead.  (See Ex. I.)

### Request Number 07-2750 (Non-public Records)

15)  Upon receipt of OIP's August 2, 2007 remand letter, EOUSA opened a new request

file for the request that was formerly designated as request number 07-1606, and assigned it the

new request number 07-2750.  By letter dated August 21, 2007, EOUSA informed plaintiff of

this new request number and provided information about expected processing times.  (See Ex. J.)

16)  Based on the earlier search conducted by Linda Brown at USAO/DMD, detailed

above, EOUSA informed plaintiff, by letter dated November 30, 2007, that it had determined that

"records responsive to this request have been destroyed in accordance with the Department's

General Records Schedule."  (Ex. K.)

17)  On November 17, 2007, plaintiff filed his Complaint in the instant case.

18)  In the process of preparing a declaration in this action, Brown unexpected learned

6

that potentially responsive records might have been transferred to the FRC in Suitland, Maryland. (See Brown Decl. ¶ 9.)

19) EOUSA retrieved the Piechowicz case file from the FRC. Upon reviewing the case file, EOUSA determined that 619 pages of the case file were not responsive, because they do not consist of the specific discovery materials that are enumerated in plaintiff's request. It further determined that 303 pages are duplicates of material processed by the Civil Division in connection with this action, and that only five pages were responsive to plaintiff's request. By letter dated June 24, 2008, EOUSA informed plaintiff of those determinations and released five pages with redactions made pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. 552 §§ (b)(6) and (b)(7)(C). (See Ex. L.) Except for the records which were retained at the FRC, EOUSA was not able to locate any records responsive to plaintiff's request.

## FOIA EXEMPTION (b)(7)(C)

20) The records at issue in this case satisfy the threshold of Exemption 7(C), which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552 § (b)(7)(C). The records at issue in this case pertain to a civil lawsuit initiated by Cheryl Ann Piechowicz against the government and agents of the government in their official capacities. Piechowicz alleged in that action that government agents were derelict in their duty to protect her family from the plaintiff in the instant action.[1] Specifically, plaintiff Grandison hired a contract

---

[1] See generally Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1989) (summarizing the facts of the case).

7

killer to murder Piechowicz and her husband in order to prevent them from testifying in his

criminal trial on drugs and weapons charges. All of the information at issue in this case was

originally compiled in connection with a criminal investigation of Grandison.[2] From the five

pages that were released in part, EOUSA redacted names and identifying information associated

with third parties, including law enforcement officers, witnesses, targets of the underlying

investigation, attorneys and court personnel.

21) As required by Exemption 7(C), EOUSA balanced the privacy interests of the

individuals mentioned in these records against any public interest in disclosure. EOUSA

released portions of five pages of interrogatories. Each item of information was examined to

determine the privacy interest of each individual whose name and/or identifying information

appears in these records. I determined that the release of any identifying information involving

these third parties could reasonably constitute an unwarranted invasion of their personal privacy,

because it could result in unwanted and even unlawful efforts to gain further access to such

persons or to personal information about them. It could also lead to harassment, harm, or

exposure to unwanted and/or derogatory publicity and lead to inferences arising from their

connection to the case. Moreover, an individual's mere association with Grandison's criminal

investigation, could be damaging to his/her reputation or have a stigmatizing effect. In short,

disclosure would be detrimental to the persons protected and, accordingly, the privacy interests at

stake in these records are significant. In addition, I also considered the passage of time and its

effect on the privacy interests of third party individuals. I determined that the privacy interests

---

[2]  See United States v. Grandison, 783 F.2d 1152, 1152 (4th Cir. 1986) (providing the
statutory authority used by the FBI and DEA when conducting the investigation and prosecutiion
of Grandison on guns and drug charges).

8

are as strong, if not stronger, now than when the records were initially created because, to the extent that any aspects of the underlying investigation of Grandison or Piechowicz's civil lawsuit commanded public attention, they no longer do so.

23) After identifying the privacy interests at stake, I then identified the relevant public interest– namely, whether the information in question would reveal the operation and activities of USAOs and federal law enforcement agencies. I have determined that there is minimal, if any, public interest in showing how government agents acted in the course of one particular criminal investigation. Accordingly, any public interest in the requested records, it is not sufficient to outweigh the substantial privacy interests of the individuals mentioned in the records. Plaintiff has not asserted, and I could not discern, any additional qualifying public interest. Moreover, plaintiff contends that these records were filed publicly with the U.S. District Court of the District of Maryland, EOUSA has not been able to find any evidence to confirm this assertion.

