IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

# RECEIVED

AUG 1 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ANTHONY GRANDISON,                    *

     Plaintiffs

                          * CIVIL ACTION NO. 08-00024 (RJL)

   v.

                            *

U.S. Department of Justice, et al.,

     Defendants                 *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S REPLY TO THE CIVIL DIVISION DEFENDANTS' OPPOSITION TO "PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT" AND REPLY TO CIVIL DIVISION DEFENDANTS' REPLY IN FURTHER SUPPORT OF CIVIL DIVISION DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

### Preliminary Statement

      Plaintiff Grandison on November 13, 2007 commenced this action pro se pursuant to Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed. 2d 245 (1988) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. & 552 (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, seeking the release of certain records pertaining to the civil case, Cheryl Ann Piechowicz, et al. v. United States, No. K-86-802 (D. Md. 1989) [hereinafter Piechowicz case], maintained by the Civil Division and the Executive Office for United States Attorneys (EOUSA), components of the United States Department of Justice.

      On or about May 20, 2008, the Civil Division defendants' moved for summary judgment on the basis that no records were improperly withheld. [1] On June 17, 2008, plaintiff

---

[1]. Upon the defendants' EOUSA request this Court issued an order directed defendants' EOUSA to file its dispositive motion on or before August 1, 2008.

Grandison filed a Motion in Opposition to Defendants Summary Judgment Motion, Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue, Pursuant to Local Rule 7(h)," Plaintiff's "Cross Motion for Summary Judgment" Plaintiff's attached Exhibit (A) (Grandison Declaration), "Plaintiff Exhibit (B) (Cheryl Ann Piechowicz's Deposition dated March 30, 1987), (Plaintiff's Exhibit (C) (Former Assistant U.S. Attorney, James C. Savage's Deposition dated April 1, 1987), (Plaintiff's Exhibit (D) (Letter of Janice Galli McLeod) challenging the Civil Division defendants' decision to withhold records), in full and in part, pursuant to Exemptions 6 and 7(C) of the FOIA, 5 U.S.C. & 552(b) (6), (b) (7) (C). [a]

As a result of those documents filed with the Court, the Civil Division defendants' on July 15, 2008 filed  pursuant Local Rule 7(d), defendants' Civil Division's opposition to plaintiff's cross motion for summary judgment, and in further reply in support of defendants' motion for summary judgment an Opposition to plaintiff's cross motion for summary Judgment and Reply in further support of defendants' motion for summary judgment. Defendants' Opposition contains a supplemental declaration of James M. Kovakas in support of defendants' Opposition Motion alleging that Plaintiff's arguments are without merit and that defendants' motion for summary judgment should be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[a]. While in the case sub judice, the Court's Clerk's Office of the United States District Court  inadvertently failed to list on its docket entries all of the other motions and documents filed  with plaintiffs Cross Motion for Summary Judgment on June 17, 2008. The Civil Division defendants' although acknowledging it was provided copies of all motions and documents filed by plaintiff on June 17, 2008. On July 15, 2008 the Defendants' nonetheless without checking the Clerk's files erroneously alleged in defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in further Support of Defendants' Motion for Summary Judgment plaintiff has not yet filed with the Court, Plaintiff's Motion in Opposition to Defendants Summary Judgment Motion, Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue, Pursuant to Local Rule  7(h)," Plaintiff's attached Exhibit (A) (Grandison Declaration), "Plaintiff Exhibit (B) (Cheryl Ann Piechowicz's Deposition dated March 30, 1987), Plaintiffs Exhibit (C) (Former Assistant U.S. Attorney, James C. Savage's Deposition dated April 1, 1987), Plaintiffs Exhibit (D) (Letter of Janice Galli McLeod) in support of Plaintiff's Cross Motion for Summary Judgment and Statement of Material Facts as to Which There Is No Genuine Issue. An examination of the Clerk's files will reveal those documents were filed simultaneously with Plaintiff's Cross Motion for Summary Judgment.

**ARGUMENT I.**

Contrary to the Civil Division Defendants' Claims The Evidence Shows They Have Not Properly Determine that the Records at Issue Satisfy the Threshold Requirements of Exemption 6, and 7 U.S.C. & 552(b) (6).

The claims by the Civil Division Defendants' to the effect that while the records aren't personnel or medical records they have nonetheless appropriately determined the requested records met the threshold requirement of Exemption 6 because they qualify as "similar files." *(See Mem. of P. 3 relying on Mem. of P. & A. in Support of Def. Civil Division's Mot. for Summ. J. at 6-8, filed May 20, 2008 [hereinafter Def.'s Mem.]; Kovakas Decl. § 20].* Such Exemption 6 arguments of the defendants clearly are without merit considering the cross motion for summary judgment of Plaintiff Grandison beyond any doubt essentially demonstrates that the individuals identities along with the information mentioned in the requested documents that the defendants' now seek to protect from disclosure. Those individuals are either deceased or those records have been made apart of the public domain for more than twenty (20) years. Hence those exemptions does not apply. See Kidder v. FBI, 517 F.Supp. 17 (D.D.C. 2007).

> Under the public domain doctrine, records which otherwise may be exempt from disclosure under FOIA "lose their protective cloak once disclosed and preserved in a permanent public record. "Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). "[w]here information requested 'is truly public, then enforcement of an exemption cannot fulfill its purposes. Id. [quoting Niagara Mohawk Power Corp. v. United States Dep't of Energy, 169 F.3d 16, 19 (D.D.C. 1999]]. A plaintiff who seeks disclosure of such records bears 'the initial burden of pointing to specific information in the public domain that appear to duplicate that being withheld." Afahar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983); see Davis v. United States Dep't of Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992) (plaintiff must point to specific information identical to that being withheld.

