## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTHONY GRANDISON,                    :
                                      :
               Plaintiff,       :
                                      :
   v.                                 :       Civil Action No. 08-0024 (RJL)
                                      :
UNITED STATES DEPARTMENT              :
OF JUSTICE, *et al.*,                 :
                                      :
           Defendants.      :

## MEMORANDUM OPINION

This matter is before the Court on the parties' cross-motions for summary

judgment. For the reasons discussed below, plaintiff's motions will be denied, and the

defendants' motions will be granted.

### I.  BACKGROUND

#### *A.  Civil Division*

In early March 2007, plaintiff submitted a request to the Civil Division of the

United States Department of Justice ("Civil Division") pursuant to the Freedom of

Information Act ("FOIA"), *see* 5 U.S.C. § 552. Memorandum of Points and Authorities

in Support of Defendant Civil Division's Motion for Summary Judgment ("Civ. Div.

Mot."), Declaration of James M. Kovakas ("Kovakas I Decl."), Ex. A (March 7, 2007

FOIA Request). In relevant part, the request stated:

> 1. By this letter . . . I am requesting . . . a complete copy (every page)
> of the Deposition taken on March 30, 1987 of Cheryl Ann Piechowicz in Civil
> No. K-86-802 by Burke M. Wong, Esq., an attorney for the U.S. Justice
> Department Tort Branch.  A complete copy (every page) of the Deposition

taken on April 1, 1987 of former Assistant U.S. Attorney James C. Savage in Civil No. K-86-802 by Plaintiffs Cheryl Ann Piechowicz, et al[.], Stephen Goldberg, Esq., and George R. Hoffman, Esq.[]

2.   I am requesting . . . a complete copy (every page) of any Interrogatories filed by the defendants Savage and Ryan in this civil case, and any filed by the Plaintiffs Cheryl Ann Piechowicz, et[] al[.], in this civil case above.

3.   Complete copies of any and all Admissions filed by both the Defendants Savage and Ryan and the Plaintiffs Cheryl Ann Piechowicz, et al[.], in the civil case above.

4.   Complete copies of any and all Exhibits admitted during the course of the Depositions conducted on March 30, 1987 and April 1, 1987 or any other dates thereafter.

*Id.*, Ex. A at 1-2; *see Piechowicz v. United States of America*, 685 F. Supp. 486 (D. Md. 1988) (granting defendants' summary judgment motion on the ground that "plaintiffs' claims against the United States in this case are barred by the discretionary function exception of the Federal Tort Claims Act").  Plaintiff also requested expedited processing of his FOIA request.  *Id.* at 2.  He was "challenging [his] convictions and sentences in the State Courts, and without expedited processing" he would be "in jeopardy of suffering irreparable injury, by not conforming with the time restrictions imposed by the State Court."  *Id.*  Civil Division staff assigned the request a tracking number (145-FOI-9135), granted plaintiff's request for expedited review, and so notified plaintiff in writing.  Kovakas Decl. ¶ 5 & Ex. B (March 22, 2007 letter from J.M. Kovakas, Attorney In Charge, FOI/PA Unit, Civil Division).  Because the records responsive to plaintiff's FOIA request contained personal information about witnesses, court officials, experts, attorneys and law enforcement officials connected to plaintiff's criminal case, the Civil Division withheld all the records in their entirety pursuant to FOIA Exemptions 6 and 7(C).  *Id.* ¶ 7 & Ex. D (April 17, 2007 letter from J.M. Kovakas).  No "records responsive to the portion of plaintiff's request asking for admissions or exhibits

2

submitted during [the] course of any depositions" were located. *Id.* ¶ 7.  Subsequently, upon confirmation of Ms. Piechowicz's death, the Civil Division released redacted portions of her deposition transcript (88 pages) and her answers to interrogatories (13 pages). *Id.* ¶ 15 & Ex. K (April 28, 2008 letter from J.M. Kovakas).  In total, the Civil Division released 11 pages in full, released 90 pages in part, and withheld 127 pages in full. *Id.* ¶¶ 15, 19.