## FOIA EXEMPTION (b)(6)

24) EOUSA also determined that Exemption 6 applies to the withheld information. Exemption 6 permits agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(6). Since the documents at issue contain information which identifies third parties, I determined that these records clearly satisfy the Exemption 6 threshold. In addition, I also balanced the privacy and the public interests at stake and determined that information pertaining to these individuals would constitute a clearly unwarranted invasion of their personal privacy under Exemption 6. The privacy interests at issue in this case are substantial. There is a risk that the individuals who were associated with the Grandison case would be the victims of

9

harassment or retaliation. Indeed, the underlying cause of action for the <u>Piechowicz</u> case stems from the murder of a government witness and another individual which were arranged by plaintiff. Moreover, since the records at issue detail the misconduct allegations against government agents, which were ultimately dismissed,[3] regarding their failure to protect Piechowicz's family members from plaintiff, disclosure of this information could serve as a source of embarrassment or damage the reputations of the government agents named in the case. Although the general subject matter of the <u>Piechowicz</u> case is in the public domain, the information contained in the redacted records reveals details which have not been publicly available. As explained above, plaintiff did not offer, and I could not identify, any public interest sufficient to overcome the weighty privacy interests at stake in this case.

## **SEGREGABILITY**

25) Each document was evaluated to determine if any information could be segregated and released. Accordingly, I have conducted a page-by-page and line-by-line review to identify information exempt from disclosure. I have released all reasonably segregable portions of the records to plaintiff.

---

[3] <u>See</u> <u>Piechowicz</u>, 885 F.2d at 1215 (upholding the action of the district court, which dismissed the case against the federal agents based on their qualified immunity and dismissed the case against the government under the discretionary function exception to the Federal Torts Claims Act).

10

## **CONCLUSION**

26) Each step in the handling of plaintiff's request has been entirely consistent with

EOUSA and the United States Attorney's Office procedures which were adopted to ensure an

equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the *7th* day of August 2008.

Dione Jackson Stearns
Attorney Advisor
EOUSA FOIA/PA Staff

*y/r*
*To Celeste*
*FOIA*

Anthony Grandison #172622
MCAC C-40
401 E. Madison Street
Baltimore, MD. 21202

Allen F. Loucks,  Assistant United States Attorneys

Chief, Civil Division

36 South Charles Street, Fourth Floor

Baltimore, MD 21201

Re: Cheryl Ann Piechowicz, et al v. United States, Civil No. K-86-802

Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1988) (Nos. 88-2099, 88-2100)

Dear Executive Office for United States Attorneys

This is a request pursuant to the Freedom of Information Act (5 U.S.C. &552, et

seq.). Please be advised by this letter that I wish for my request to be processed in an

expedited manner, pursuant to 5 U.S.C. &552(a)(E)(i).

Please be advised that Cheryl Ann Piechowicz, et. al filed a law suit or tort

actions in the above captioned case against the former Assistant U.S. Attorney James

Savage, John Ryan a DEA agent, and the United States of America on March 13, 1986

charging 12 count complaint.

At that time Breckinridge L. Willcox was the United States Attorney for the State

of Maryland, and Juliet Eurich was and still is an Assistant U.S. Attorney. Mrs. Eurich was

involved in the filing by the government a Motions to Dismiss in the civil case along with John

J. Farley, III, Director, Torts Branch Civil Division, and Burke M. Wong of the Torts Branch Civil

Division. That motion and others bears Assistant U.S. Attorney, Eurich signature along with the

Torts Branch Civil Division attorneys, Farley and Wong.

1. By this letter, pursuant to the Freedom of Information Act, I am requesting that

your office specially turn over to me any and all a complete copy of (every page) of the

Deposition taken on March 30, 1987 of Cheryl Ann Piechowiz in Civil No. K-86-802 by Burke

1



M. Wong, Esq., an attorney for the U.S. Justice Department Tort Branch in the United States Attorney Office for the District of Maryland.

2. A complete copy (every page) of the Deposition taken in the Law Firm of Cohen & Goldberg on April 1, 1987 of former State of Maryland, Assistant U.S. Attorney James C. Savage in Civil No. K-86-802 by the attorneys Stephen Goldberg, Esq., and George R. Hoffman, Esq., for Plaintiffs Cheryl Ann Piechowicz, et al,.

3. I am requesting that your office specially turn over to me any and all a complete copy (every page) of any Interrogatories filed by the Defendants Savage and Ryan in this civil case, and any filed by the Plaintiffs Cheryl Ann Piechowicz, et. al, as well as all answers to those motions by both the Defendants and Plaintiffs in the civil case above.

4. Complete copies of any and all Admissions filed by both the Defendants Savage and Ryan, and the Plaintiffs Cheryl Ann Piechowicz, et al, in the civil case above.

5. Complete copies of any and all Exhibits admitted during the course of the Depositions conducted on March 30, 1987 and April 1, 1987 or any other dates thereafter.

### Compelling Need For Expedited Processing.

I am sure that this Agency is aware of the time limitations on capital litigation in Death Penalty cases pursuant to Antiterrrorism and Effective Death Penalty Act, 28 U.S.C. &&2261-2266. I am presently challenging my convictions and sentences in the State Courts, and without expedited processing of my request I am in jeopardy of suffering irreparable injury, by not conforming with the time restrictions imposed by the State Court. I have no other remedies available to me to challenge my State convictions and sentences of death other than the present one pending in the State Court of Somerset County, in Criminal Case No. 4010.

I believe that this demonstrates a compelling need for expedited processing as set forth in 28 U.S.C. &&552(a)(E)(i)(I).