*Id. at 517 F.Supp. 2d 31.*

3

Thus an examination of the case sub judice consistent with the holdings of Kidder v. FBI, the cross motion for summary judgment of the Plaintiff clearly pointed directly to specific information in the public domain identical to that being withheld. Thus assuming any exemption from disclosure under FOIA existed any protective cloak under exemption 6 and 7 was had been removed. Since take for example, 'Plaintiff Grandison's Exhibits (B) and (C) the depositions of Cheryl Ann Piechowicz and, James C. Savage identifying the individuals identities of the persons the Civil Division defendants seeks to protect. **See Exhibit (B) attached to Plaintiff's Cross Motion for Summary Judgment (Cheryl Ann Piechowicz March 30, 1987 Partial Deposition).**

*Front page; Stephen M. Goldberg, Esq., George R. Hoffman, Esq., attorneys for Piechowicz, et al, Burke M. Wong, Esq., attorney for Savage, Ryan, and the Government, Court reporter, Joseph A. Grabowski,*

*Pg. 8. Sharrie Maria Waldrup, (Cheryl Ann Piechowicz daughter by her first marriage), Scott Piechowicz (murder victim)*

*Pg. 21. Luther Pugh*

*Pg. 23. Agent O'Connell, Savage,*

*Pg. 24. Agent Kevin O'Connell, Savage, Agent Ryan, Janet Moore,*

*Pg. 30. Agent Ryan, O'Connell, Scott*

*Pg. 31. Agent Ryan, Janet Moore, Savage,*

*Pg. 32. Scott Piechowicz, Savage, agent Ryan,*

*Pg. 33. Agent Ryan, Janet Moore,*

*Pg. 34. Agent Ryan, Savage,*

*Pg. 35. Scott,*

*Pg. 49. Janet Moore,*

*Pg. 50. James Savage, Father of Cheryl Piechowicz,*

*Pg. 56. Savage, O'Connell, Scott Piechowicz, Ryan, Susan Kennedy,*

*Pg. 88. Joseph A. Grabowski, Court Reporter, Cheryl Ann Piechowicz.*

4

Additionally, the individual identities of those persons and others third parties the Civil Division defendants' now seek under Exemptions 6 and 7(C) to protect are found in James C. Savage's the (former Assistant U.S. Attorney) deposition testimony dated April 1, 1987. **See Exhibit (C) attached to Plaintiff's Cross Motion for Summary Judgment, (James Savage April 1, 1987 Partial Deposition).**

Front page; Stephen M. Goldberg, Esq., George R. Hoffman, Esq., attorneys for Piechowicz, et al, Burke M. Wong, Esq., attorney for Savage, Ryan, and the Government, Court reporter, John McCarty.

Pg. 16. Agent Kevin O'Connell, Agent Jack Ryan,

Pg. 20. Peanut King

Pg. 21. Agent Ryan, Baltimore City Police Dept.,

Pg. 22. Agent Ryan

Pg. 23. Federal Offense of Assault

Pg. 25. Agent Jack Ryan, Cheryl Piechowicz, Janet Moore,

Pg. 26. Judge Howard, Ed Smith (Grandison's former attorney), Mr. Wong,

Pg. 27. Judge Howard, Janet Moore,

Pg. 28 Supervisors from DEA/FBI, Judge

Pg. 29. Janet Moore, Judge Howard,

Pg. 30. Vernon Evans,

Pg. 31. Cheryl and Scott Piechowicz, Agent Jack Ryan, Judge Howard,

Pg. 32. Agent Jack Ryan, Luther Pugh, Cheryl and Scott Piechowicz,

Pg. 33. Cheryl Piechowicz, Agent Ryan,

Pg. 34. Agent Jack Ryan, Cheryl Piechowicz,

Pg. 35. Cheryl and Scott Piechowicz, Janet Moore, Judge Howard, Agent Ryan,

Pg. 40. Cheryl and Scott Piechowicz,

Pg. 41. Cheryl Piechowicz,

Pg. 42. Cheryl Piechowicz, Sugar Ray Leonard, Janet Moore, Scott

5

Piechowicz,

Pg. 43. Wendy Grandison, Janet Moore,

Pg. 44. Janet Moore, Cheryl and Scott Piechowicz, Agent Ryan, Agent O'Connell,

Pg. 46. Cheryl Piechowicz,

Pg. 47. Cheryl Piechowicz, Scott Piechowicz, Grandison

Pg. 48. Cheryl Piechowicz, Grandison

Pg. 68. Joseph Howard Jr. , Judge

Pg. 72. Luther Pugh,

Pg. 97. Cheryl Piechowicz

Pg. 99. Mr. Wong,

Pg. 100. Goldberg, Savage,

Pg. 105. Savage, John McCarty

Even more telling is an examination of the District Court case of Piechowicz v. United States, 685 F.Supp. 486, (D. Md. 1988) which itself supports the Plaintiff Grandison's arguments that the Civil Division defendants' themselves made these identical requested documents along with interrogatories propounded by the defendants' Civil Division on Cheryl Ann Piechowicz, and her father, John I. Kennedy Jr., and the interrogatories propounded on former Assistant U.S. Attorney, James C. Savage, by Cheryl Ann Piechowicz apart of the public domain twenty years ago. Piechowicz v. United States, id. at 685 F.Supp. 498 **FN28** holding as follows below;

FN28 See Deposition of Cheryl Ann Piechowicz at pp. 49-50; Cheryl Ann Piechowicz's Answers to Interrogatories 8, 9, and 10; John I. Kennedy, Jr.'s Answers to Interrogatories 6 and 7. **Each of those documents is attached as an exhibit to the Motion for Summary Judgment filed by the government in this case.**

A further examination of the Piechowicz' case also establishes that, Cheryl Ann Piechowicz as a plaintiff in Piechowicz v. United States, made James C. Savage

6

deposition testimony of apart of public domain and the Civil Division defendants' likewise made the deposition testimony of John Ryan (a.k.a. Jack Ryan) a DEA agent apart of public domain. See Piechowicz v. United States, 685 F.Supp. 486, (D. Md. 1988).