### B. Executive Office for United States Attorneys

In late March 2007, plaintiff submitted a separate FOIA request to the United States Attorney's Office for the District of Maryland ("USAO/DMD") for the same discovery materials from the *Piechowicz* case.  *See* Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("EOUSA Mot."), Declaration of Dione Jackson Stearns ("Stearns I Decl.") ¶ 5 & Ex. A at 1-2 (March 28, 2007 FOIA Request).  Pursuant to Justice Department policy, staff forwarded the request to the Executive Office for United States Attorneys ("EOUSA"), and its staff acknowledged in writing receipt of the request.  *Id.* ¶¶ 5-6 & Ex. C (April 2, 2007 letter from A.F. Loucks, Assistant United States Attorney), Ex. D (May 18, 2007 letter from W. G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, regarding Request No. 07-1608).  Plaintiff did not provide privacy waivers or proof of death for any of the individuals named in his request, and, for this reason, EOUSA staff split the request into two separate files.[1]  *Id.* ¶¶ 5, 7 & Ex. D at 2.  "One file [Request No. 07-1608] [was]

---

[1]     The following individuals' names appear in plaintiff's FOIA request to the EOUSA: Cheryl Ann Piechowicz, James Savage, John Ryan, Breckenridge L. Willcox, Juliet Eurich, John J. Farley, III, Burke M. Wong, Stephen Goldberg, and George R.
(continued...)

3

designated for information available in public records sources, such as . . . press releases, and the second file [Request No. 07-1606] [was] assigned to deal with information contained in non-public source records." *Id.* ¶ 7.

A paralegal at the USAO/DMD conducted a search for responsive records in public sources, but was unable to locate any. Stearns I Decl. ¶¶ 8-9 & Ex. E (June 29, 2007 letter from W.G. Stewart regarding Request No. 07-1608). The EOUSA refused to confirm or deny the existence of records in non-public sources pertaining to the third parties named in his request. *Id.* ¶ 11 & Ex. F (May 21, 2007 letter from W.G. Stewart regarding Request No. 07-1606) at 1. Plaintiff pursued an administrative appeal to the Justice Department's Office of Information and Privacy ("OIP"), arguing that three of the individuals whose names were mentioned in the records (Cheryl Ann Piechowicz, her father John I. Kennedy, Jr., and court reporter John McCarthy who transcribed the deposition of James C. Savage) had died. *Id.* ¶ 12 & Ex. G (FOIA Appeal on No. 045-FOI-9135) at 2-3. He was partially successful in that OIP staff confirmed Cheryl Piechowicz's death. *Id.* ¶ 14 & Ex. I (August 2, 2007 letter from J.G. McLeod, Associate Director, OIP). On remand from OIP, EOUSA staff opened a new file and assigned it Request No. 07-2750. *Id.* ¶ 15 & Ex. J (August 21, 2007 letter from W.G. Stewart). Staff retrieved the *Piechowicz* case file from the Federal Records Center, located five pages of records from non-public sources deemed responsive to plaintiff's request, redacted information under FOIA Exemptions 6 and 7(C), and released the redacted pages to plaintiff. *Id.* ¶ 19 & Ex. L (June 24, 2008 letter from W.G. Stewart) at 2.

_____

[1](...continued)
Hoffman. Stearns I Decl., Ex. A at 1-2.

4

In this action, plaintiff demands expedited release of all the information he has requested.  *See* Compl. at 17.

## II.  DISCUSSION

### A.  *Summary Judgment Standard*

The Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own conflicting affidavits or documentary evidence.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v.*

5

*Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. Searches for Responsive Records

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  The agency bears the burden of showing that its search was reasonably calculated to uncover all relevant documents.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations explaining in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542.