Thanking you for your time and assistance concerning this matter. Please notify me of any of your procedures concerning your requirements in FIOA request. And further advise me of your appeal procedure in these matters in the event your Office decides to deny

this request, the reasons and grounds for doing so. Please notify me at the above address when you are in receipt of this request.

Sincerely,

Anthony Grandison #172622

Dated: 3-28-2007

3-28-2007



U.S. Department ... Justice

RECEIVED
*United States Attorney*
*District of Maryland*
*Northern Division*

2007 APR -9 ...

DEPT. OF ...
FOIA/...

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *410-209-4800*<br>*TTY/TDD:410-962-4462*<br>*410-209-4973*<br>*FAX 410-962-2310* |
| *Allen F. Loucks*<br>*Chief, Civil Division* | | |

April 2, 2007

William G. Stewart, II
Assistant Director
Freedom of Information/Privacy Act Unit
Executive Office for U.S. Attorneys
U.S. Department of Justice
600 E Street, NW
BICN Building, Room 7300
Washington, D.C. 20530

     Re: Freedom of Information/Privacy Act Request

Dear Mr. Stewart:

     Enclosed please find a FOIA/PA Request from Anthony Grandison which this office received. We have notified Mr. Grandison by letter that his request has been forwarded to you for further action.

          Very truly yours,

          Rod J. Rosenstein
          United States Attorney


          Allen F. Loucks
          Assistant United States Attorney

Enclosure



GOVERNMENT
EXHIBIT
B

PENGAD-Bayonne, N.J.



U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Allen F. Loucks*
*Chief, Civil Division*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*410-209-4800*
*TTY/TDD:410-962-4462*
*410-209-4812*
*FAX 410-962-2310*

April 2, 2007

Mr. Anthony Grandison
MCAC C-40
401 E. Madison Street
Baltimore, MD 21202

RE:    Freedom of Information Act/Privacy Act Request

Dear Mr. Grandison:

This office is in receipt of your FOIA/PA Request. In accordance with the Department of Justice regulations at 28 C.F.R. § 16.3 we have forwarded your Request to the FOIA/PA Unit in Washington, D.C. That office coordinates the processing of all FOIA Requests and will respond directly to you.

In order to accelerate the processing of your FOIA/PA Request, please direct all inquiries to:

Freedom of Information Act/Privacy Act Unit
Executive Office for United States Attorneys
600 E. Street, N.W., Room 7300
Washington, D.C. 20530
Tele: 202-616-6757
Fax: 202-616-0478

Thank you for your attention in this matter.

Very truly yours,

Rod J. Rosenstein
United States Attorney

Allen F. Loucks
Assistant United States Attorney



GOVERNMENT EXHIBIT

**U.S. Department** ... **Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757   FAX: 616-6478   (www.usdoj.gov/usao)*

Requester: Anthony Grandison          Request No.: 07-1608

MAY 18 2007

Subject: Piechowicz v. U.S. (specific public records) /DDC

     The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

     Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

     EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions; for example, Project Requests usually take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

     By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

     If you wish to revise your request to try to reduce fees, you may use the attached form. If you do not wish to incur fees for your request as it is now stated, please submit this form (or your letter revising your request) to us immediately so that your request, and fees, can be limited.

            Sincerely,

            William G. Stewart II
            Assistant Director

Form

GOVERNMENT EXHIBIT D

ADDENDUM FOR SPLIT REQUESTS

This request has been split into __2__ separate files ("requests"), as noted below, for the separate districts and/or subjects mentioned in the request letter. We have assigned the _2_ requests the following numbers:

File ("Request") Number             Subject

___07-1606____             __Piechowicz v. U.S. (Non-public records)__

___07-1608____             __Piechowicz v. U.S. (specific public records)/DMD__


        Requester will receive separate correspondence (acknowledgment letter or closing letter) for each file ("request") above. We will process each file ("request") separately and send a response on each as soon as it is finished.

Anthony Grandison #07-1608

Nite: Your request is being expedited.  This does not guarantee processing within the statutory time limits.



U.S. Departm.    . Justice

*Executive Office for United States Attorneys*
*Freedom of Information/Privacy Act Staff*
*600 E Street, N.W., Room 7300*
*Washington, D.C. 20530*
*202-616-6757  Fax 202-616-6478*



Request Number:  07-1608                    Date of Receipt:  06/08/07
Requester: Grandison, Anthony
Subject Picchowicz v. U.S. (specific public records)/DMD

Dear Requester:

     In response to your Freedom of Information Act and/or Privacy Act request, the paragraph(s) checked below apply:

JUN 2 9 2007

1.   [ ]   A search for records located in this office has revealed no records.

2.   [ X ]   A search for records located in the United States Attorney's Office(s) for the District of Maryland (DMD) _____ has revealed no records.

3.   [ ]   The records which you have requested cannot be located.

4.   [ ]   This office is continuing its work on the other subject/districts mentioned in your request.

5.   [ X ]   This is the final action my office will take on this particular request.