> **However, in any event, from the uncontradicted testimony and documents submitted in this case,** it seem that such a policy was not in effect in the District of Maryland at the time the decedents were murdered. ***See Deposition of James C. Savage at pp. 67-68, 97, 99-100 (Ex. A to Plaintiffs' Response to Defendants' motion for summary judgment)***; U.S. Attorney Manual, Title 9 & 9.21.310 (concerning representations and promises in witness Protection Program) (March 6, 1980) (Ex. B. to United States Motion for Summary Judgment). Nor at that time was it apparently the policy of DEA agents such as defendant Ryan to provide such information. ***See Deposition of John Ryan at pp. 50-53 (Ex. D. to United States Motion for Summary Judgment.***

**id. at 685 F.Supp. 501 FN 28 and 32.**

This evidence of plaintiff's likewise establishes that, Cheryl Ann Piechowicz and former Assistant U.S. Attorney, James C. Savage directly after giving their deposition, would on April 28, 1988 one year later through Kelly Gilbert the Baltimore Evening Sun Newspaper Reporter, convey to the general public at larger the very same identical information as acknowledged by the Civil Division defendants. **See The Civil Division Defendants' Exhibit (G) attached to their Motion for Summary Judgment.** Extra proof the documents in question have been preserved and store in the public domain by the United States District Court for the District of Maryland into a permanent record in the Philadelphia Archives was established by Grandison during his death penalty resentencing proceeding. Whereas, on May 11, 1994 the Honorable Daniel M. Long a (Maryland Circuit Court Judge) for Somerset County read into the record a letter written to Grandison by the U.S. District Court for Maryland Clerk's Office that informed Grandison that Cheryl Ann Piechowicz, and James C. Savage deposition testimony were permanently store in the Archives of Philadelphia, Pennsylvania. **(See Plaintiff Grandison's Exhibit (E) (1), pg. 9 attached hereto).** **Also see Plaintiff's supplemental Declaration in support of his Cross Motion for Summary**

7

**Judgment.**

Hence considered with such evidence in mind, this Court can easily conclude with a high degree of confidence that Grandison has made the required showing that the documents requested from the Civil Division defendants' is truly in the public domain. See Cottone, 193 F.3d at 555. As a result Grandison as the requester has carried his burden of production, the Civil Division defendants' are thus required to rebut plaintiff's proof by demonstrating that the evidence herein has either since been destroyed, placed under seal, or otherwise removed from the public domain. However, an examination of the Civil Division defendants' Motion in Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in further Support of Defendants' own Motion for Summary Judgment does not making that showing. Since nothing in the record suggests that the Civil Division defendants either during or after Grandison's federal/state trials in the federal or state courts,[3] or after the making of the depositions testimony of Piechowicz, Savage, and Ryan, the interrogatories of Piechowicz, Savage, and Cheryl Ann Piechowicz's father, John I. Kennedy have since been destroyed, or that the defendants' ever sought that those documents Grandison identify and sought has been placed under seal, or that would indicate that the documents otherwise was removed from the public domain. See Cottone v. Reno, 193 F.3d 550, (D.C. 1999) id. at 193 F.3d 555.

Accordingly, the deposition testimony of Cheryl Ann Piechowicz, the deposition testimony of James C. Savage, the deposition testimony of John Ryan, and the

---

[3]. In fact the Piechowiczes as plaintiffs' in the civil rights lawsuit against the government, James C. Savage, and John Ryan in Piechowicz v. United States, supra actually submitted the statement of facts of the offense set forth in Memorandum to United States Probation Department obtain from former Assistant U.S. Attorney James C. Savage relating to sentencing of plaintiff Grandison attached as Ex. F to plaintiffs' Response to Defendants Motion for Summary Judgment. Id. at 685 F.Supp. 501 FN4. That document statement of facts provided the bulk of the government's case against Grandison, the individual witnesses testifying against Grandison, which included civilian witnesses, FBI agents, DEA agents, the name of the prosecutors, presiding Judge, Grandison's own witnesses, alleged codefendants, and the alleged targets of the investigation etc., etc.,. A document that was readily available to the general public.

8

answers to interrogatories by Savage, Piechowicz, Ryan, and John I. Kennedy being apart of the public domain under FOIA "lose their protective cloak once disclosed and preserved in a permanent public record. "Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). Kidder v. FBI, 517 F.Supp. 17 (D.D.C. 2007) *Id. at 517 F.Supp. 2d 31.* That assuming such documents was entitled to any exemptions in the first place.

**ARGUMENT II.**

### The Civil Division Has Not Made a Reasonable Effort to Ascertain Whether Certain Individuals Are Alive or Deceased and Thus Has Not Balanced the Relevant Privacy Interests and Public Interest Accordingly.

In the instant case, not only has the Civil Division defendants' failed to satisfy the threshold requirements of Exemptions 6 and 7(C) to the records in question, the Civil Division defendants' has not reasonable made an effort to ascertain whether John I. Kennedy Jr. was alive or dead, a former Police Sgt. of the Baltimore City Police Dep't who later became a deputy U.S. Marshal. See **Plaintiff Grandison's Exhibit (E) (2), (3), and (4).**

The Civil Division defendants alleged with respect Joseph I. Kennedy based on the Second Kovakas Decl. § 5 that they searched the Internet as well as the Social Security Death Index by using Joseph I. Kennedy, Jr. name, (the father of Cheryl Ann Piechowicz) as a search term. And that search found the absence of any additional, corroborating information, such as Kennedy's date of birth, date of death or social security number, which made it impossible to verify whether any of the information that identified a **"Joseph Kennedy"** referred to the individual in question. Hence the Civil Division defendants' claim to have made a reasonable effort to ascertain whether Joseph I. Kennedy Jr., was decease, or alive or dead and drew a conclusion it had properly concluded that release of any information about Kennedy or other third parties mentioned in the responsive records "would constitute a clearly unwarranted invasion of (their) personal privacy under 5 U.S.C. § 552 (b) (6).