### 1. Civil Division

The Civil Division's declarant "conducted a search for responsive records by using the Civil Division Case Management System ("CASES")," which "contains information related to all litigation received and initiated by the Civil Division."  Kovakas I Decl. ¶ 7.  CASES was "the only database maintained by the Civil Division that would contain information about records responsive to plaintiff's request."  *Id.*  Using Ms.

Piechowicz's name as a search term, through CASES the declarant identified and

contacted the attorneys who worked on the *Piechowicz* case, and obtained from them

records from the case file. *Id.* He identified 228 pages of responsive records, including

"one deposition of a government witness; answers to interrogatories from one

government witness; one deposition of a witness for Piechowicz; and answers to

interrogatories by two witnesses for Piechowicz." *Id.* These records did not include

admissions or exhibits submitted during depositions. *Id.*

### 2. Executive Office for United States Attorneys

EOUSA staff instructed USAO/DMD staff "to conduct a search at USAO/DMD for

specific public records pertaining to the Piechowicz case in connection with Request

No. 07-1608." Defendant Executive Office for United States Attorneys' Motion to

Vacate the Briefing Schedule, Declaration of Linda Brown ("Brown Decl.") ¶ 4. A

USAO/DMD paralegal conducted a search for responsive records using the Legal

Information Office Network System ("LIONS"), a computer system maintained by the

United States Attorney's Office "to track cases and to retrieve files pertaining to cases

and investigations." *Id.* ¶ 6.

One retrieves information on LIONS using a defendant's name, an internal

administrative number, the assigned Assistant United States Attorney's name, or the

district court case number. Brown Decl. ¶ 6. "[T]here are no other electronic databases

at USAO/DMD that could reasonably be expected to maintain responsive records." *Id.*

¶ 7.

Using Ms. Piechowicz's name and the civil action number as search terms, the

paralegal located no responsive records through LIONS, "presumably because the case predated the implementation of the LIONS system in the United States Attorney's Office." Brown Decl. ¶ 7. She next directed a Docketing Clerk to search the paper records of cases predating LIONS. *Id.* ¶ 8. It was determined that the paper records had been transferred to the Federal Records Center in June 1992 with instructions to retain them until January 2001. *Id.* It initially appeared that the records had been destroyed pursuant to the USAO/DMD's document retention policy. *Id.* The Docketing Clerk later learned that the records had not been destroyed, *id.* ¶ 9, and the file was retrieved from the Federal Records Center in 2008. Stearns I Decl. ¶ 19. Review of the case file yielded 619 pages of records that were not responsive "because they do not consist of the specific discovery materials that are enumerated in plaintiff's request." *Id.* Further, 303 pages of records were duplicates of records processed separately by the Civil Division. *Id.* "[O]nly five pages were responsive to plaintiff's request," and the EOUSA released these pages "with redactions pursuant to FOIA Exemptions 6 and 7(C)." *Id.* Other than these five pages, the "EOUSA was not able to locate any records responsive to the plaintiff's request." *Id.*

The Court has reviewed the supporting declarations, all of which are accorded a presumption of good faith absent a showing by plaintiff to the contrary. Based in its review, the Court concludes that the Criminal Division and the EOUSA conducted searches reasonably calculated to locate records responsive to plaintiff's FOIA requests

### C.  Exemptions 6 and 7(C)

The Civil Division "redacted names and identifying information associated with

8

various third parties, including law enforcement officers, witnesses, targets of the underlying investigation, attorneys, and court personnel." Kovacas I Decl. ¶ 21. Withheld in their entirety were "a deposition and interrogatories that were answered by individuals in association with Piechowicz's tort action" on the ground that the "nature of the questions and their testimony, which required an in-depth discussion of the law enforcement investigation into [plaintiff's] criminal activities and their own conduct in relation to that matter, would identify them." *Id.* The testimony also "discusse[d] the actions of other third parties linked to that investigation, including law enforcement personnel, witnesses, and other suspects." *Id.* The EOUSA, too, redacted "names and identifying information associated with third parties, including law enforcement officers, witnesses, targets of the underlying investigation, attorneys and court personnel." Stearns I Decl. ¶ 20. Both the Civil Division and the EOUSA rely on Exemption 6 in conjunction with Exemption 7(C) in withholding this information. *See* Kovakas I Decl. ¶¶ 16-21; Stearns I Decl. ¶¶ 20-24.