     You may appeal my decision in this matter by writing within sixty (60) days, to:

Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530

     Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

     After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

Sincerely,

William G. Stewart II
Assistant Director

GOVERNMENT
EXHIBIT
E



**U.S. Departr    t of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*          MAY 2 1 2007
*600 E Street, N.W.,  Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
(202) 616-6757   FAX:  616-6478   (www.usdoj.gov/usao)

Requester:  Anthony Grandison

Request Number:  07-1606          Date of Receipt:  April 9, 2007

Subject of Request: Piechowicz v. U.S. (Non-public records)

Dear Requester:

The Executive Office for United States Attorneys has received your Freedom of Information Act request and assigned the above number to the request.

You have requested records concerning a third party (or third parties).  Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records.  Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C.§ 552a.  These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.

We will release, if requested, any public records maintained in our files, such as court records and news clippings, without the express of authorization of the third party, a death certificate, or public justification for release.  If you desire to obtain public records, if public records exist in our files, please submit a new request for public documents.

Should you obtain the written authorization and consent of the third party for release of the records please submit a new request for the documents accompanied by the written authorization.  A form is enclosed to assist you in providing us the authorization and consent of the subject of your request.  The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. § 1001.  **Please send your new request to the address above.**

[ X ]  Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what of what you sought.  Each file will have a separate Request Number (listed below), for which you will receive a separate response:
   #06-1608 - Piechowicz v. U.S. (specific public records)/DMD



MAY 21 2007

     This is our final action on this above-numbered request. You may appeal my decision in this matter by writing within 60 days from the date of this letter, to the **Office of Information and Privacy, Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the envelope and the letter of appeal should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court. 28 C.F.R. § 16.9.

          Sincerely,

          William G. Stewart II
          Assistant Director

Enclosure

0. 1706

70IA
(A)
EOUSA
#07-1606
Closed 5/21/0
Free Denial
3rd party

Anthony Grandison #172622 APP
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

Office of Information and Privacy
Department of Justice,
1425 New York Avenue, Suite 11050
Washington, D.C. 20530-0001

RECEIVED

JUN 1 4 2007

Office of Information and Privacy

Re: "FOIA APPEAL" Request Number 07-1606

To Whom It May Concern

I Anthony Grandison filed a Freedom of Information Act (FOIA) pursuant to 5 U.S.C. &552, for copies of certain documents pertaining to the case of Cheryl Ann Piechowicz, et al. v. United States, Civil No. K-86-802.

As a direct result of that FOIA request Mr. William G.  Stewart II  on May 21, 2007 the Assistant Director informed Requester Grandison as follows;

You have requested records concerning a third party for third parties. Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. &552a. These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. &552.

We will release, if requested, any public records maintained in our files, such as court records and news clippings, without the express of authorization of the third party, a death certificate, or public justification for release. If you desire to obtain public records, if public records exist in our files, please submit a new request for public documents.

Should you obtain the written authorization and consent of the third party for release of the records please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and

1

GOVERNMENT
EXHIBIT
6

consent of the subject of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. & 1001.

Based on those reasons Mr. Stewart's office withheld the requested documents. As a result I respectfully appeal the decision erroneously decided by Mr. Stewart's reliance's upon records pertaining to a third party cannot be released absent express authorization and consent of the third party, proof that the subject of my request is deceased (third party), or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records of third parties.

## Appeal Argument I:

### The Decease Persons Have No Surviving Privacy Interest:

Requester Grandison contends that the fact Cheryl Ann Piechowicz died from a brain tumor years ago, her father John I, Kennedy Jr. died from cancer in the late '90s, and John McCarthy the court reporter responsible for recording and transcribing the deposition proceedings of James C. Savage, passed away from a heart attack in the early to the mid '90s.

Those decease persons have no surviving privacy interest that would justify the withholding of documents or other information relating to them. See, Cordell v. Detective Publication, Inc., 419 F.2d 989 (6th Cir. 1969), and Maritote v Desilu Productions, 345 F.2d 418 (7th Cir. 1965). These cases stand for the proposition that the right to recovery for invasion of privacy is purely personal and "lapses with the death of the person who enjoyed it." Cordell, 419 F.2d at 990. Furthermore, the Department of Justice may not through its representative claim a privacy interest in the behalf of any surviving parties or decease ones who had willing publicly provided the very same information in a public forum first in the United States District Court in the presence of Grandison and the news media covering Requester Grandison and his alleged codefendants high profile cases in the United States District Court nearly 25 years ago. Second since the third parties some whom are decease willing gave depositions, filed interrogatories, and answered interrogatories, and willing publicly provided the very same information to the

2

United States District Court for the District of Maryland, the news media. Mr. Grandison cannot be required to obtain the express authorization of any of the surviving third parties, nor to provide a death certificate for the decease third parties, or a public justification for release.