Grandison first contends that the Civil Division defendants' knew that Cheryl

Ann Piechowicz, father name was not "Joseph I. Kennedy" but in fact "John I. Kennedy" as acknowledged James M. Kovakas letter dated April 17, 2007 in response to Plaintiff's FOIA request;

> This letter is in response to your March 7, 2007 request, made pursuant to the Freedom of Information Act (FOIA), & 5 U.S.C. &552, for copies of certain documents pertaining to the case Cheryl Ann Piechowicz, et al V. United States, Civil No. K-86-802. Pursuant to your request, we conducted a search of the Civil Division's file of the above-referenced case and identified the documents which your requested. I reviewed the depositions of Cheryl Ann Piechowicz and James C. Savage *as well as answer to interrogatories by John I. Kennedy, Jr.,* Cheryl Ann Piechowicz, and the United States. I determined that these documents identify and/or contain personal information about other witnesses from your drug trafficking case, court officials, experts, attorneys and law enforcement officials connect with that matter. I am withholding these documents to protect the identifies and information concerning these individuals pursuant to 5 U.S.C. &552 (b) (6) and (b) (7) (C).

John I. Kennedy, the defendants knew was a former Baltimore City Police Officer, who died on July 6, 1998 while a deputy U.S. Marshal of cancer. Facts publisher on July 10, 1998 in the Baltimore Sun Newspaper. **See Plaintiff Grandison's Exhibit (F) 1-2 obtain from the internet archives.** In fact Exhibit (F) 1-2 and Exhibit (E) 2, 3, and 4 pg. 75, 81, and 82 establishes that John I. Kennedy was a deputy U.S. Marshal working in the U.S. District Court, formerly attended St. Ambrose high School in Pimlico as verified in Exhibits (E) 2, 3, and 4, and (F) 1-2, the father of Cheryl Ann Piechowicz. And that John I. Kennedy died of cancer on July 6, 1998 as publisher on July 10, 1998 in the Baltimore Sun Newspaper. Thus contrary to the Civil Division defendants claims, clearly they have not properly concluded pursuant to 5 U.S.C. § 552 (b) (6) that release of any information about Kennedy or other third parties mentioned in the responsive records "would constitute a clearly unwarranted invasion of their personal privacy. Furthermore, the interrogatories of John I. Kennedy's lose any protective cloak 20 years ago when the Civil Division defendants made them apart of the public domain in Piechowicz v. United States, 685

10

F.Supp. 486, (D. Md. 1988). Id at 685 F.Supp. 498 **FN28**

> *FN28 See Deposition of Cheryl Ann Piechowicz at pp. 49-50; Cheryl Ann Piechowicz's Answers to Interrogatories 8, 9, and 10;* **John I. Kennedy, Jr.'s Answers to Interrogatories 6 and 7. Each of those documents is attached as an exhibit to the Motion for Summary Judgment filed by the government in this case.**

In conclusion, the affidavit of Kovakas clearly was written in bad faith considering the Civil Division defendants' knew Cheryl Ann Piechowicz, father's name was not (Joseph I. Kennedy) but instead John I. Kennedy a fact acknowledged by Kovakas' letter April 17, 2007 coalesced with the fact defendants' knew John I. Kennedy had been employed by the U.S. Government as a deputy U.S. Marshal died on July 6, 1998 of cancer.

**ARGUMENT III.**

### The Civil Division Did Not Correctly Identified the Privacy Interests of the Individuals Referenced in the Records at Issue.

The Civil Division defendants alleged that Plaintiff takes issue with its (Civil Division) position that disclosure of information about third parties would subject them to harassment. *(Pl.'s Cross Mot. at 11.)*. And erroneously claims plaintiff's argument is easily dismissed on this point since as previously discussed in defendants' motion for summary judgment considering the impetus for the Piechowicz case that forms the basis of this litigation, the Civil Division's concerns are especially compelling. *(Def. Mem. at 7-11, 17-21.)*. Thus considering the Civil Division defendants' argument with those precepts in mind, one can easily conclude such privacy interests claims are based on defendants' reliance's upon **"Kovakas Decl. §§ 19, 21."** citing of Grandison v. State, 670 A.2d 398 (D. Md. 1995) *(outlining the facts of the state's case against Grandison that two persons were murdered 25 years ago)* third parties in the records would be subject to danger or harassment coalesced with defendants' claim Grandison's attempt to obtain those same records under the Maryland Public Information Act from the reporting company somehow constitutes harassment.

11

Clearly, the Civil Division defendants' argument ignores what the U.S. Supreme Court held in <u>U.S. v. Goodwin</u>, 102 S.Ct. 2485, 457 U.S. 368 (1982 4th Cir.) that held;

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the must basic sort." <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed. 2d 604. In a series of cases beginning, with <u>North Carolina v. Pearce</u> and culminating in <u>Bordenkircher v. Hayes</u>, the Court has recognized this basic -- and itself uncontroversial -- principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

**Id. at FN4 102 S.Ct. 2488.**

Here in the case sub judice, relying on the **"Kovakas Decl. §§ 19, 21.")** the defendants' seeks to punish Grandison because he has done what the law allows him to do. Since under Md. Law the Maryland Public Information Act just like its counter part "FOIA" allows upon request a Requester to seek public documents from agencies. But nonetheless defendants' claims by withholding personally-identifying information of third parties, the defendants' have protected a privacy interest that has been long-recognized by the Supreme Court. Such arguments of the defendants' are clearly belied, rebutted, discredit, disproved, and refuted by Exhibits (A), (B), and (C) attached to Plaintiff's Cross Motion for Summary Judgment establishing that the identities of persons the defendants' seek to protect have already been exposed to the plaintiff and likewise apart of the public domain for twenty years. **See Plaintiff Exhibit (E) (1) attached herein.** also see <u>Piechowicz v. United States</u>, supra corroborating such identities have been in the public domain for more than twenty years. Moreover, the evidence of Grandison's two federal court trials and subsequent two state court trials establishes the identities of the individual persons or third parties the defendants' seek to protect have been apart of the general public domain for over 25 years.