### 1. Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish both that the records at issue were compiled for law enforcement purposes and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In

assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted). The Civil Division and the EOUSA attempt to establish that the discovery materials plaintiff requests are law enforcement records within the scope of Exemption 7 by linking the *Piechowicz* civil case to the underlying criminal cases against plaintiff. *See* Kovakas I Decl. ¶ 16; Stearns I Decl. ¶ 12.

The circumstances under which the *Piechowicz* case arose have been summarized as follows:

> Anthony Grandison was charged with violations of federal drug and firearms laws in an indictment filed in [the United States District Court for the District of Maryland] on November 17, 1982. Assistant United States Attorney Savage and Special Agent Ryan [of the Drug Enforcement Administration] were in charge of the prosecution of the case. David Scott Piechowicz (David) and Cheryl Ann Piechowicz (Cheryl), husband and wife [], were subpoenaed by the government to testify in that case against Grandison during a pretrial hearing on March 14, 1983 as well as at the trial on May 3, 1983. Plaintiffs allege that both David and Cheryl were threatened by an agent of Grandison on March 14, 1983, before the hearing on that date; that David and Cheryl immediately reported those threats to Savage and Ryan; and that David and Cheryl were told by Savage and Ryan not to worry about the threats and to testify truthfully and honestly when called to testify at the March 14, 1983 hearing.

> During the hearing, both David and Cheryl testified against Grandison, disclosing during their testimony that they were both then working at the Warren House Hotel in Baltimore County, Maryland. Plaintiffs also assert that Cheryl and David repeated their concerns about the threats to Savage and Ryan on several occasions after the March 14th hearing, but that no action by anyone connected with the government was taken to protect David or Cheryl with respect to any danger in connection with their testifying against Grandison. Plaintiffs further claim that Savage and Ryan knew or should have known that Grandison had threatened harm to a witness involved in an earlier criminal prosecution of Grandison and, in fact, had

subsequently harmed that witness.

On April 28, 1983, David and Susan C. Kennedy (Susan) were "gunned down gangland style" by an agent of Grandison while David and Susan were working at the reception desk of the Warren House Hotel. Subsequently, in a second criminal case brought in [the District of Maryland], Grandison and others were convicted for those murders. The evidence in that later criminal case indicated that David had been murdered to prevent him from testifying against Grandison at the scheduled May 3, 1983 trial, and that Susan was murdered in the mistaken belief that she was Cheryl.

On March 13, 1986, in this civil case, a twelve-count complaint was filed by surviving family members of the two victims, namely Cheryl Piechowicz, Sherrie Marie Waldrup (Sherrie), John I. Kennedy, Jr. (John), and Melva Kennedy (Melva), against the United States and also against Savage and Ryan in their individual capacities. Six counts are brought against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. The other six counts are brought against the two individual defendants, Savage and Ryan, for violation of plaintiffs' constitutional rights under 42 U.S.C. § 1983.