**Appeal Argument II.**

The Documents Fail To Meet The Threshold Requirement Of 5 USC &552 Subsections (b)(6) and (b)(7)(C):

Mr. Stewart's reliance on the provisions of 5 U.S.C. &552 (b) (6) and (b) (7) (C)

(b)(6) "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, and

(b)(7)(C) could reasonably be expected to constitute an unwarranted invasion of personal privacy

are clearly misplaced since the documents requested by Requester Grandison does not fall under the umbrella of subsection (b) (6) and (b) (7) (C) because exemption 7 may not be applied to shield the information withheld from disclosure. And here the documents at issue fail the threshold requirement that they constitute "investigatory records compiled for law enforcement" pursuant to Title 5 U.S.C. &552 (b) (6) and (b) (7) (C). Since the documents on there face indicate they were not compiled for law enforcement purposes. But instead the documents requested ("interrogatories, depositions of March 30, 1987, and April 1, 1987) were created by the Plaintiffs and the defendants in Piechowicz v. United States, 885 F.2d 1207 (4th Cir. 1989) in order for the Plaintiffs to sustain their lawsuit, and the defendants to defeat it.

Proof of that fact is found in the May 9, 1986 Memorandum of Points and Authorities in Support of Defendants Savage and Ryan's Motion to Dismiss the lawsuit in Piechowicz, et al vs. United States, Civil Action No. K-86-802, whereas, the defendants Introduction states as follows;

This case involves the murders of a witness in a federal drug prosecution and an innocent bystander by the agent of the prosecuted drug dealer. The estates of the two victims are

attempting to hold the federal officials involved in the prosecution of the drug dealer liable for the murders committed by the drug dealer's agent.

The administrators and personal representatives of the estates of David Scott Piechowicz and Susan C. Kennedy have brought this action against Assistant United States Attorney [AUSA] James C. Savage and Special Agent John Ryan of the Drug Enforcement Administration in their individual as well as their official capacities as federal employees[1]

> [1]. A separate motion and memorandum have been filed on behalf of the United States and defendants Savage and Ryan in their official capacities. This motion and memorandum are directed to plaintiffs claims for the individuals personal liability in damages.

Plaintiffs' allegations arise from the prosecution of Anthony Grandison for violations of federal narcotics and firearms laws in the United States District Court for the District of Maryland. Defendant Savage is an Assistant United States Attorney in this District, and defendant Ryan is a Special Agent who at all times relevant was assigned to the Drug Enforcement Administration.

Further an examination the court reporter Mr. Joseph A. Grabowski from the Gore Brothers Reporting & Videoconferencing who actually recorded and transcribed the deposition of Cheryl Ann Piechowicz on March 30, 1987 establishes that document was not created in conjunction with any federal or state criminal investigation or for any investigatory purposes by law enforcement. And a likewise examination of Mr. Abraham Weinapple an associate of the reporter John McCarthy who actually recorded and transcribed the deposition of James C. Savage on April 1, 1987 establishes as well that document was not created in conjunction with any federal or state criminal investigation or for any investigatory purposes by law enforcement.

Requester Grandison submits that although the FOIA exemption 7 permits an agency to withhold "records or information" if the agency demonstrates that the material was "compiled for law enforcement purposes" and that it qualifies for exclusion under at least one of the narrowly-defined criteria in subsections (A)-(F). See 5 U.S.C. & 552(b) (7) (A)-(F); FBI v. Abramson, 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed. 2d 376 (1982); Keys v. United States Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987). However, the documents requested by Grandison were not created for any federal or state criminal investigation or

subject to any protective court order to seal from disclosure any of those documents based upon any request by either the Plaintiffs or the defendants seeking confidentiality.

Thus, clearly the above facts establishes beyond any doubt that the depositions and interrogatories requested by the Requester Grandison were not created for any investigatory purposes by law enforcement. To the contrary those documents were filed in a Public Forum (United States District Court) were created instead by the plaintiffs ("Cheryl Ann Piechowicz, et al") for the sole purpose of attempting to win their lawsuit in United States District Court for the District of Maryland against the defendants. And on the other hand the defendants ("James C. Savage, John Ryan, and the Government") only part in the matter was to defeated Plaintiffs lawsuit by having same dismissed. As a result of those documents being created in connection with a civil lawsuit filed in a United States District Court without any orders issued by the district court sealing those records rendered the documents as public court records not subject to either subsection to (b)(6) or (b) (7) (C) exemption.

**Assuming Any (b) (6) or (b) (7) (C) Exemptions Exist They Have Been Ipso Facto Waived**

The Requester Grandison contends that while it is clear that FBI agents themselves have the right to be protected against public disclosure of their participation in law enforcement investigations, the names of FBI agents and persons interviewed by FBI during law enforcement investigations pursuant to exemption (b)(7)(C). However, in the case sub judice, that exemption must fail since confidentiality does not extend to non criminal investigation depositions.

It may not be presumed that disclosing names of FBI agents, and third parties whom the names of the FBI/DEA and third parties and the addresses of the third parties have already been given the Requester Grandison in the form of FBI 302 reports almost twenty-five years ago conjoint with the substance of their interviews. Coupled with the fact those federal agents and third parties have repeatedly testified in Requester Grandison's federal criminal and state trials almost twenty-five years ago would not somehow subject them to intrusion or harassment, especially when those persons are either dead, or no longer in either the FBI or

5

DEA, or the U.S. Attorney's Office.