In conclusion In light of the evidence establishes during that time there has

been absolutely no evidence of any type of harassment as a result clearly the civil division defendants' reliance's on the Kovakas Decl. is based on bad faith and speculative conclusions that are unsupported by any evidence to conclude otherwise.

**ARGUMENT IV.**

### The Civil Division Did Not Properly Determined that There Is No Qualifying Public Interest under Exemptions 6 and 7(C), 5 U.S.C. § 552 (b) (6), (7).

With respect to this argument of the defendants', Plaintiff herein incorporates and adopt by reference the facts and case law set forth in plaintiff's arguments 1 and 2 above and the other arguments herein. As a result the defendants' arguments are completely without merit.

**ARGUMENT V.**

### The Civil Division Did Not Properly Determined that the Records at Issue Satisfy the Threshold of Exemption 7, 5 U.S.C. § 552 (b) (7).

With respect to this argument of the defendants', Plaintiff herein incorporates and adopt by reference the facts and case law set forth in plaintiff's arguments 1 and 2 above and the other arguments herein. As a result the defendants' arguments are completely without merit.

**ARGUMENT VI.**

### Contrary To The Defendants' Erroneous Assertions The Public Statements Made by Individuals Involved in the Plechowicz Case Did In Fact Constitute A Waiver of Their Privacy Interests.

With respect to this argument of the defendants', Plaintiff herein incorporates and adopt by reference the facts and case law set forth in plaintiff's arguments 1 and 2 above and the other arguments herein. As a result the defendants' arguments are without merit. But nonetheless Grandison asserts that the defendants' argument is not more than an attempts to misled this Court into believing that Plaintiff has not presented any evidence to suggest that these parties ever testified in open court. Since an examination of the cases of

13

United States v. Grandison, 780 F.2d 425, (4th Cir. 1985); Grandison v. United States, 783 F.2d 1152 (4th Cir. 1986); Grandison v. State, 305 Md. 685 (1986), and Grandison v. State, 341 Md. 175, 670 A.2d 398 (1995) the statement of the fact in all those cases reveal that the parties the defendants' seek to protect actually testified in open court in both federal and state courts. Likewise the defendants' contentions that plaintiff failed to present evidence that the contents of their depositions and interrogatories were entered into evidence or were publicly available is likewise erroneous. Since an examination of the case cited in Plaintiff's Cross Motion for Summary Judgment unequivocally proves to the contrary and that case substantiates that the depositions of Piechowicz, Savage, and Ryan, the interrogatories of Piechowicz, Savage, and John I. Kennedy and third party persons as well were entered in evidence in Piechowicz v. United States, 685 F.Supp. 486, (D. Md. 1988) and made available to the general public. Id. at 685 F.Supp. 488-498 which held;

> On March 13, 1986, in this civil case, a twelve-count complaint was filed by surviving family members of the two victims, namely Cheryl Piechowicz, **(FN6)** Sherrie Marie Waldrup (Sherrie), **(FN7)** John I. Kennedy, Jr. (John) **(FN8)**, and Melva Kennedy (Melva), **(FN9)** against the United States and also against Savage and Ryan in their individual capacities. **FN10).**

But more importantly examine Piechowicz v. United States, supra Id. at 685 F.Supp. 498-501 FN4, FN 28, FN32, **and Plaintiff Grandison's Exhibit (E) (1).**

Finally, contrary to the defendants' erroneous assertions that plaintiff sub judice has not cited any legal authority for the proposition with respect to his arguments that a waiver was effectuated by the fact that the records in the Piechowicz were not placed under seal. However, an examination of the case Cottone v. Reno, 193 F.3d 550, (D.C. 1999) cited by both plaintiff and the civil division defendants supports plaintiff's argument. Since that Court held;

> Once the FOIA requester has carried his burden of production, it is up to the government, if it so chooses, to rebut the plaintiff's proof by demonstrating that the specific tapes or records identified have since been destroyed, placed under seal, or

14

otherwise removed from the public domain. The FBI, however, has made no such showing here. Nothing in the record suggests that the government, either during or after Cottone's trial, moved to place under seal the tapes that it played in court. Nor is there any indication that the tapes Cottone has identified have since been destroyed.

Clearly in the case sub judice, Grandison has carried his burden of production with the production of Exhibits A, B, C, D, attached to plaintiff cross motion for summary judgment coalesced with the present Exhibit E-1 pg. 9 attached herein. As a result considered with those precepts in mind, it is the burden of the civil division defendants to rebut the plaintiff's proof by demonstrating that the specific documents in question submitted into the public domain by the civil division defendants and the plaintiffs' in the case of Piechowicz v. United States, supra, had since been destroyed, placed under seal, or otherwise removed from the public domain. Like in Cottone cited above, the civil division defendants have not made such a showing here, because nothing in the record suggests that civil division defendants', either during or after the Piechowicz, et al, litigation or thereafter, moved to place under seal the documents in question used in court. Nor is there any indication that the documents in question Grandison has identified has since been either removed from the public domain or destroyed.

In conclusion the defendants entire arguments are without merit, and clearly made in bad faith because legally the defendants know the documents requested by plaintiff must be released under the provisions of the FOIA.

**ARGUMENT VII.**

### Contrary To Defendants' Claims Plaintiff Has Not Failed to Demonstrate that Any of the Withheld Records Are in the Public Domain.