*Piechowicz v. United States*, 685 F. Supp. 486, 488-89 (D. Md. 1988) (footnotes omitted).[2]

––––––––––––––

[2]     Plaintiff "was indicted on November 17, 1982 by a Special Narcotics Grand Jury for the District of Maryland for (1) possession of heroin with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), (2) possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (3) of possession, by a convicted felon, of a firearm shipped in interstate commerce in violation 18 U.S.C. § 922(h)(1)." *United States v. Grandison,* 783 F.2d 1152, 1153-54 (4th Cir.), *cert. denied,* 479 U.S. 845 (1986).
In addition, plaintiff "was charged in Baltimore County with conspiracy to murder Scott and Cheryl Piechowicz, first degree murder of Scott Piechowicz and Susan Kennedy, and use of a handgun in the commission of a crime of violence." *Grandison v. State,* 506 A.2d 580, 585 (Md. 1986), *cert. denied,* 479 U.S. 873 (1986). The trial took place in Somerset County, Maryland upon removal at plaintiff's request. *Id.* A jury not only found plaintiff guilty of all charges but also imposed death penalties for the two murder convictions. *Id.* at 586. The judge sentenced plaintiff to life imprisonment for the conspiracy conviction and twenty years for the handgun violation consecutive to the life sentence, and all of these sentences were to run consecutively to the life plus ten years' sentence previously imposed in the federal case. *Id.*

The Civil Division contends that, "[a]lthough the requested records concern [Ms.] Piechowicz's civil case, they pertain to the underlying law enforcement investigation and prosecution of [plaintiff] on federal drugs and weapons charges which precipitated the murders." Kovacas I Decl. ¶ 16.  According to its declarant, "[t]he information used to defend the tort action was initially compiled for law enforcement purposes," that is, during the investigation conducted by two criminal law enforcement components of the United States Department of Justice: the Drug Enforcement Administration and the Federal Bureau of Investigation.  *Id.* ¶ 17.  In order for the court to have made a determination on liability under the FTCA, it "was required to thoroughly examine the conduct of federal agents in the course of the underlying investigation."  *Id.*

Similarly, the EOUSA asserts that the responsive records it located had been compiled for law enforcement purposes because they "pertain to a civil lawsuit initiated by Cheryl Ann Piechowicz against the government and agents of the government in their official capacities" arising from the agents' alleged failure to protect her family. Stearns I Decl. ¶ 20.  The "information at issue in this case was originally complied in connection with a criminal investigation of [plaintiff]."  *Id.*  This Court finds neither argument persuasive.

The requested discovery materials were generated in the course of a civil action filed by Ms. Piechowicz and other family members against the United States and two federal agents.  The depositions took place on March 30, 1987 and April 1, 1987, long after plaintiff had been tried and convicted of the federal and state offenses.  As plaintiff observes, "[t]hose documents clearly were not created in conjunction with any federal or state criminal investigation, or for any investigatory purposes by law enforcement."

12

Plaintiff's Opposition to Defendants['] Summary Judgment Motion ("Pl.'s Opp'n to Civil

Div. Mot.") [#44] at 8.  Notwithstanding the circumstances under which the civil causes

of action arose and the subject matter of the *Piechowicz* case, it cannot be said that the

deposition transcripts and interrogatories deemed responsive to plaintiff's FOIA

requests were compiled for law enforcement purposes.  Accordingly, the Court

concludes that neither the Civil Division nor the EOUSA properly withheld information

under Exemption 7(C).

## 2. Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly and is

"intended to cover detailed Government records on an individual which can be identified

as applying to that individual."  *United States Dep't of State v. Washington Post Co.*,

456 U.S. 595, 602 (1982) (citation omitted).  The threshold is "fairly minimal," such that

"[a]ll information which applies to a particular individual is covered by Exemption 6,

regardless of the type of file in which it is contained."  *Washington Post Co. v. United*

*States Dep't of Health and Human Servs.*, 690 F.2d 252, 260 (1982) (quoting *United*

*States Dep't of State v. Washington Post Co.*, 456 U.S. at 602) (internal quotation

marks omitted).  In this way, the "FOIA's protection of personal privacy is not affected

by the happenstance of the type of agency record in which personal information is

stored."  *Id.*; *see New York Times Co. v. Nat'l Aeronautics and Space Admin.*, 920 F.2d

1002, 1004-05 (D.C. Cir. 1990) (en banc) (concluding that Exemption 6 applies to a

tape of voice communications aboard the Challenger space shuttle because "it applies to particular individuals").