It is equally true the parties who created or are mentioned in the interrogatories and depositions waived any protective exemptions under 552 USC (b) (6) and (b) (7) (C) when they previously testified in open court as to the substance of their interviews with FBI/DEA or interviews with the Assistant U.S. Attorneys. Since there repeated testimony given in Requester Grandison's trials ipso facto act as a consent to a waiver of any of there privacy rights. In any event Requester Grandison avers that since the documents in question were created in a civil lawsuit filed in a United States District Court without either the Plaintiffs "Piechowicz, et al", or the defendants "James C. Savage, John Ryan, and the United States Government" filing a motion to seal the records to prevent disclosure thereof in the United States District Court. Such a failure was also tantamount to a waiver of any exemption assuming arguendo the Department of Justice legally possessed a right to seek exemptions pursuant to subsections (b)(6) or (b)(7)(C) of 5 USC 552 for documents not created pursuant to a criminal federal or state investigation or for criminal investigatory purposes.

Cheryl Piechowicz, and James C. Savage by allowing themselves to be deposed respectively on March 30, 1987 and April 1, 1987 without any court order to seal those depositions constitutes a waiver of any exemption rights they may have possessed in order for the Justice Department to seek nondisclosure claim under exemption (b) (6) or (b) (7) (C). Likewise, when the Government, and the individual defendants named in the lawsuit filed by Cheryl Ann Piechowicz, et al filed answers in the United States District Court for the District of Maryland to the complaint filed against them in their individual as well as their official capacities as federal employees without seeking an order requesting those documents be sealed constitutes an ipso facto waiver.

The Requester Grandison avers that Cheryl Piechowicz (decease) by her own actions ipso facto waived any exemptions assuming she possessed any, by giving an exclusive interview to "Baltimore Evening Sun Newspaper" reporter Kelly Gilbert on April 28, 1988 exposing to the general public in a written newspaper article as to exactly what she

testified to when deposed by deposition on March 30, 1987 in conjunction with her lawsuit concerning the murders of her husband and sister on April 28, 1983, alleged threats by Janet Moore, and the defendants failure to protect them, publicly exposure through the news media the exact contents of the testimony James C. Savage provided when deposed on April 1, 1987 in conjunction with the lawsuit constitute a waiver. Likewise, James C. Savage by publicly exposing to the general public through the news media on April 28, 1988 by providing the newspaper report Kelly Gilbert information about what he testified to during his deposition in conjunction with the lawsuit filed against himself by Cheryl Ann Piechowicz, et. al constitute an ipso facto waiver of any exemption rights assuming Savage possessed any in documents not created in a criminal federal or state investigation or for criminal investigatory purposes.

Cheryl Ann Piechowicz, James C. Savage, Joseph I. Kennedy Jr., as well as the other individuals names mention in the depositions of March 30, 1987 and April 1, 1987, had previously personally testified in Requester Grandison public drug trial in United States v. Grandison, 783 F.2d 1152, (4th Cir. 1986) concerning the offense and personal information about themselves as was recorded in Grandison's drug pretrial and trial transcripts from March 11, 14, 1983 and Mary 3 to May 11, 1983, Grandison's Civil Rights trial in September 12, to November 3, 1983, United States v. Grandison, 780 F.2d 425, (4th Cir. 1985), and Grandison's state capital trial on April 26, to June 6, 1984 involving or related to the same subject matter testified to the federal trials, Grandison v. State, 305 Md. 685 (1986) ("Grandison II"), and Grandison capital resentencing proceeding from May 19, to June 3, 1994, Grandison v. State, 341 Md. 175 (1995). ("Grandison III"). To which they (FBI agent Kevin O'Connell, and others ) either were called as prosecution or defense witness in those proceedings revealing testimony concerning the offense and personal information about themselves.

On the other hand third parties like Janet Moore, Rodney Kelly, Vernon Evans, mention in either Cheryl Ann Piechowicz depositions were charged as codefendants in the federal Civil Rights case, and the State Capital offenses of murder and there alleged action had been testified to by Charlene Sparrow, Theresa Purdie and others as set forth in the above

7

cited cases.

Peanut King mentioned on page 20 of James C. Savage deposition are only referred to whether James C. Savage determined or believed there was a connection between Grandison and Peanut King (an alleged Drug Kingpin), if there was any. Savage was questioned Cheryl Piechowicz, et. al attorneys Goldberg about whether or not he was aware of Grandison prior convictions for assaulting a federal officer before the murders, about Grandison being stopped at the BWI airport with a large amount of money in 1982, an alleged threat made by Janet Moore on March 14, 1983 at the Baltimore Federal District Court, former Judge Howard admonishing Moore and others, about Vernon Evans and Grandison being allegedly involved in a prior incident were a witness was shot (Joseph Miller) now decease), whether Wendy Grandison and Janet Moore as being the same person, Janet Moore's criminal background, whether Luther Pugh a former desk clerk at the Warren House Motel was a witness confronted by Janet Moore on March 14, 1983. And Cheryl Piechowicz's deposition actually consists of the mention of some of the above names and the communication she claim related to John Ryan and James C. Savage, whether she had sought protection from Ryan, Savage, O'Connell or any agent prior to April 28, 1983.