With respect to this argument of the defendants', Plaintiff herein incorporates and adopt by reference the facts and case law set forth in plaintiff's arguments 1, 2, 3, 4, and 5 above and the other arguments herein. As a result the defendants' arguments are

completely without merit. **See Plaintiff's supplemental Declaration in support of his Cross Motion for Summary Judgment.**

**ARGUMENT VIII.**

### Contrary To The Civil Division Defendants' Erroneous Assertions Plaintiff's Miscellaneous Arguments Are Absolutely Legally Meritorious

With respect to this argument of the defendants', Plaintiff herein incorporates and adopt by reference the facts and case law set forth in plaintiff's arguments 1 and 2 above and the other arguments herein. As a result the defendants' arguments are completely without merit.

In reply however, to the Civil Division defendants' claims that the Civil Division and EOUSA are independent components of the Department of Justice and they maintain separate systems of records. Such an argument is no more than a frivolous attempt by the Civil Division defendants' to ignore the legal decision reached by the OIP's that concluded Exemptions 6 and 7(C) did not apply and remanded Grandison's administrative appeal based on the compelling legal arguments in that appeal made by Grandison. In any event nonetheless, the Civil Divisions claims of being an independent component of the Department of Justice is noting short of hogwash by virtue of the fact the Department of Justice is one agency in the U.S. Government which only enjoys independence of other government agencies. However, the subdivisions within the Department of Justice does not enjoy any separate or independent rights from another subdivision within the Department of Justice itself even if they maintain separate record systems. A decision rendered by the OIP, or this Court sub judice would be binding all subdivisions of the Department of Justice under the FOIA when the request seeks the very same records. Hence the legal decision reached by the OIP against the EOUSA ipso facto applied to the Civil Division of the Department of Justice. •

Furthermore, defendants' claims of not giving any credence with respect to the court reporters affidavits responsible for transcribing the depositions of Savage,

Piechowicz, and DEA agent John Ryan taken in the Piechowicz civil lawsuit based upon the defendants' assertions the affidavits merely certify the reporters observed and recorded the statements of the parties to the lawsuit. Such arguments of the defendants' are clearly erroneous and misses the point since those court reporters were independent members observing and recording without any request from either the Piechowicz's (plaintiffs) or the Civil Division (defendants) in Piechowicz et al v. United States, supra for Cheryl Piechowicz,  James C. Savage, and John Ryan's depositions to be sealed from the general public domain. Or prohibiting those reporters from making copies for any member of the general public. Considered with those precepts in mind,  those affidavits of the court reporters  operated as ipso facto waivers of those deposition becoming apart of the public domain as stated in plaintiff Grandison's Cross Motion for Summary Judgment. (Pl.'s Cross Mot. at 12-13).

### CONCLUSION

For the foregoing reasons, and based upon the entire record herein, Plaintiff respectfully submits that his Cross Motion for Summary Judgment should be granted and that the Civil Division defendants' motion for summary judgment should be denied.

Respectfully submitted,

Anthony Grandison #172622

---

[1]. It should be further noted that the Civil Division cites absolutely no case law and Plaintiff knows of none that holds that the Department of Justice subdivisions enjoys independents from each other under the FOIA. Since the Dep't of Justice represents just about every branch and cranny of the Fed. Gov't and frequently speaks in the name of the agencies or branches it represents. Likewise the Justice Dep't Office of Information ("OIP") represents one administrative appellate review for requesters not satisfied with one of its subdivisions decision rendered in FOIA requests. Thus when the administrative appeal is based upon the same records requested it would make no legal common sense to conclude that a favorable decision rendered  by the OIP against the EOUSA would not ipso facto apply to the Civil Division defendants' since the Department of Justice is one agency of the Federal Government with multiple components. Hence EOUSA's and Civil Division are one the individual entitles contributing to a whole, or  constructed as a nondetachable part of a large unit.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _13ᵗʰ_ day of _August_, 2008, a copy of the foregoing Plaintiff's Reply to the Civil Division defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply to Civil Division defendants Reply in Further Support of Defendants' Motion for Summary Judgment was mailed by first class mail, postage prepaid to

Ms. Caroline A. Smith (DC Bar #501942)
Attorney-Advisor
U.S. Department of Justice
Office of Information and Privacy
1425 New York Ave., N.W., Suite 11050,
Washington, D.C. 20530-0001

Anthony Grandison #172622
MACA C-46
401 E. Madison Street
Baltimore, MD. 21202

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                           *

      Plaintiffs

                           * CIVIL ACTION NO. 08-00024 (RJL)

     v.

                           *

U.S. Department of Justice, et al.,

      Defendants                            *

## ORDER

        Upon consideration of the Plaintiff's Cross Motion for Summary Judgment it is HEREBY GRANTED, and that the Civil Division Defendants' Motion for Summary Judgment on the other hand is HEREBY DENIED.

        It is further Ordered that the  Depositions of Cheryl Ann Piechowicz, former Assistant U.S. Attorney, James Savage, DEA Agent, John Ryan; the Interrogatories of Cheryl Ann Piechowicz propounded on James Savage, John Ryan, and the United States, and the answers thereto given to those interrogatories; And the Interrogatories of former Assistant U.S. Attorney, James Savage, John Ryan, and the United States propounded on Cheryl Piechowicz, Joseph Kennedy, et. al, and the answers given thereto to those Interrogatories. And that the Civil Division Defendants' are HEREBY ORDERED this _____, day, of _____, 2008, to provide  within _____, days of this Order those documents in question in there unredacted version.

                                      _____

                                      Honorable Judge R.J. Leon
                                      United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                              *

       Plaintiff

                                 * CIVIL ACTION NO. 08-00024 (RJL)

   v.

                              *

U.S. Department of Justice, et al.,

       Defendants                              *

## AFFIDAVIT OF ANTHONY GRANDISON .

I, Anthony Grandison, declare as follows;

   1. I, the Plaintiff, Anthony Grandison am over eighteen years of age and I am fully competent to make this Affidavit.

   2. I, the Plaintiff, Anthony Grandison Sr. was born on January 6, 1953 and, I currently live at the address known as  Maryland Correctional Adjustment Center (MCAC), 401 E. Madison Street, Baltimore, Maryland 21202.