The Court concurs with the defendants' declarants, *see* Kovakas I Decl. ¶ 20 (documents contain "particularized information about third parties"); Stearns I Decl. ¶ 24 (documents "contain information which identifies third parties"), that the relevant records are "similar files" and that the personal information contained therein is eligible for Exemption 6 protection.

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted). The Court assesses the public interest by examining "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny . . . [and official] information that sheds light on an agency's performance of its statutory duties" merits disclosure. *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). "[D]isclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct," in contrast, does not further FOIA's principal purpose. *Id.* It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

14

It is clear that the third parties mentioned in these records have a privacy interest in avoiding disclosure of their personal information.  *See, e.g., Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (recognizing privacy interests of agency personnel, private individuals, and companies who worked on the approval of the controversial drug mifepristone in light of the "danger of abortion-related violence to those who developed mifepristone, worked on its FDA approval, and continue to manufacture the drug"); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("In our society, individuals generally have a large measure of control over the disclosure of their own identities and whereabouts."), *cert. denied*, 494 U.S. 1078 (1990); *Canaday v. United States Citizenship and Immigration Servs.*, 545 F. Supp. 2d 113, 117 (D.D.C. 2008) (recognizing "a privacy interest in the identifying information of the Federal employees even though the information may have been public at one time").  However, "the death of the subject of personal information does diminish to some extent the privacy interest in that information, though it by no means extinguishes that interest; one's own and one's relations' interests in privacy ordinarily extend beyond one's death." *Schrecker v. United States  Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001) (citations omitted).  Such privacy interests may extend to family members. *See, e.g., Badhwar v. United States Dep't of Air Force*, 829 F.2d 182, 185-86 (D.C. Cir.1987) (recognizing privacy interests of families of deceased aircraft pilots in autopsy reports which would be "of a kind that would shock the sensibilities of surviving kin").

The Civil Division explains that release of information identifying these third

parties "could reasonably be expected to subject them to harassment, threats and retaliation," a particular concern "in light of . . . plaintiff's history of violent crimes." Kovacas I Decl. ¶ 21. "Furthermore, individuals mentioned in the files were not only associated with the underlying law enforcement investigation, but [also] were accused of misconduct in the performance of their jobs." *Id.* Disclosure "could serve to embarrass [them] or damage their reputations." *Id.* Likewise, the EOUSA asserts that "[t]here is a risk that the individuals who were associated with the Grandison case would be the victims of harassment or retaliation," particularly in light of plaintiff's having arranged for the murder of a government witness. Stearns I Decl. ¶ 24. Insofar as the records "detail the misconduct allegations against government agents . . . regarding their failure to protect [Ms.] Piechowicz's family members from plaintiff," the EOUSA argues that "disclosure . . . could serve as a source of embarrassment or [could] damage [their] reputations." *Id.*

Plaintiff opposes the withholding of this information on three grounds. First, plaintiff counters that Ms. Piechowicz, her father, John I. Kennedy, Jr., and a court reporter, John McCarthy, are deceased, and, therefore, "they have no surviving privacy interest that would justify the withholding of documents or other information relating to them." Plaintiff's Cross-Motion for Summary Judgment [#28] at 4. Citing *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003), plaintiff asserts "the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased." *Id.* Second, plaintiff argues that information "identical to that being withheld" already is in the public domain. Plaintiff's Cross-Motion for Summary

Judgment [#28] at 6; *see id.* at 10-12; *see* Plaintiff's Reply to the Civil Division

Defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment [#39] at 3-9.