At the conclusion Cheryl Ann Piechowicz's deposition on March 30, 1987, the reporter Joseph A. Grabowski clearly constituted an ipso fact waiver of any exemptions assuming any exist in a document created in a deposition in a public civil lawsuit filed by individual members of the general public. The deposition conclusion stated the following;

> I, Joseph A. Grabowski, a Notary Public in and for the State of Maryland, County of Baltimore, do hereby certify that the within named Cheryl Ann Piechowicz personally appeared before me at the time and place herein set out, and after having been first duly sworn according to law, was interrogated by counsel.
>
> I further certify that the examination was recorded stenographically by me and then transcribed from my stenographic notes to the within typewritten matter in a true and accurate manner.
>
> I further certify that the stipulations contained herein were entered into by counsel in my presence. I further certify that I am not of counsel to any of the parties, nor an

employee of counsel, nor related to any of the parties, nor in any way interested in
the outcome of this action.
As witness my hand and notarial seal this 3rd day of April, 1987.

At the conclusion of James C. Savage's deposition, the report John McCrathy,
constitutes an ipso facto waiver when it stated;

> I, John McCrathy, do hereby certify that the within named, James C. Savage, personally
> appeared before me at the time and place herein set out, and was interrogated by
> counsel.

> I further certify that the examination was recorded stenographically by me and this
> transcript is a true record of the proceedings.

> I further certify that the stipulation contained herein was entered into by counsel in
> my presence.
> I further certify that I am not of counsel to any of the parties, nor an employee of
> counsel, nor related to any of the parties, nor in any way interested in the outcome
> of this action.
> As witness my hand this day of April, 1987.

Clearly, the affidavits at the conclusion of both depositions is proof they were not
documents gathered by the FBI, DEA, United States Attorney's Office for any criminal
investigative purposes that were subsequently provided to the United States District Court for
the District of Maryland identified as Exhibit A and C by the plaintiffs.

In conclusion if any exemption exist than surely they were waived once they
testified in those public forums were the general public had an opportunity to hear and see them
testify, when they communicate the contents of those depositions to the general public through
the news media, and no court order was ever issued sealing the contents of those depositions
by a court of law upon either the plaintiffs or the defendants request, or by the United States
District Court sua sponte. As a result the Requester Grandison seeks that the denial or
withholding the documents be reversed forthwith.

Since my FOIA request under the departmental regulations was granted to
expedite processing pursuant to 28 CFR 16. 5 (d) (1) (iii). I am likewise requesting pursuant to

departmental regulations that this Appeal be expedite because I am still currently sentenced to death in the State of Maryland.

Thanking your Office in advance for your time and any consideration in this matter. I await your reply.

Respectfully, submitted

Anthony Grandison #172622

FOIA Appeal Dated: June 5, 2007



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**JUN 2 0 2007**

Mr. Anthony Grandison
No. 172622
MCAC C-46
401 E. Madison Street
Baltimore, MD 21202

   Re: Request No. 07-1606

Dear Mr. Grandison:

   This is to advise you that your administrative appeal from the action of the Executive Office for United States Attorneys was received by this Office on June 14, 2007.

   The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **07-1706**. Please mention this number in any future correspondence to this Office regarding this matter.

   We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                    Sincerely,

                    Priscilla Jones
                    Supervisory Administrative Specialist

GOVERNMENT EXHIBIT
PENGAD-Bayonne, N. J.



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

AUG 0 2 2007

Mr. Anthony Grandison
No. 172622
Maryland Correctional Adjustment Center          Re:    Appeal No. 07-1706
401 East Madison Street                                 Request No. 07-1606 _back_
Baltimore, MD 21202                                     ALB:CAS

Dear Mr. Grandison:

    You appealed from the action of the Executive Office for United States Attorneys
(EOUSA) on your request for access to certain records pertaining to a civil case entitled
<u>Piechowicz v. United States</u>, No. K-86-802 (D.Md).

    After carefully considering your appeal, and as a result of discussions between EOUSA
personnel and a member of my staff, I am remanding your request for a further search for
responsive records.  If EOUSA locates responsive records through this search, it will send any
and all releasable portions of them to you directly, subject to any applicable fees.  You may
appeal any future adverse determination made by EOUSA.

    If you consider my action to be a denial of your appeal, you may seek judicial review in
accordance with 5 U.S.C. § 552(a)(4)(B).

                        Sincerely,

                        Janice Galli McLeod
                        Associate Director



_EOUSA_



**U.S. Depart̃  of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478  (www.usdoj.gov/usao)*

Requester:  Anthony Grandison          Request No.:    07-2750         AUG 2 1 2007

Subject:  Piechowicz v. U.S. (Non-public records)

     The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

     Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

     EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions; for example, Project Requests usually take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

     By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If you anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

     If you wish to revise your request to try to reduce fees, you may use the attached form. If you do not wish to incur fees for your request as it is now stated, please submit this form (or your letter revising your request) to us within 15 days so that your request, and fees, can be limited.