   3. On or about May 11, 1994, I, the Plaintiff Anthony Grandison appeared in the State Circuit Court for Somerset County Maryland for a Death Penalty Hearing in Criminal Case No. 4010. **See Plaintiff's Exhibit (E-1).**

   4. During that May 11, 1994 Death Penalty hearing the Honorable Daniel M. Long, the presiding Judge read into the record a letter Plaintiff Grandison received from the United States District Court for the District of Maryland establishing that the depositions testimony of the persons in questions were in the archives of Philadelphia, Pa. **See Plaintiff's Exhibit (E-1).**

   5. Plaintiff Anthony Grandison in fact did obtained those depositions of Cheryl Ann Piechowicz, and James C. Savage, (former Assistant U.S. Attorney) Exhibit (B) and

1

(C) attached to his Cross Motion for Summary Judgment from the Philadelphia, Pennsylvania archives at the governments expense.

6. Plaintiff Anthony Grandison's Exhibits (E-2, 3, and 4) are apart of the Death Penalty Hearing held on May 11, 1994 before the Honorable Daniel M. Long, a State Circuit Court Judge for Somerset County, Maryland.

7. Plaintiff Anthony Grandison's Exhibits (F-1, and 2) were obtain from the Internet which establishes that John I. Kennedy, the father of Cheryl Ann Piechowicz died on July 6, 1998, worked as a Deputy U.S. Marshal. And the same John I. Kennedy attendant St. Ambrose School in Pimlico as set forth in Plaintiff's Exhibit (2, 3, and 4) and Exhibit (F-1, and 2).

8. Piechowicz v. United States, 685 F.Supp. 486, (D. Md. 1988) establishes that the deposition testimony of Cheryl Ann Piechowicz, James C. Savage, and John Ryan, and the answer to interrogatories by Cheryl Ann Piechowicz, James C. Savage, and John I. Kennedy were made apart of the record in Piechowicz v. United States, 685 F.Supp. 486, (D. Md. 1988) by the Civil Division defendants and Cheryl Ann Piechowicz.

After having carefully and thoroughly reread the contents of my (Plaintiff) two page Affidavit, I, the Plaintiff Anthony Grandison solemnly affirm under the penalties of perjury that the contents of the forgoing statements herein are true and correct to the best of my knowledge, information, and belief.

August 13, 2008
DATE

Anthony Grandison #172622

Plaintiff's Exhibit (E-1)
(Grandison's State Death Penalty Resentencing Hearing)
(Death Penalty Transcript Dated May 11, 1994)

1

1      IN THE CIRCUIT COURT FOR SOMERSET COUNTY, MARYLAND

2    STATE OF MARYLAND

3      vs.                  Criminal Case

4    ANTHONY GRANDISON,           No. 4010

5        Defendant.

6    ————————————————/

7      REPORTER'S OFFICIAL TRANSCRIPT OF PROCEEDINGS

8        (Hearing on Request to Discharge Counsel)

9                    Princess Anne, Maryland

10                 Wednesday, May 11, 1994

11

12   BEFORE:

13      HONORABLE DANIEL M. LONG, Associate Judge

14

15   APPEARANCES:

16      For the State:

17         SUE A. SCHENNING, Esquire

18         JASON G. LEAGUE, Esquire

19      For the Defendant:

20         WILLIAM B. PURPURA, Esquire

21         ARCANGELO M. TUMINELLI, Esquire

22

23         B. Scott Austin, Inc.

24   P. O. Box 222, Princess Anne, Maryland 21853

COPY

9

1          THE COURT:  The record should reflect I've been

2    handed a letter addressed to Mr. Grandison dated May the

3    5th of '94 from the staff attorney, let's see.  "With

4    regard to your letter received April 26, 1994, additional

5    information may be needed before your request for a copy

6    of the deposition given by Cheryl Ann Piechowicz and

7    James Savage in Civil action No. K-86802 can be

8    considered.  The court files in Piechowicz, et al v.

9    Savage, et al, Civil action No. K-86802 are in archives

10   and are stored in Philadelphia.  Unless you are granted

11   permission to obtain copies of those transcripts at

12   government expense, you may be required to pay a $25.00

13   fee for retrieving these items from archives, plus a fee

14   for the photocopying of those transcripts.  A form motion

15   for requesting copying at government expense is enclosed

16   should you need it.  I hope this information is helpful

17   to you".  I cannot read the signature.  It's signed by a

18   staff attorney, Pro se Unit, dated May 6th, 1994.  Dated

19   May 6th, 1994, sent May 5th, 1994.  Appears to be

20   approved by ...

21          THE DEFENDANT:  Some judge.  I don't ...

22          THE COURT:  ... some judge.  I don't know who

23   the judge is.  Copy was sent to your corrections file.

24   All right.

25          THE DEFENDANT:  Yeah, they screw up on that

Plaintiff's Exhibit (E-2, 3, and 4)
(Grandison's State Death Penalty Resentencing Hearing)
(Death Penalty Transcript Dated May 11, 1994)

75

1    alleged counsel and I don't know if that means one or

2    both.

3            MR. PURPURA:  Thank you.  Your Honor, Sgt.

4    Kennedy, or John Kennedy, is, works for the United States

5    Marshal Services now in the Federal Court House, where he

6    mans the front door area, and I do a lot of Federal

7    criminal work.  I'm over there months at a time and I

8    know probably all the personnel and most of the marshals

9    there and have a nodding relationship, or hello, and

10   everything else with most of the people over there.  I

11   knew Sgt. Kennedy only as the victim or the father of the

12   victims in 1983 and nothing else other than that since

13   that time.  We do speak; we have spoken over the years.

14   That in no way would affect my representation and/or my

15   ability to cross-examine.  I know quite a few State

16   troopers, quite a few DEA agents, quite a few FBI agents

17   who we may have dinner with and speak with, and we have

18   them on the witness stand within the next week in another

19   case and try to impeach them with all vigor.