He asserts that the Civil Division "in fact submitted the deposition of Cheryl Ann

Piechowicz, her Answers to Interrogatories, and John I. Kennedy, Jr[.]'s Answers to

Interrogatories to the public domain as attachments to their Motion for Summary

Judgment filed in the United States District Court for the District of Maryland" in the

*Piechowicz* case.  Plaintiff's Cross-Motion for Summary Judgment [#28] at 6.  Plaintiff

explains that he obtained transcripts of the depositions of Ms. Piechowicz and Mr.

Savage "from the Philadelphia, Pennsylvania archives at the government[']s expense."

*Id.*, Affidavit of Anthony Grandison ("Pl.'s Aff.") [#39-3] ¶ 5 & Ex. E-1 to E-4.

Plaintiff's arguments with respect to Ms. Piechowicz and Mr. Kennedy are not

persuasive.  Both the Civil Division and the EOUSA verified these deaths, reviewed

their records, and released portions of records that had been withheld on the

assumption that these individuals were alive.  The Civil Division has released "non-

exempt portions of [Ms.] Piechowicz's deposition transcript . . . and . . . her answers to

interrogatories," Defendant Civil Division's Reply in Further Support of Defendant's

Motion for Summary Judgment [#34], Second Declaration of James M. Kovakas

("Kovakas II Decl.") ¶ 4, as well as "a seven-page set of interrogatories answered by

John Kennedy [and] additional portions of the eighty-eight page transcript of [Ms.

Piechowicz's] deposition."  Supplemental Memorandum in Further Support of

Defendant Civil Division's Motion for Summary Judgment [#43], Third Declaration of

James M. Kovakas ("Kovakas III Decl.") ¶ 4.  The EOUSA determined that, of the five

pages responsive to plaintiff's FOIA request, no additional information could be

released.  Stearns I Decl. ¶¶ 18-19; Reply in Further Support of Defendant Executive Office for United States Attorneys' Motion for Summary Judgment [#47], Second Declaration of Dione Jackson Stearns ("Stearns II Decl.") ¶ 4.

The Court assumes without deciding that Mr. McCarthy is among the individuals whose identities the defendants are protecting under Exemption 6.  Plaintiff's only proof of Mr. McCarthy's death is a letter from another court reporter who "only learned of his death through the grapevine."  Kovakas I Decl., Ex. E (March 17, 2007 letter from A. Weinapple) at 2.  The Court concurs with the declarant's assessment "that this letter does not serve as sufficient proof that John McCarthy is deceased."  Kovakas II Decl. ¶ 6.  In addition, the Court finds it reasonable to conclude, as did the declarant, that the results of "an Internet search on Google using his name" is not conclusive because, "as with any common name, there is no way to determine whether any of the individuals identified in [the] search results are the McCarthy in question."  *Id.*

The Court concludes that the Civil Division and the EOUSA took appropriate steps to verify whether Ms. Piechowicz, Mr. Kennedy, and Mr. McCarthy are deceased. The defendants appropriately reviewed records and, where available, released additional information pertaining to Ms. Piechowicz and Mr. Kennedy.  Absent credible evidence of Mr. McCarthy's death, the defendants properly invoke Exemption 6.  *See, e.g., Schoenman v. Fed. Bureau of Investigation*, 576 F. Supp. 2d 3, 12-14 (D.D.C. 2008) (approving agency's decision to release name of former FBI employee upon confirmation of his death and, under Exemptions 6 and 7(C), to withhold the name of another presumed to be alive by applying the 100-year rule).

In addition to Ms. Piechowicz, Mr. Kennedy, and Mr. McCarthy, plaintiff lists

18

dozens of other individuals named in the depositions he requests.  *See*  Pl.'s Opp'n to

Civil Div. Mot. [#44] at 4-6 & Ex. A-C (Declaration of Plaintiff Anthony Grandison and

excerpts of Piechowicz and Savage deposition transcripts).  Generally, he argues that

information identical to that withheld already is in the public domain because deposition

transcripts, as well as Ms. Piechowicz's and Mr. Kennedy's Answers to Interrogatories,

were attached as exhibits to the government's summary judgment motion in the

*Piechowicz* case.  *See* Plaintiff Grandison's Motion for Summary Judgment Against the