         Sincerely,

     *William G. Stewart II*

     William G. Stewart II
     Assistant Director



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Unit
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

---

Request Number: <u>07-2750</u>          Date of Receipt: <u>08/03/07</u>

Requester: <u>Antony Grandison</u>

Subject: <u>Piechowicz v. US (non-public records)</u>

Dear Requester:

    In response to your Freedom of Information Act and/or Privacy Act request, the paragraph(s) checked below apply:

1.  [ ]    A search for records located in this office has revealed no records.          NOV 3 0 2007

2.  [X]    A search for records located in the United States Attorney's Office(s) for the <u>District of Maryland</u> has revealed no records. **See attached explanation.**

3.  [ ]    The records which you have requested cannot be located.

4.  [ ]    This office is continuing its work on the other subject/districts mentioned in your request.

5.  [X]    This is the final action my office will take on this particular request.

    You may appeal my decision in this matter by writing within sixty (60) days, to:

            Office of Information and Privacy
            United States Department of Justice
            1425 New York Avenue, Suite 11050
            Washington, D.C. 20530

    Both the envelope and the letter of appeal must be clearly marked "Freedom of Information Act/Privacy Act Appeal."

    After the appeal has been decided, you may have judicial review by filing a complaint in the United States District Court for the judicial district in which you reside or have your principal place of business; the judicial district in which the requested records, if any, are located; or in the District of Columbia.

                              Sincerely,

                              William G. Stewart II
                              Assistant Director

Form



**Requester:**    **Antony Grandson**
**FOIA #:**       **07-2750**

<u>**Continuation Sheet**</u>:

The records responsive to this request have been destroyed in accordance with the Department's General Records Schedule.  You can make a FOIA request by writing to the investigatory agency which investigated your case.



**U.S. Depart  t of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.,  Suite 7300, Bicentennial Building*
*Washington, DC  20530-0*
*(202)  616-6757   FAX:  616-6478    (www.usdoj.gov/usao)*

---

Requester: **Anthony Grandison**          Request Number:  **07-1608**

Subject of Request: **Piechowicz v. U.S. (specific public records)/DDC**

JUN 24 2008

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed.  This letter constitutes a **supplemental** reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

    To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81.  We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you.  This letter is a [ **X** ] partial [     ] full denial.

    Enclosed please find:

_____ page(s) are being released in full (RIF);
\_\_**5**\_\_ page(s) are being released in part (RIP);
_____ page(s) are withheld in full (WIF).  **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below.  An enclosure to this letter explains the exemptions in more detail.

### Section 552

| | | |
|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) |
| [   ] (b)(2) | [   ] (b)(5) | [ **X** ] (b)(7)(C) |
| [   ] (b)(3) | [ **X** ] (b)(6) | [   ] (b)(7)(D) |
| _____ | [   ] (b)(7)(A) | [   ] (b)(7)(E) |
| _____ | | [   ] (b)(7)(F) |
| _____ | | |

### Section 552a

| |
|---|
| [   ] (j)(2) |
| [   ] (k)(2) |
| [   ] (k)(5) |
| [   ] _____ |



GOVERNMENT EXHIBIT

(Page 1 of 2)

This is the final action on this above-numbered request.  You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.**  Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

Form No. 021 - no fee -3/07

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                  )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )   Civil Action No. 08-00024 (RJL)
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
    et al.,                         )
                                    )
        Defendants.                 )
_____)

<u>ORDER</u>

Upon consideration of Motion for Summary Judgment on Behalf of Defendant Executive Office of United States Attorneys, of all papers filed with respect thereto, and of the entire record herein, and it appearing to the Court that the granting of defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, would be just and proper, it is by the Court this _____ day of _____ 2008,

ORDERED that Motion for Summary Judgment on Behalf of Defendant Executive Office for United States Attorneys be, and it hereby is, granted; and it is further

ORDERED that this action be, and it hereby is, dismissed as to the Executive Office for United States Attorneys.

_____
UNITED STATES DISTRICT JUDGE

cc:  Mr. Anthony Grandison
     DOC ID No. 172622
     Maryland Correctional
       Adjustment Center
     401 East Madison Street
     Baltimore, MD  21202

Caroline A. Smith
Attorney-Advisor
Office of Information & Privacy
1425 New York Ave., NW,
  Suite 11050
Washington, DC  20530

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Motion for Summary Judgment on Behalf of Defendant Executive Office for United States Attorneys, Statement of Material Facts as to Which There Is No Genuine Issue, Pursuant to Rule 7(h) on Behalf of Defendant Executive Office for United States Attorneys, Memorandum of Points and Authorities in Support Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment on Behalf of Defendant Executive Office for United States Attorneys, declaration, exhibits, and proposed order were served upon plaintiff pro se by deposit of copies thereof in the U.S. mail, postage prepaid, first class mail, addressed to:

Mr. Anthony Grandison
DOC ID No. 172622
Maryland Correctional Adjustment Center
401 East Madison Street
Baltimore, MD  21202

on this 11th day of August 2008.

_____/s/_____
CAROLINE A. SMITH