20           THE COURT:  Have you ever done that with Sgt.

21   Kennedy?

22           MR. PURPURA:  I've never had him on -- Sgt.

23   Kennedy, he's not an active agent.  He works as a

24   security post.

25           THE COURT:  All right.  Mr. Kennedy, I should

81

1    nodding basis for probably the last four or five years
2    because of also having spent a lot of time over in the
3    Federal Court House.  I think Mr., as I understand it the
4    reason Mr. Purpura has had discussions with him is
5    because Mr. Purpura was involved in Mr. Grandison's
6    Federal case back in 1983, and Mr. Kennedy knew that.  I
7    was not.

8          Since I've been involved in Mr. Grandison's
9    defense in this case, Mr. Kennedy, you know, he is aware
10   of that.  He sees me.  Bill and I just finished a trial
11   down there.  He may have made, you know, remarks.  He'll
12   say hi to us as we come into the court house, but I've
13   never been out with his socially and, frankly, I've never
14   probably, if you added the time up, I've probably not
15   spoken to the man more than ten minutes over the last
16   five years, if you totalled all the time.  I certainly
17   would not be influenced in any way in terms of my
18   judgment as to whether Mr. Kennedy or Cheryl Piechowicz
19   or anyone else should be cross-examined in this case.  I
20   just, that's not my relationship with them.

21         Your Honor, let me add one other thing.  About
22   three weeks ago while I was in trial with Mr. Purpura,
23   Mr. Kennedy stopped me as I was coming in.  His office,
24   the security office, is right near the front entrance of
25   the Federal Court House on Lombard Street in Baltimore.

82

1    And as I came in he came out, and he asked me whether I

2    attended St. Ambrose School in Pimlico about three blocks

3    from the racetrack, and I said I did.  He advised me that

4    he had, someone had told him that, and he told me that he

5    had also attended the same school.  I did not remember

6    him; he did not remember me.  That's the extent of my

7    knowledge of Mr. Kennedy.

8            MR. PURPURA:  If I can add, I think if John, if

9    Mr. Kennedy had his choice in this case, he would not

10    want Tuminelli or Purpura representing Mr. Grandison

11    because he knows, quite frankly, that we give vigorous

12    representation and he sees the success rate that I've had

13    in Federal Court when he's witnessed some of the cases.

14    If there was any friendship which would affect me, I

15    would not have entered my appearance in behalf of Mr.

16    Grandison, but I entered my appearance in behalf of Mr.

17    Grandison because of the theory which was developed in

18    '83 and because of our relationship back in '83, and I

19    wanted to be able to express it in court.

20            THE DEFENDANT:  I would like to put something

21    else on the record, Your Honor.  With respect to Mr.

22    Kennedy, Mr. Purpura did, you told me months ago, that

23    Mr. Kennedy was not going to testify.  Now, when we had

24    this hearing on April the 15th, Ms. Schenning stated

25    unequivocally that he was going to be called, and she

Plaintiff's Exhibit (F-1, and 2)

(Baltimore Sun Newspaper Obituary )

(Death Of John I. Kennedy Dated July 10, 1998)

# **■ baltimoresun.com**

## Access Denied (policy_denied)

Your system policy has denied access to the requested URL.

search/archive > archives
**Document**

Access D
(policy d€

**Archives**
Basic Search
Advanced Search
Saved Search
About the Archive
Search Tips
Pricing
FAQ
My Account
Help
Terms
Login

**Classified**
Place an ad
Jobs
Cars
Homes
Apartments
Personals
Pets
Grocery Coupons

**Maryland Weather**

**Traffic**

**News**
Maryland
Nation
World
Health & Science
Obituaries
Columnists
Blogs
Special Reports

Start a New Search | Previous Results

**Buy Complete Document:**  FREE Abstract  $ Full Text

## John Irvin Kennedy Jr., 59, deputy U.S. marshal
*[FINAL Edition]*

The Sun - Baltimore, Md.
Date:          Jul 10, 1998
Start Page:     5.B
Section:        LOCAL
Text Word Count: 478

**Abstract (Document Summary)**

John Irvin Kennedy Jr., a deputy U.S. marshal who was in charge of security at the federal courthouse in Baltimore, died Monday of cancer at Stella Maris Hospice. He was 59 and lived in Gettysburg, Pa.

"St. Ambrose School was very important to John, and he had hoped to attend Mount St. Joseph High School, but we were too poor," said his sister, Catherine Kennedy of Owings Mills. "He used to say, 'I wonder how different my life would have been if I had gone to Mount St. Joe.'"

Mr. Kennedy's family has established a scholarship fund in his memory at St. Ambrose School, c/o St. Ambrose Alumni Association, P.O. Box 163, Reisterstown, 21136. An annual scholarship will be awarded to a student to attend a Catholic high school.

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**Buy Complete Document:**  FREE Abstract  $ Full Text

**Most Viewed Articles** (Updated Daily)

- Loved, hated, center's profile was towering
- Baltimore officer is charged in slaying of woman Victim feared him, court papers say BALTIMORE CIT...
- Woman's death ruled a homicide Officer's powers suspended during probe BALTIMORE CITY

John Irvin Kennedy Jr., 59, deputy U.S. marshal

**Sports**

- Make access to education a priority
- "Jerusalem: The Disputed Holy City - What

**Lifestyle**

**Business**          Log In

**Opinion**

**Travel**            All articles © The Baltimore Sun and may not be republished, copied or distrubed without
permission.

**Shopping**          If you have questions or comments about the archives, please send us **feedback**

**Resources**
Print Edition
Wireless Edition
RSS Feeds
Newsletters/Alerts
Archives

**Services**
Get home delivery
Reader Rewards
Sun Store
Contests
Place an ad
FAQs
Contact Us

Access D
(policy  de

Access D
(policy  de

baltimoresun.com > search/archive                                                         back to top