Executive Office of United[] States Attorneys [#33] at 5-6; Plaintiff's Opposition to the

Executive Office for United States Attorney[']s Defendant['s] Motion for Summary

Judgment and Reply to the Executive Office for United States Attorney[']s Defendant['s]

Opposition to Plaintiff's Motion for Summary Judgment [#45-46], Second Declaration of

Anthony Grandison ¶¶ 20-21.  According to plaintiff, these documents are publicly

available and were filed "without seeking that the records be sealed from public view."

Plaintiff's Cross-Motion for Summary Judgment [#28] at 6.  He explains that he learned

of their existence from a staff attorney at the court and obtained copies of these

documents, as well as the transcript of Mr. Savage's deposition, "from the Philadelphia,

Pennsylvania archives at the government[']s expense."  Pl.'s Aff. [#39-3] ¶ 5.

Under the public domain doctrine, records which otherwise may be exempt from

disclosure under the FOIA "lose their protective cloak once disclosed and preserved in

a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).

"[W]here information requested 'is truly public, then enforcement of an exemption

cannot fulfill its purposes.'"  *Id.* (quoting *Niagara Mohawk Power Corp. v. United States*

*Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)).  A plaintiff who seeks disclosure of

such records bears "the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Plaintiff presents a viable argument that the transcripts of the depositions of Ms. Piechowicz, Mr. Savage, and Mr. Ryan, and Answers to Interrogatories submitted by Ms. Piechowicz and Mr. Kennedy are publicly available, as are any records of a civil case filed in a federal district court. He explains that he "obtained [them] via the Archives of the United States District Court, Clerk's Office for Maryland." Plaintiff's Opposition to the Executive Office for United States Attorneys Defendants' Reply in Further Support of Defendants' Motion for Summary Judgment [#48] at 3 & Ex. 1. The published opinion in the *Piechowicz* case offers some support for plaintiff's argument. *See Piechowicz v. United States*, 685 F. Supp. at 498 n.28 & 32. In order to obtain the records he requests, plaintiff "has the burden of showing that there is a permanent public record of the exact [records] he wishes." *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992). Plaintiff does not show that complete copies of the depositions and answers to interrogatories requested under the FOIA have been disclosed and are preserved in a permanent public court record. The excerpts produced thus far do not suffice. *See id.*

At this stage, the Court considers whether the public interest in disclosure of the redacted information outweighs the third parties' privacy interests. *See Ripskis v. Dep't of Housing & Urban Devel.*, 746 F.2d 1, 3 (D.C. Cir. 1984) (per curiam). Plaintiff articulates no public interest in disclosure of the withheld information, and the Court

identifies none.  Release of the names of law enforcement personnel, witnesses, experts, targets of investigation, court reporters and other court personnel, sheds no light on the working of the government.  The Civil Division and the EOUSA properly withhold information under Exemption 6.  *See, e.g., Voinche v. Fed. Bureau of Investigation*, 940 F. Supp. 323, 329-30 (D.D.C. 1996) (release of names and identifying features of individuals would serve no articulable public interest, and agency properly invoked Exemption 6 to protect individuals' privacy interests), *aff'd*, No. 96-5304, 1997 WL 411685 (D.C. Cir. June 19, 1997), *cert. denied*, 522 U.S. 950 (1997); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).

### III.   CONCLUSION

The Court concludes that the Civil Division and the EOUSA conducted reasonable searches for records responsive to plaintiff's FOIA requests.  Although the Court rejects defendants' argument that the records at issue were compiled for law enforcement purposes within the scope of Exemption 7, this same information properly is withheld under Exemption 6.  Defendants' summary motions will be granted.  An Order consistent with this Memorandum Opinion is issued separately.

RICHARD J. LEON
United States District Judge

Date:

3/4/09